DAN RAYFIELD
Attorney General
ALLIE M. BOYD #163478
BRIAN SIMMONDS MARSHALL #196129
LAUREN ROBERTSON #124362
Senior Assistant Attorneys General
KATE E. MORROW #215611
YOUNGWOO JOH #164105
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: allie.m.boyd@doj.oregon.gov
        brian.s.marshall@doj.oregon.gov
        lauren.robertson@doj.oregon.gov
        kate.e.morrow@doj.oregon.gov
        youngwoo.joh@doj.oregon.gov

Attorneys for the State of Oregon

[Additional counsel to appear on signature page]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| STATE OF OREGON, STATE OF WASHINGTON, STATE OF NEW YORK, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF DELAWARE, DISTRICT OF COLUMBIA, STATE OF HAWAI'I, STATE OF ILLINOIS, STATE OF MAINE, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF NEVADA, STATE OF NEW JERSEY, STATE OF NEW MEXICO, JOSH SHAPIRO, in his official capacity as Governor of the Commonwealth of Pennsylvania, STATE OF RHODE ISLAND, STATE OF VERMONT, and STATE OF WISCONSIN; | Case No. _____  AMENDED COMPLAINT |
| Plaintiffs, | |
| v. | |
| ROBERT F. KENNEDY, JR., in his official capacity as the Secretary of the Department of Health and Human Services; THOMAS MARCH BELL, in his official capacity as Inspector General of the Department of Health and Human Services; the U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES OFFICE OF INSPECTOR GENERAL; and the UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, | |
| Defendants. | |

Page 1 –  AMENDED COMPLAINT

## I.     INTRODUCTION

1.      On December 18, 2025, without warning, Department of Health and Human Services (HHS) Secretary Robert F. Kennedy, Jr., posted to the HHS website a "declaration" titled "Safety, Effectiveness, and Professional Standards of Care for Sex-Rejecting Procedures on Children and Adolescents" ("Kennedy Declaration" or "Declaration"). The Kennedy Declaration purports to set a new quality standard for healthcare, for the entire United States, that certain medical treatments for gender dysphoria or related disorders (hereinafter "gender-affirming care" or "medically necessary transgender healthcare") for children and adolescents are "neither safe nor effective." According to the Kennedy Declaration, HHS may bar healthcare providers and institutions from participating in Medicare, Medicaid, and other federal healthcare programs if they treat *any* children or adolescents with these medical interventions, even outside federally funded health programs. *See* 42 U.S.C. § 1320a-7(b)(6)(B).

2.      The Kennedy Declaration exceeds the Secretary's authority and violates the Administrative Procedure Act and the Medicare and Medicaid statutes.

3.      The Kennedy Declaration is procedurally defective. At minimum, Secretary Kennedy and HHS cannot circumvent statutorily mandated notice and comment requirements by changing substantive legal standards by executive fiat. This action violates the rulemaking requirements under the APA, 5 U.S.C. § 553(b), and the rulemaking requirements under Medicare, 42 U.S.C. § 1395hh(a)(2), which provide that "[n]o rule, requirement, or other statement of policy … that establishes or changes a substantive legal standard" governing Medicare may take effect unless the Secretary follows notice-and-comment rulemaking procedures and provides a minimum of sixty days for public comment.

4.      The Kennedy Declaration also substantively violates the APA. First, the Declaration exceeds the Secretary's authority. Congress has not given the Secretary the authority to define the professionally established standard of care. The Kennedy Declaration cites no statute authorizing the Secretary to do so by "declaration," instead stating that it is issued "pursuant to the authority vested in the HHS Secretary," and "informed by 42 C.F.R. § 1001.2." But 42 C.F.R. § 1001.2 only defines "professionally recognized standards of health care." It does

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

not authorize the Secretary to "declare" what those standards are. Agencies cannot grant themselves power that Congress has not conferred.

5. The Kennedy Declaration is also contrary to law. Congress expressly prohibits "any Federal officer … to exercise any supervision or control over the practice of medicine." 42 U.S.C. § 1395. Defendants have made clear that the Kennedy Declaration does just that. In announcing the Kennedy Declaration, Secretary Kennedy characterized it as "a clear directive to providers,"[1] and HHS touted that the Declaration means medically necessary gender-affirming care for transgender youth "do[es] not meet professionally recognized standards of health care" and that "practitioners who perform [gender-affirming care] on minors would be deemed out of compliance with those standards."[2]

6. The Kennedy Declaration has immediate, significant, and harmful impacts on the Plaintiff States as administrators of state Medicaid programs and as regulators of the practice of medicine.

7. The Kennedy Declaration directly harms Plaintiff States' abilities to administer approved state Medicaid plans in accordance with state laws that protect and guarantee medically necessary gender-affirming care. The Declaration further harms the Plaintiff States' administration of state Medicaid plans by purporting to announce a rule of decision that HHS will use as a basis to exclude from Medicaid a large swath of clinicians—including pediatricians, family medicine doctors, and endocrinologists—without process or authority. The Declaration also purports to provide a basis to exclude any "entity" employing those clinicians—including hospitals, clinics, and family practices—many of which the Plaintiff States rely upon to operate their Medicaid and other health care programs.

---

[1] U.S. Department of Health and Human Services, *Protecting Children*, at 3:50-4:30 (YouTube, Dec. 18, 2025), https://www.youtube.com/watch?v=aY1XfN6Tt0Q.

[2] Press Release, U.S. Department of Health and Human Services, HHS Acts to Bar Hospitals from Performing Sex-Rejecting Procedures on Children (Dec. 18, 2025), available at https://www.hhs.gov/press-room/hhs-acts-bar-hospitals-performing-sex-rejecting-procedures-children.html.

Page 3 – AMENDED COMPLAINT

8.      The Kennedy Declaration also harms the Plaintiff States in their capacity as regulators of the medical profession within their jurisdictions. Each of the Plaintiff States license and discipline medical professionals. The Kennedy Declaration seeks to "supersede[] 'Statewide … standards of care'"—and with it, undermines the Plaintiff States' traditional sovereign authority to regulate the practice of medicine.

9.      The Secretary has no legal authority to substantively alter the standards of care and effectively ban, by fiat, an entire category of healthcare. Nor does the Secretary have authority to threaten providers' participation in federal programs, including reimbursement by Medicare and Medicaid, by fiat. The Kennedy Declaration directly violates the Social Security Act's provision barring federal officers or employees from exercising control over the practice of medicine, and it ignores the Congressionally required procedures established to ensure any such decisions are based on prevailing medical standards and rigorous scientific evidence, and subject to public notice and comment.

## II.      JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and the Administrative Procedure Act, 5 U.S.C. § 702.

11.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), (e)(1) and 5 U.S.C. § 703. Defendants are a United States agency and officers or employees sued in their official capacities. The principal offices of the Oregon Health Authority and the capital of Oregon are in Marion County, and a substantial part of the events or omissions giving rise to this Complaint occurred and continue to occur within Marion County and the District of Oregon.

## III.      PARTIES

**A.      Plaintiffs**

12.     Plaintiff State of Oregon is a sovereign state of the United States. Oregon is represented by Attorney General Dan Rayfield, who is the chief legal officer of Oregon. The Oregon Health Authority administers the Oregon Health Plan, which is Oregon's Medicaid plan and Children's Health Insurance Program (CHIP). The Oregon Health Plan provides coverage for gender-affirming care for individuals under nineteen years old. Oregon HB 2002, enacted in

Page 4 – AMENDED COMPLAINT

2023, guarantees coverage for all medically necessary gender-affirming care services in commercial insurance, the Oregon Health Plan, and public employee health plans. Oregon law also provides that laws of other states that authorize civil or criminal action against a person for receiving, providing, or aiding or abetting in the provision of gender-affirming care are contrary to the public policy of Oregon. Or. Rev. Stat. § 24.500(2). Oregon law also protects medical professionals from discipline, license revocation, or adverse action by malpractice insurers when that adverse action is based solely on providing gender-affirming care in other jurisdictions. Or. Rev. Stat. §§ 675.070, 675.540, 675.745, 676.313, 677.190.

13.     Plaintiff State of Washington, represented by and through its Attorney General, is a sovereign state of the United States of America. Attorney General Nick Brown is Washington's chief law enforcement officer and is authorized under Wash. Rev. Code § 43.10.030(1) to pursue this action. Plaintiff State of Washington administers Apple Health, which includes its Medicaid program through the Washington State Health Care Authority. Apple Health includes Washington's Medicaid, CHIP, and programs funded with state-only funds. The Washington Health Care Authority is required by state law to cover gender-affirming care in its public health programs. Wash. Rev. Code § 74.09.700. And health insurance plans issued on or after January 1, 2022, are likewise required to cover gender-affirming care. Wash. Rev. Code § 48.43.0128. Washington law also protects medical professionals from discipline, license revocation, or adverse action by malpractice insurers based upon adverse action in other jurisdictions based solely on providing gender-affirming care. Wash. Rev. Code § 18.130.450.

14.     Plaintiff State of New York is a sovereign state in the United States of America. New York is represented by Attorney General Letitia James, who is the chief law enforcement officer of New York. The New York State Constitution prohibits discrimination on the basis of gender identity and gender expression. N.Y. Const. art. I, § 11(a). Under New York law, health care providers cannot deny services or treat a person less well than others on the basis of their protected characteristics including sex and gender identity or expression. N.Y. Exec. Law § 296 *et seq.* New York law also protects access to health care without discrimination on the basis of sex, gender identity, gender expression, transgender status, or diagnosis of gender dysphoria and

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

requires providers to treat their patients fairly and bans discrimination on the basis of sex, gender identity, disability, age, or source of payment. N.Y. Comp. Civ. R. & Regs. tit. 10, §§ 405.7(b)(2), (c)(2); N.Y. Comp. Civ. R. & Regs. tit. 9, § 466.13; N.Y. Pub. Health Law §§ 2803(1)(g), 2803-C-2. In New York State (NYS), the state Medicaid program, overseen by the NYS Department of Health (DOH), provides comprehensive health coverage to more than 7 million New Yorkers annually. NYS DOH also administers the Child Health Plus program, which is available for individuals under the age of nineteen who reside in New York. These programs provide coverage for a wide range of services, depending on the enrollee's age, financial circumstances, family situation, or living arrangements, through a large network of health care providers. NYS provides Medicaid coverage through the state-administered Medicaid fee-for-service program and through managed care arrangements. The majority of NYS Medicaid members are covered under Medicaid Managed Care. The costs of covering Medicaid services are shared between the state and federal government with a Federal Medical Assistance Percentage (FMAP) that generally provides 50% matching federal funding for most services.

15.    Plaintiff State of California is a sovereign state in the United States of America. California is represented by Rob Bonta, the Attorney General of California, who is the chief law enforcement officer of California. The California Department of Health Care Services (DHCS) administers the state's Medicaid program, known as Medi-Cal, and California's CHIP. DHCS requires Medi-Cal managed care health plans to provide gender-affirming care. Insurers and healthcare plans covered by California law are prohibited from denying an individual a plan contract, health insurance policy, or coverage for a benefit included in the contract or policy, based on a person's sex, which is defined to include gender identity. Cal. Ins. Code § 10140. California law protects healthcare professionals from denial of application for licensure or suspension, revocation, or other discipline based on the performance, recommendation, or provision of gender-affirming care by medical boards that certify health professionals. Cal. Bus. & Prof. Code, §§ 850.1, 852. And California law protects medical professionals from the reach of other states with civil, criminal, and professional consequences related to the provision of gender-affirming care. Cal. Pen. Code, § 13778.3.

Page 6 – AMENDED COMPLAINT

16.     Plaintiff State of Colorado, represented by and through the Attorney General, is a sovereign state of the United States of America. Attorney General Philip J. Weiser acts as the chief legal representative of the State and is authorized by Colo. Rev. Stat. § 24-31-101 to pursue this action. Colorado's Medicaid program is Health First Colorado, administered by the Colorado Department of Health Care Policy and Financing (HCPF). Colorado also provides Child Health Plan Plus (CHP+), which provides comprehensive health care benefits to uninsured children up to age nineteen who do not qualify for Medicaid and meet certain income criteria. As of January 2025, over 500,000 children were covered by Health First Colorado and CHP+. Both Health First Colorado and CHP+ are jointly funded by the federal government and Colorado state government, at different rates depending on the individual and population. On average, about 60 percent of all funding for HCPF's budget, including Health First Colorado, CHP+, other programs and administration comes in the form of federal matching funds. In fiscal year 2024, Colorado's total expenditures for Health First Colorado and CHP+ were approximately $15.1 billion total funds, including $4.5 billion general State funds. The Colorado Antidiscrimination Act prohibits discrimination on the basis of gender identity and expression. Colo. Rev. Stat. § 24-34-601. Under Colorado law, patients have a legal right to seek gender-affirming care. Colo. Rev. Stat. §§ 10-16-121(1)(f), 12-30-121, 13-21-133, 16-3-102(2), 16-3-301(4); Colo. Rev. Stat. § 10-16-104(30)(b), (d); 10 Code Colo. Regs. 2505-10-8.735. Similarly, State-regulated health insurance plans are prohibited from withholding coverage from individuals based on gender identity or gender dysphoria. 3 Code Colo. Regs. §702-4, Reg. 4-2-42, §5(A)(1)(o); Colo. Rev. Stat. § 10-16-104(30)(b). Likewise, because gender-affirming health care services are considered legally protected health care activities, *see* Colo. Rev. Stat. § 12-30-121(2), the Colorado Medical Board, the Colorado State Board of Nursing, and other affected health care regulatory boards may not deny licensure or otherwise impose disciplinary action against a licensee's licenses based solely on the provision of gender-affirming care, so long as the care provided otherwise meets generally accepted standards of medical practice in Colorado. Colo. Rev. Stat. § 12-30-121(2)(a). In addition, Colorado law protects patients and licensees who provide gender-affirming care from lawsuits and criminal prosecution in other states. Colo. Rev. Stat. §§ 12-30-

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

121(2); 13-21-133. Colorado also regulates the practice of medicine for providers and entities, including several major hospitals, that likewise provide gender-affirming care services. These institutions rely on Medicaid reimbursement, and up through the Kennedy Declaration, Colorado Health First and CHP+ have successfully received Medicaid reimbursement for the provision of such services.

17.      Plaintiff State of Connecticut, represented by and through the Attorney General, William M. Tong, is a sovereign state of the United States of America. Attorney General Tong is the State's chief legal officer and is authorized under Connecticut General Statutes § 3-125 to act in federal court on behalf of the State on matters of public concern. The Connecticut Department of Social Services administers Connecticut's Medicaid and CHIP. Connecticut's Medicaid and CHIP plans provide coverage for gender-affirming care for individuals under nineteen years old.

18.      Plaintiff District of Columbia is a municipal corporation organized under the Constitution of the United States. It is empowered to sue and be sued, and it is the local government for the territory constituting the permanent seat of the federal government. The District is represented by and through its chief legal officer, Attorney General Brian L. Schwalb. The Attorney General has general charge and conduct of all legal business of the District and all suits initiated by and against the District and is responsible for upholding the public interest. D.C. Code. § 1-301.81. In the District, neither health care providers nor health insurers may discriminate against or refuse services or treatment to a person based on their gender identity or expression. D.C. Code §§ 12-1402.31(a)(1), 31-2231.11(c).

19.      Plaintiff State of Delaware is a sovereign state of the United States. This action is brought on behalf of the State of Delaware by Attorney General Kathleen Jennings, the "chief law officer of the State." *Darling Apartment Co. v. Springer*, 22 A.2d 397, 403 (Del. 1941). Attorney General Jennings also brings this action on behalf of the State of Delaware pursuant to her statutory authority. Del. Code Ann. tit. 29, § 2504. The Delaware Department of Health and Social Services' Division of Medicaid and Medical Assistance administers the Delaware Medical Assistance Plan (DMAP), which is Delaware's Medicaid plan and CHIP. DMAP provides coverage for gender-affirming care for individuals under nineteen years old. In 2013, Delaware

Page 8 – AMENDED COMPLAINT

enacted the Gender Identity Nondiscrimination Act of 2013 (GINA), which added gender identity to the already-existing list of protected classes in Delaware's nondiscrimination laws. 6 Del. C. §§ 4501-4, 4601-5, 4607, 4619; 9 Del. C. § 1183; 11 Del. C. § 1304, 18 Del. C. § 2304, 19 Del. C. §§ 710-11, 25 Del. C. §§ 5105, 5116, 5141, 5316, 5953, 6962. In 2016, the Delaware Department of Insurance, pursuant to GINA and the Affordable Care Act, issued Bulletin No. 86, which prohibited "the denial, cancellation, termination, limitation, refusal to issue or renew, or restriction of insurance coverage or benefits thereunder because of a person's gender identity or transgender status, or because the person is undergoing gender transition. This includes the availability of health insurance coverage and the provision of health insurance benefits."

20.     Plaintiff State of Hawai'i, represented by and through its Attorney General Anne E. Lopez, is a sovereign state of the United States of America. The Attorney General is Hawaii's chief legal officer and chief law enforcement officer and is authorized by Hawaii Revised Statues § 28-1 to pursue this action.

20.21.  Plaintiff State of Illinois is a sovereign state of the United States. Illinois is represented by Kwame Raoul, the Attorney General of Illinois, who is the chief law enforcement officer of Illinois and authorized to sue on the State's behalf. Under Illinois law, the Attorney General is authorized to represent the State's interests by the Illinois Constitution, article V, section 15. *See* 15 Ill. Comp. Stat. 205/4. The Illinois Department of Healthcare and Family Services administers the Illinois Medical Assistance Program, which includes medical services authorized for eligible individuals under Illinois's Medicaid Plan and CHIP. The Illinois Medical Assistance Program provides coverage for medical services that are used to treat gender dysphoria for individuals under the age of nineteen years old. The Lawful Health Care Activity Act, enacted in 2024, provides that "the treatment of gender dysphoria or the affirmation of an individual's gender identity or gender expression, including … care, and services of a medical, behavioral health, mental health, surgical, psychiatric, therapeutic, diagnostic, preventative, rehabilitative, or supportive nature" is "lawful health care" in Illinois. 735 Ill. Comp. Stat. 40/28-10. The Illinois Medical Practice Act also protects medical professionals who provide or assist in providing lawful gender-affirming care. 225 Ill. Comp. Stat. 60/22(C)(3). The Department of

Page 9 –  AMENDED COMPLAINT

Financial and Professional Regulation may not "revoke, suspend, place on probation, reprimand, refuse to issue or renew, or take any other disciplinary or non-disciplinary action" against medical professionals who provide or assist in providing gender-affirming care in Illinois. *Id*. This protection applies to nurses, pharmacists, registered surgical assistants and technologists, behavioral analysts, professional and clinical counselors, clinical psychologists, social workers, and marriage and family therapists. *See* 225 Ill. Comp. Stat. 65/65-65(a)(1); 225 Ill. Comp. Stat. 65/70-5(b-5)-(b-20); 225 Ill. Comp. Stat. 85/30.1(a); 225 Ill. Comp. Stat. 85/30(c-5)-(c-20); 225 Ill. Comp. Stat. 130/75(b-1)-(b-4); 225 Ill. Comp. Stat. 6/60(c-1)-(c-4); 225 Ill. Comp. Stat. 107/80(c-1)-(c-4); 225 Ill. Comp. Stat. 15/15(b)-(e); 225 Ill. Comp. Stat. 20/19(4.5)-(4.20); 225 Ill. Comp. Stat. 55/85(d-5)-(d-20).

21.22.  Plaintiff State of Maine is a sovereign state of the United States of America. Maine is represented by Aaron M. Frey, the Attorney General of Maine. The Attorney General is authorized to pursue this action pursuant to 5 Me. Rev. Stat. Ann. tit. 5 § 191. The Office of MaineCare Services in the Maine Department of Health and Human Services administers MaineCare, which is Maine's Medicaid plan and includes CHIP. Maine law requires the Department to provide reimbursement for medically necessary treatment for or related to gender dysphoria or a comparable or equivalent diagnosis. Me. Rev. Stat. Ann. tit. 22 § 3174-MMM (Supp. 2025). Section 3174-MMM also prohibits the Department from discriminating in its reimbursement of medically necessary treatment on the basis of a MaineCare Member's gender identity or expression, or on the basis that the Member is a transgender individual. Further, the Legislature has declared that gender-affirming healthcare is legally-protected healthcare activity, and that any act of another state that prohibits, criminalizes, sanctions, authorizes a civil action against or otherwise interferes with a person in Maine who engages in such legally-protected healthcare activity, including aid and assistance with gender-affirming healthcare, is against the public policy of the state of Maine. Me. Rev. Stat. Ann. tit. 14 § 9001 (Supp. 2025).

22.23.  Plaintiff State of Maryland is a sovereign state of the United States of America. Maryland is represented by Attorney General Anthony G. Brown who is the chief legal officer of Maryland. The Maryland Department of Health administers the Maryland Medical Assistance

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Program, which includes Maryland's Medicaid Plan and the Maryland Children's Health Program (MCHP). The Maryland Medical Assistance Program covers gender-affirming care for individuals under nineteen years old. Under the Trans Health Equity Act, the Program is required to cover gender-affirming care, ensuring equitable health care access for individuals who are transgender and gender diverse. 2023 Md. H.B. 283. Maryland law also defines "legally protected health care" to include gender-affirming care, Md. Code Ann., State Pers. & Pens. § 2-312(a)(3)(ii). Therefore, Maryland law protects medical professionals from out-of-state civil judgments and subpoenas related to legally protected health care, Md. Code Ann., Cts. & Jud. Proc., §§ 11-802, 9-402, as well as from changes in insurance coverage or premiums due to the provision of legally protected healthcare, Md. Code Ann., Ins., § 19-117.

~~23.~~24.  Plaintiff Commonwealth of Massachusetts is a sovereign state of the United States and is represented by and through its Attorney General, Andrea Joy Campbell. Attorney General Campbell is authorized to pursue this action under Mass. Gen. Laws ch. 12, §§ 3, 10. Massachusetts's Executive Office of Health and Human Services operates the umbrella system known as MassHealth, which encompasses the state-federal Medicaid program, CHIP, and the 1115 Demonstration Project. Massachusetts prohibits discrimination on the basis of gender identity in the provision of healthcare services and insurance coverage, including by providers who treat patients covered by MassHealth. Mass. Gen. Laws ch. 272, §§ 92A, 98; 130 Mass. Code. Regs. § 450.202(B). Accordingly, MassHealth provides coverage for a range of gender-affirming care, including for those under 18 years of age. Access to gender-affirming care is a right secured by the constitution and laws of the Commonwealth, and acts or omissions undertaken to aid or encourage, or attempt to aid or encourage, another person in the exercise and enjoyment of the right to access healthcare services are also legally protected healthcare activities under Massachusetts law. Mass. Gen. Laws ch. 12, § 11 I ½(a)-(d).

~~24.~~25.  Plaintiff State of Michigan is a sovereign state of the United States of America. The State of Michigan is represented by Attorney General Dana Nessel, who is the chief law enforcement officer of the State of Michigan. Michigan's Medicaid program covers medically necessary gender-affirming and gender-confirming medical treatment.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

25.26.  Plaintiff State of Minnesota is a sovereign state of the United States of America. Minnesota's Attorney General, Keith Ellison, is the chief law enforcement officer of Minnesota and is authorized under Minnesota Statutes Chapter 8 and has common law authority to bring this action on behalf of the State and its residents, to vindicate the State's sovereign and quasi-sovereign interests, and to remediate all harm arising out of—and provide full relief for—violations of the law. Minnesota's Department of Human Services (referred to as DHS) administers Minnesota's Medicaid program (known as Medical Assistance) as well as MinnesotaCare, Minnesota's Basic Health Plan. DHS' operation of Medical Assistance also includes use of funding for some populations from CHIP. Both Medical Assistance and MinnesotaCare generally provide coverage for gender-affirming care for individuals under nineteen years old. Minnesota Statute § 256B.0625, subdiv. 3(a) and Minnesota Statute § 62Q.585 require that most health insurance plans offered, sold, issued, or renewed must provide coverage for all medically necessary gender-affirming care services. Minnesota law also prevents other states from interfering with gender-affirming care provided in Minnesota. Minn. Stat. § 260.925.

27.    Plaintiff State of Nevada, represented by and through Attorney General Aaron D. Ford, is a sovereign State within the United States of America. The Attorney General is the chief law enforcement officer of the State of Nevada and is authorized to pursue this action under Nev. Rev. Stat. § 228.110 and Nev. Rev. Stat. § 228.170. The Nevada State Constitution prohibits discrimination on the basis of sex, gender identity, and gender expression. Nev. Const. art. 1, § 24. The Nevada Division of Health Care Financing and Policy administers Nevada's Medicaid program, known as Nevada Medicaid, and Nevada's CHIP. Under Nevada law, insurers and carriers cannot discriminate against any person "on the basis of actual or perceived gender identity or expression." Nev. Rev. Stat. §§ 689A.033, 689B.0675, 689C.1975, 695A.198, 695B.3167, 695C.204, 695G.415. Similarly, Nevada law guarantees coverage for all medically necessary gender-affirming care services in commercial insurance, Nevada Medicaid, and public employee health plans. Nev. Rev. Stat. §§ 422.272362, 689A.0432, 689B.0334, 689C.1652, 695A.1867, 695B.1915, 695C.16934, 695G.1718.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

26.28.  Plaintiff State of New Jersey is a sovereign state in the United States of America. New Jersey is represented by Attorney General Matthew Platkin, who is the chief law enforcement officer for the State of New Jersey. The New Jersey Law Against Discrimination prohibits discrimination and harassment based on gender identity or expression in places of public accommodation, including clinics, hospitals, and other medical settings. *See* N.J. Stat. Ann. §§ 10:5-5(*l*), (rr), 10:5-12(f). Under New Jersey law, managed care organizations that contract with New Jersey Department of Human Services to administer New Jersey's Medicaid programs are also prohibited from categorically excluding gender-affirming care from health insurance coverage. N.J. Stat. Ann. § 30:4D-9.1.

27.29.  Plaintiff State of New Mexico is a sovereign state in the United States of America. New Mexico is represented by Attorney General Raúl Torrez, who is the chief law enforcement officer of New Mexico and is authorized to pursue this action under N.M. Stat. Ann. § 8-5-2(B). The New Mexico Health Care Authority (HCA) administers both New Mexico's Medicaid program and CHIP. Pursuant to the CHIP State Plan, CHIP enrollees receive Medicaid covered services rather than a separate set of CHIP specific benefits. HCA's policy is to provide Medicaid coverage for medically necessary gender-affirming care as a covered service for members consistent with applicable coverage criteria, including members under nineteen years old. New Mexico's Reproductive and Gender-Affirming Health Care Freedom Act prohibits public bodies from discriminating on the basis of a person's use of or refusal to use gender-affirming health care services. N.M. Stat. Ann. § 24-34-3(A) (2023). New Mexico also prohibits public bodies from denying, restricting, or interfering with "a person's ability to access or provide … gender-affirming health care within the medical standard of care." N.M. Stat. Ann. § 24-34-3(B) (2023). Additionally, New Mexico's Reproductive and Gender-Affirming Health Care Protection Act prohibits public bodies from releasing information "in furtherance of a foreign investigation or proceeding that seeks to impose civil or criminal liability or professional disciplinary action upon an individual or entity" for engaging in the provision of gender-affirming health care. See N.M. Stat. Ann. §§ 24-35-1–8 (2023).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

28.30.  Plaintiff Josh Shapiro brings this suit in his official capacity as Governor of the Commonwealth of Pennsylvania. The Pennsylvania Constitution vests "[t]he supreme executive power" in the Governor, who "shall take care that the laws be faithfully executed." Pa. Const. art. IV, § 2. The Governor oversees all executive agencies in Pennsylvania and is authorized to bring suit on their behalf. 71 Pa. Stat. Ann. §§ 732-204(c), 732-301(6), 732-303. The Pennsylvania Department of Human Services administers the Pennsylvania Medical Assistance Program, which is Pennsylvania's Medicaid program, and administers the Pennsylvania CHIP. Pennsylvania Medical Assistance and Pennsylvania CHIP provide coverage for gender-affirming care for individuals under nineteen years old when medically necessary.

29.31.  Plaintiff State of Rhode Island is a sovereign state of the United States. Rhode Island is represented by Attorney General Peter F. Neronha, who is the chief legal officer of Rhode Island. The Rhode Island Executive Office of Health and Human Services is the single state agency that administers the Rhode Island Medicaid program, which encompasses both Rhode Island's Medicaid program and CHIP. The Rhode Island Medicaid program provides coverage for gender-affirming care for individuals under nineteen years old. Additionally, Rhode Island law prohibits discrimination on the basis of sex, gender identity, or gender expression in the provision of health care. State-licensed health care facilities are prohibited from denying care on the basis of sex, gender identity, or gender expression. 23 R.I. Gen. Laws § 23-17-19.1; see also 28 R.I. Gen. Laws § 28-5.1-12 (requiring state-licensed or chartered health care facilities to comply with the state policy of equal opportunity and nondiscrimination in patient admissions and health care service); 220 R.I. Code R. 80-05-1 (obligating health care facilities to admit patients without discriminating on the basis of gender identity or expression). State agencies, including the Rhode Island Executive Office of Health and Human Services, are obligated to render services to Rhode Islanders "without discrimination based on … gender identity or expression," and state agencies are further prohibited from becoming "party to any agreement, arrangement, or plan that has the effect of sanctioning those patterns or practices." 28 R.I. Gen. Laws § 28-5.1-7. The Rhode Island Medicaid program has, for over a decade, provided gender-

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

affirming care to its members, including those under nineteen years old.[3] All Rhode Island

Medicaid managed care organizations are required to provide such care to their members. The

Rhode Island Medicaid program has sought and received Federal Financial Participation for the

provision of such services.

~~30.~~32.   Plaintiff State of Vermont, represented by Vermont Attorney General Charity

Clark, is a sovereign state of the United States of America. Attorney General Clark is Vermont's

chief legal officer and is authorized to pursue this action on behalf of the State. Vt. Stat. Ann. tit.

3, § 159. The State of Vermont administers its Medicaid program through the Vermont Agency of

Human Services. Vermont Medicaid provides coverage for gender-affirming care for all

residents, including individuals under nineteen years old. Vt. Stat. Ann. tit. 8, § 4071; Vt. Agency

of Human Servs., Health Care Administrative Rules § 4.238. Vermont also guarantees coverage

for all medically necessary gender-affirming care services in commercial insurance and public

employee health plans. Vt. Stat. Ann. tit. 8, § 4071; Vt. Dep't of Financial Reg., Ins. Bulletin 174

(June 12, 2019). Vermont law also provides that laws that authorize civil or criminal action

against a person for receiving, providing, or aiding and abetting in the provision of gender-

affirming care are contrary to the public policy of Vermont. Vt. Stat. Ann. tit. 12, § 7302. Finally,

Vermont law protects health care providers from disciplinary action based solely on the provider

performing or assisting in gender-affirming care. Vt. Stat. Ann. tit. 26, § 1354(d).

~~31.~~33.   Plaintiff State of Wisconsin is a sovereign state of the United States of America.

Wisconsin is represented by Joshua L. Kaul, the Attorney General of Wisconsin. Attorney

General Kaul is authorized to sue on behalf of the State. Wisconsin's Medicaid program is

administered by the Wisconsin Department of Health Services. In *Flack v. Wisconsin Department*

*of Health Services*, Case No. 18-cv-309-wmc (W.D. Wis.), the United States District Court for

the Western District of Wisconsin issued a decision finding that administrative rules that

excluded coverage of gender-affirming care services violated federal law, and it issued a

permanent injunction enjoining the Wisconsin Department of Health Services from enforcing

---

[3] EOHHS Gender Dysphoria/Gender Nonconformity Coverage Guidelines (October 28, 2015),
https://eohhs.ri.gov/sites/g/files/xkgbur226/files/Portals/0/Uploads/Documents/MA-Providers/MA-Reference-
Guides/Physician/gender_dysphoria.pdf.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

this exclusion. As a result of this permanent injunction, and since October 31, 2019, Wisconsin Medicaid provides coverage for gender-affirming care for individuals, including those under nineteen years old.

**B.    Defendants**

32.34.  Defendant Robert F. Kennedy, Jr., is the Secretary of the Department of Health and Human Services, and that agency's highest ranking official. He is charged with the supervision and management of all decisions and actions of that agency. 42 U.S.C. §§ 3501a, 3502. He is sued in his official capacity.

33.35.  Defendant Thomas March Bell is Inspector General of the Department of Health and Human Services. He is sued in his official capacity.

34.36.  Defendant Office of Inspector General is a component of the Department of Health and Human Services. 5 U.S.C. §§ 401, 402.

35.37.  Defendant the United States Department of Health and Human Services is a Department within the Executive Branch of the United States government. 42 U.S.C. §§ 3501, 3501a.

## IV.    FACTUAL BACKGROUND

**A.    Gender-Affirming Care Is Medically Necessary Health Care Protected by State Laws**

36.38.  The Kennedy Declaration targets so-called "sex-rejecting procedures," a category of medical interventions known by medical professionals as "gender-affirming care." Gender-affirming care includes puberty-blocking medications, hormone therapy, and gender-affirming surgery. Gender-affirming care is medically appropriate, necessary health care backed by overwhelming medical consensus, including the support of the American Academy of Family Physicians, the American Academy of Pediatrics, the American College of Obstetricians and Gynecologists, the American Medical Association, the American Psychological Association, the Endocrine Society, and other American medical organizations.

37.39.  Research and clinical data support gender-affirming care as a safe and effective treatment for gender dysphoria in adolescents. Patients receiving gender-affirming care have

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

high rates of satisfaction and low incidence of regret compared with other medical treatments. Conversely, untreated gender dysphoria can have devastating impacts to the mental health and wellbeing of those youth and adolescents, and can lead to increased incidence of anxiety, depression, eating disorders, substance abuse, self-harm, and suicidality. For many patients, medically necessary gender-affirming care is life-saving.

**B.    The Kennedy Declaration**

~~38.~~40.   On December 18, 2025, Secretary Kennedy issued a "Declaration of the Secretary of the Department of Health and Human Services," subtitled, "RE: Safety, Effectiveness, and Professional Standards of Care for Sex-Rejecting Procedures on Children and Adolescents." A copy of the Kennedy Declaration is attached as Exhibit A to the Complaint.

~~39.~~41.   The Kennedy Declaration purports to be issued pursuant to the Secretary's "authority and responsibilities under federal law, and pursuant to 42 C.F.R. § 1001.2." The cited regulation, 42 C.F.R. § 1001.2, is a definitional provision governing decisions to exclude health care providers from participation in Medicare and Medicaid. *See* 42 C.F.R. § 1001.1(b). This regulation does not confer any authority to the Secretary. *See Biden v. Missouri*, 142 S. Ct. 647, 656 (2022) (Thomas, J., dissenting) (refusing to find vast powers hidden in definitional provisions). The provision only refers to situations in which HHS or one of its component agencies has made a determination regarding a treatment modality's safety and efficacy—it does not purport to confer authority to the Secretary to make such pronouncements. *See* Department of Health and Human Services, Office of Inspector General, Health Care Programs: Fraud and Abuse; Revised OIG Exclusion Authorities Resulting From Public Law 104–191, 62 Fed. Reg. 47,182, 47,185, 47.189 (Sep. 8, 1997) (agency's explanation of the language). An agency has no power to confer authority on itself. *See New York v. FERC*, 535 U.S. 1, 18 (2002) ("[A]n agency literally has no power to act … unless and until Congress confers power upon it.") (quoting *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355 (1986)).

~~40.~~42.   The Kennedy Declaration is purportedly based on a report that HHS issued in May 2025, and subsequently revised in November 2025, titled "Treatment for Pediatric Gender Dysphoria: Review of Evidence and Best Practices" (the "HHS Review"). The Kennedy

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Declaration creates a new term, "sex-rejecting procedures," which is never used in the HHS Review, and defines it to include both pharmaceutical interventions like puberty blockers and hormone therapy, as well as surgeries such as mastectomies and vaginoplasties. The Kennedy Declaration then states that these "'sex-rejecting procedures' are neither safe nor effective as a treatment modality for gender dysphoria, gender incongruence, or other related disorders in minors, and therefore, fail to meet professional recognized standards of health care." The Declaration expressly purports to supersede "Statewide or national standards of care," including those backed by medical consensus with support from national medical organizations.

41.43.  The Kennedy Declaration then threatens that HHS may "exclude individuals or entities from participation in any Federal health care program if the Secretary determines the individual or entity has furnished or caused to be furnished items or services to patients of a quality which fails to meet professionally recognized standards of health care." While the Kennedy Declaration states only that providers "may" be excluded, and that a separate determination would be made under 42 C.F.R. § 1001.701, the Declaration itself establishes an HHS policy that the provision of any gender-affirming medical care to adolescents categorically fails to meet professionally recognized standards of care, and therefore is sufficient grounds to exclude a health care provider from participation in the Medicare and Medicaid programs.

42.44.  The Declaration thus purports to bind the HHS Office of the Inspector General (OIG), as well as "Administrative Law Judges (ALJs), the Departmental Appeals Board (DAB), and federal courts in reviewing the imposition of exclusions by the OIG." 42 C.F.R. § 1001.1. The authority to exclude individuals or entities from participation in Medicare is set out in sections 1128 (42 U.S.C. § 1320a-7) and 1156 (42 U.S.C. § 1320c-5) of the Social Security Act. OIG is statutorily authorized to exclude individual providers only upon notice and due process of law, with such decisions appealable to the HHS Departmental Appeals Board, and subject to judicial review. The Department's regulations do not give the Secretary authority to predetermine exclusion decisions. 42 C.F.R. §§ 1001.2001 *et seq*.

43.45.  Exclusion is an exceedingly serious punishment. "The effect of an OIG exclusion is that no Federal health care program payment may be made for any items or services furnished

(1) by an excluded person or (2) at the medical direction or on the prescription of the excluded person." Office of the Inspector General, Special Advisory Bulletin on the Effect of Exclusion from Participation in Federal Health Care Programs at 6 (May 8, 2013). To give an example of the consequences of exclusion, the OIG explained, "no payment may be made to a hospital for the items or services furnished by an excluded nurse to Federal health care program beneficiaries, even if the nurse's services are not separately billed and are paid for as part of a Medicare diagnosis-related group payment received by the hospital." *Id.*

44.46.   The exclusion also prohibits "payment for items or services furnished by an excluded individual … beyond patient care." *Id.* "[P]reparation of surgical trays," "review of treatment plans," and even "transportation services" are included in the exclusion. *Id.* at 7. "[A]dministrative and management services" are also prohibited, such that "an excluded individual may not serve in an executive or leadership role … at a provider that furnishes items or services payable by Federal health care programs." *Id.*

45.47.   Violating an exclusion by furnishing items or services for which Federal health care program payment is sought can result in penalties including civil monetary penalties, civil actions, and criminal prosecutions. *Id.* at 9. And civil monetary penalties can be imposed on providers that employ or enter into contracts with excluded persons to provide items or services payable by Federal health care programs. *Id.* at 10. The OIG makes public the List of Excluded Individuals and Entities (https://exclusions.oig.hhs.gov) that employers can use to make employment decisions. *Id.* at 11; *see also* Office of the Inspector General, Search the Exclusions Database.

46.48.   The Kennedy Declaration was issued with apparent immediate effect without prior notification to members of the public or to the health care providers it purports to regulate, despite statutory mandates that "no rule, requirement, or other statement of policy … that establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services or benefits" under the Medicare program shall take effect unless it is promulgated by

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

regulation with notice of the proposed regulation in the Federal Register and at least 60 days for public comment. 42 U.S.C. §§ 1395hh(a)(2), (b)(1).

47.49.  The Kennedy Declaration offers no attempt to justify legislative rulemaking outside statutorily mandated notice and comment procedures and cites no exception or exemption to these requirements. Only certain limited exceptions to this notice and comment requirement apply, including where "a statute specifically permits a regulation to be issued in interim final form or otherwise with a shorter period for public comment," "a statute establishes a specific deadline" for the regulation's requirements that is less than 150 days after the date of the enactment of that statute, or certain other exceptions codified in the APA. None of these exceptions apply here.

48.50.  By contrast, on the very same day that HHS issued the Kennedy Declaration, it announced two other notices of proposed rulemaking seeking to amend certain program requirements under Medicare and Medicaid to restrict the expenditure of federal funds for medically necessary healthcare for transgender youth and to exclude hospitals that deliver these services from participation in the Medicare and Medicaid programs. These notices were published in the Federal Register and provided for a 60-day period of public comment. *See* Department of Health and Human Services, Centers for Medicare & Medicaid Services, Medicaid Program, Prohibition on Federal Medicaid and Children's Health Insurance Program Funding for Sex-Rejecting Procedures Furnished to Children, 90 Fed. Reg. 59,441 (Dec. 19, 2025); Department of Health and Human Services, Centers for Medicare & Medicaid Services, Medicare and Medicaid Programs, Hospital Condition of Participation: Prohibiting Sex-Rejecting Procedures for Children, 90 Fed. Reg. 59,463 (Dec. 19, 2025).

49.51.  The Kennedy Declaration also purports to establish a standard of care and supersede other standards of care, despite the Medicare statute's clear "prohibition against any Federal interference," that restricts Federal officers or employees from "exercis[ing] any supervision or control over the practice of medicine or the manner in which medical services are provided[.]" 42 U.S.C. § 1395.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

50.52.  To Plaintiff States' knowledge, HHS has never before issued a "declaration" or other sub-regulatory guidance document purporting to apply a categorical definition of "safety and effectiveness" to any medical intervention. The Kennedy Declaration is the first, and it does so for an array of interventions recognized as valid treatment modalities by medical professionals in the Plaintiff States.

**C.    Plaintiff States Administer State Medicaid Programs**

51.53.  The Medicaid health insurance program was created by federal law and is funded by the federal government. Medicaid is the federally matched medical aid program created under Title XIX of the Social Security Act in which the federal government provides matching funds to States to help pay for health care for low-income and other eligible individuals. State Medicaid programs provide health insurance for individuals, including children, whose household incomes fall below certain eligibility thresholds that vary by state. Plaintiff States administer their Medicaid programs and receive federal matching funds to provide healthcare services to Medicaid-insured residents.

52.54.  CHIP is a related state-federal cooperative healthcare program authorized by section 2103 of the Social Security Act that offers coverage for certain low-income children and pregnant women. Thousands of children rely on CHIP for comprehensive coverage, including those that fall outside Medicaid eligibility but are unable to afford private or group health coverage. States are enabled to design their CHIP plan as a program separate from their state Medicaid plan, as an expansion of their Medicaid plan, or both. In all three instances, States retain significant discretion to determine which services and care are included, and which providers may participate, in their CHIP plans. Each of the Plaintiff States has a CHIP program.

53.55.  Medicaid affords "substantial discretion" to participating states. *Alexander v. Choate*, 469 U.S. 287, 303 (1985). That commitment to state discretion is apparent from the text and structure of the Medicaid statute itself. States can choose whether to participate in Medicaid in the first place. *See* 42 U.S.C. § 1396a. And even after states sign up, Medicaid is not a take-it-or-leave-it proposition. Instead, the statute affords each participating state "substantial discretion

to choose the proper mix of amount, scope, and duration limitations on coverage." *Alexander*, 469 U.S. at 303.

~~54.~~56.  Although states' participation in Medicaid is voluntary, since "1982 every State ha[s] chosen to participate …." *NFIB v. Sebelius*, 567 U.S. 519, 542 (2012 ). Once states choose to participate, states must comply with federal statutory and regulatory requirements, including the creation of a State Plan outlining the administration of their respective Medicaid programs. 42 C.F.R. § 431.10. Congress has delegated policy decisions about what services should be covered to participating states by allowing them to develop their own State Plans that specify, among other things, the particular covered services within the broad categories of inclusions in the Act. 42 U.S.C. § 1396a(a)(10); 42 C.F.R. § 431.10.

~~55.~~57.  As relevant here, State Plans also describe the state-specific standards to determine provider qualifications. The Medicaid Act provides that any individual eligible for assistance under a state Medicaid program may choose, as relevant here, any provider "qualified to perform the service or services required … who undertakes to provide him such services." 42 U.S.C. § 1396a(a)(23). By leaving the term "qualified" undefined, the Act leaves substantial discretion to states—exercising their traditional role regulating health and safety—in determining providers' qualifications for inclusion in their Medicaid programs. *See Medina v. Planned Parenthood South Atlantic*, 606 U.S. 357, 364 (2025).

~~56.~~58.  Pursuant to 42 U.S.C. § 1320a-7 and 42 U.S.C. § 1320c-5, Defendants have limited authority to determine which providers may participate in Medicaid programs as qualified providers. Neither section authorizes HHS to exclude providers from participation in Medicaid based solely on their provision of medically necessary gender-affirming care. And neither section authorizes the Secretary of HHS to set professionally recognized standards of care to be used to exclude providers.

~~57.~~59.  Moreover, if HHS seeks to exclude a provider based on these sections, it must provide specific process to the provider as set forth in the Social Security Act and implementing regulations. *See* 42 C.F.R. §§ 1001.1 *et seq.* These processes include but are not limited to issuance of a Notice of Intent to Exclude and an opportunity to respond to and challenge any

Page 22 ~~–~~ – AMENDED COMPLAINT

determinations by HHS. Any exclusion may be appealed to an Administrative Law Judge and the resulting decision may be appealed to the HHS Departmental Appeals Board. 42 C.F.R. § 1001.2007(c).

58.60.  HHS has continuously provided payments for gender-affirming care for minors. For example, the Oregon Health Plan, ensures "[c]omprehensive coverage for children under a Medicaid Section 1115 demonstration waiver." Under Oregon's 1115 waiver, Oregon may use a "Prioritized List of Health Services" to determine the services covered under state Medicaid and CHIP plans. Oregon's Prioritized List of Health Services, in turn, includes coverage for Gender Affirming Treatment, including medical and surgical treatment/psychotherapy. The Oregon Health Plan also provides coverage for gender-affirming care for individuals under nineteen years old through the Early and Periodic Screening, Diagnosis, and Treatment Program, which provides benefits for members of Oregon Health Plan under the age of 21 (or members who are under 26 and have Young Adults with Special Health Care Needs benefits) and covers medically necessary services as defined in Section 1905(a) of the Social Security Act (42 U.S.C. § 1396d). Those covered services include gender-affirming medical treatment.

59.61.  For further example, Washington's Apple Health program has successfully sought reimbursement from the federal government for gender-affirming care for decades, and it claims millions of dollars annually for reimbursement for gender-affirming care provided as a part of Apple Health, including to adolescents. There are almost 6,000 distinct providers that provide gender-affirming care in Washington through the Medicaid program.

60.62.  For further example, New York's Medicaid program, including Child Health Plus, provides coverage for medically necessary gender-affirming care for both minors and adults who meet defined criteria. *See* 18 NY Code R. Regs. 505.2; NYS Dep't of Health, Office of Health Insurance Programs, *Criteria Standards for the Authorization and Utilization Management of Hormone Therapy and Surgery for the Treatment of Gender Dysphoria*, https://www.health.ny.gov/health_care/managed_care/plans/docs/treat_gender_dysphoria.pdf; NYS Dep't of Health, Office of Health Insurance, *Physician Surgery Procedure Codes; New York State Medicaid Provider Procedure Code Manual*,

Page 23 –— AMENDED COMPLAINT

https://www.emedny.org/ProviderManuals/Physician/PDFS/Physician%20Procedure%20Codes %20Sect5.pdf. *See also Cruz v. Zucker*, 218 F. Supp. 3d 246, 249 (S.D.N.Y. 2016) (entering judgement for plaintiffs where undisputed facts showed exclusion of treatment of gender dysphoria for people under 18 and blanket ban on coverage of medically necessary cosmetic procedures for gender dysphoria under previous regulatory regime violated Medicaid's Availability and Comparability Provisions). Participating providers across New York who provide this care bill Medicaid and Child Health Plus for covered services, including medically necessary transgender health care for people under 18, in the same manner as they do for other forms of medically necessary health care. NYS DOH then obtains reimbursement for the federal matching share for this care from CMS Consistent with other services and benefits covered under the approved state plan.

## D.    Plaintiff States Regulate the Medical Professions

~~61.~~63.   The Plaintiff States license or otherwise establish qualifications and discipline for physicians and other medical professionals operating in their states. *See generally, e.g.*, Or. Rev. Stat. ch. 677; Or. Admin. R. ch. 847; Wash. Rev. Code ch. 18.71, ch. 18.79; Wash. Admin. Code tit. 246; N.Y. Educ. L. §§ 6520 *et seq.*; D.C. Code §§ 3-1201 *et seq.*; D.C. Mun. Reg. tit. 17 §4600 *et seq.*; Colo. Rev. Stat. § 12-240-101, *et seq.*; 3 Colo. Code Reg. § 713-1; 225 Ill. Comp. Stat. 60/1 *et seq.*; Mass. Gen. Laws ch. 13, §§ 9-11; Mass. Gen. Laws ch. 112, §§ 2-12DD, 61; 243 Mass. Code. Reg. 2.00 *et seq.*; Mich. Comp. Laws §§ 333.17001 *et seq.*; N.J. Stat. Ann. § 45:9-1 *et seq.*; 63 Pa. Cons. Stat. §§ 422.1–51a; *id.* §§ 271.1–19; R.I. Gen. Laws §§ 5-37-1 *et seq.*, 5-34-1 *et seq.*, 5-44-1 *et seq.*, 5-54-1 *et seq.*, 216 R.I. Code R. §§ 40-05-1, 40-05-3, 40-05-15, 20-05-24; Wis. Stat. § 15.08; Wis. Stat. ch. 448; Wis. Admin. Code Med. chs. 1–27. Medical professionals are subject to regulation, oversight, and discipline by the Plaintiff States. *See, e.g.*, Or. Rev. Stat. §§ 675.070, .540, .745, 677.190; Wash. Rev. Code § 18.130.040; N.Y. Educ. L. §§ 6524, 6530 *et seq.*; N.Y. Pub. Health L. §§ 230 *et seq.*; Colo. Rev. Stat. §§ 12-240-115, -120, -121; Conn. Gen. Stat. § 20-13c; 225 Ill. Comp. Stat. 60/7.1, 7.5, 22; Mich. Comp. Laws §§ 333.16221, 333.16226, .17011, .17033; N.J. Stat. Ann. § 45:9-6; R.I. Gen. Laws §§ 5-37-6.3, 5-34-24, 5-44-18, 5-54-13; Wis. Stat. §§ 20-13c; Wis. Stat. §§ 448.02; .05, .40, .978.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

62.64.  Similarly, the Plaintiff States license and regulate hospitals. *See, e.g.*, Or. Admin. R. ch. 333; Wash. Rev. Code ch. 70.41; NY Pub. Health §§ 2800 *et seq.*; Colo. Rev. Stat. § 25-3-101 *et seq.*; 210 Ill. Comp. Stat. 85/1 *et seq.*; Mass. Gen. Laws c. 111, §§ 3, 51-56, 70; 105 Mass. Code. Regs. § 130.00 *et seq.*; N.J. Admin. Code § 8:43G-1.1 *et seq.*; 35 Pa. Stat. §§ 448.801a–448.822; R.I. Gen. Laws §§ 23-17-1 *et seq.*; 216 R.I. Code R. § 40-10-4; Wis. Stat. ch. 50, subch. II; Wis. Admin. Code § DHS 124.03.

## V.    THE KENNEDY DECLARATION HARMS THE PLAINTIFF STATES

### A.    The Kennedy Declaration Harms the Plaintiff States' Medicaid programs

63.65.  The Plaintiff States administer their respective state Medicaid programs and are harmed by the Kennedy Declaration as administrators of those programs.

64.66.  The Social Security Act does not define what makes a provider "qualified" to perform services under Medicaid pursuant to 42 U.S.C. § 1396a(a)(23), and instead leaves that determination to the States as program administrators, and in their traditional role as regulators of health and safety. *See Medina*, 606 U.S. at 364.

65.67.  Each state must develop a process by which providers may enroll in Medicaid as covered or participating providers, and through which each state approves or rejects providers for enrollment. See 42 C.F.R. § 455.400 *et seq*. This process must follow all screening and categorization procedures outlined in the regulations.

66.68.  HHS OIG has limited authority to determine which providers may participate in Medicaid programs as qualified providers. If HHS OIG seeks to exclude a provider based on the Social Security Act sections 1128 (42 U.S.C. § 1320a-7) or 1156 (42 U.S.C. § 1320c-5), it must follow the process set forth in the Social Security Act and its implementing regulations. This process includes, among other things, issuance of a Notice of Intent to Exclude and an opportunity to respond to and challenge any determinations by HHS. Any exclusion may be appealed to an Administrative Law Judge and the resulting decision may be appealed to the HHS Departmental Appeals Board. 42 C.F.R. § 1001.2007.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

67.69.  Exclusion from the Medicaid program carries significant collateral consequences, such as reputational stigma; the inability to work at institutions that rely on Medicaid or Medicare; exclusion from private insurance panels; emergency suspension of the provider's license (in some States); and difficulties obtaining loans for office space or equipment.

68.70.  The Kennedy Declaration announces a binding rule of decision that the provision of medically necessary transgender healthcare constitutes legally sufficient grounds for exclusion from the Medicaid program. As result, Plaintiff States are likely to face a loss of Medicaid-enrolled providers in critical specialties (such as pediatrics and endocrinology) and higher hurdles in persuading new and existing providers to participate in Medicaid. It is foreseeable that existing qualified providers will voluntarily depart from the Medicaid program rather than face the impossible choice of restricting care to their patients or risking career-ending consequences. This is particularly problematic where States already face significant barriers to attracting and retaining high-quality providers to their Medicaid programs at a time when reliance on State-funded health care is growing.

69.71.  The Kennedy Declaration also directly impairs the Plaintiff States' administration of state Medicaid and CHIP programs under the very terms agreed and guaranteed by HHS. Each Plaintiff State has adopted a state Medicaid plan that provides coverage for gender-affirming care. *See* 42 C.F.R. §§ 430.10 *et seq*. Each of these Plans has been approved by the Centers for Medicare and Medicaid Services, and each Plaintiff State has sought, and received, reimbursement for medically necessary gender-affirming care that the Kennedy Declaration now seeks to prohibit by excluding providers of that care. The Kennedy Declaration thus unilaterally and retroactively discards the state plans without proper procedure, harming the Plaintiff States. *See generally* 42 C.F.R. §§ 430.10 *et seq*. (describing procedures for establishing and amending State Medicaid Plans).

70.72.  For example, the statutory guarantees of coverage under the Oregon Health Plan for gender-affirming care directly conflict with and are undermined by the Kennedy Declaration. The Kennedy Declaration forces the administrator of Oregon Health Plan into an impossible position, regardless of whether participating providers decide to continue providing gender-

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

affirming care to patients under the age of nineteen or cease such care. If providers choose to continue providing care, Oregon faces losing the largest providers of health care in the state from participation in state health care plans, including OHSU and Legacy Health. That loss would significantly harm health care networks covered by state health plans, limit the availability of health care for all residents on a state health plan, and strain Oregon's health care system. And if providers cease care, patients under a state health plan will lose access to gender-affirming care for which they are statutorily guaranteed coverage, and the State of Oregon would lose its ability to fulfill its mission as a Medicaid administrator.

71.73.  The Kennedy Declaration similarly harms all Plaintiff States by threatening to exclude providers from participation in Medicare and Medicaid. It threatens provider networks by forcing providers to choose between cessation of gender-affirming care or subjecting themselves to exclusion from participation in federally funded health care programs, including all of the incidental and collateral consequences such an exclusion would entail.

**B.      The Kennedy Declaration Harms the Plaintiff States as Regulators of the Practice of Medicine**

72.74.  "[T]he regulation of health and safety matters is primarily, and historically, a matter of local concern." *Hillsborough Cnty., Fla. v. Auto. Med. Labs., Inc.*, 471 U.S. 707, 715 (1985) (citing *Rice v. Sante Fe Elevator Corp.*, 331 U.S. 218 (1947)). "The licensing and regulation of physicians is a state function." *P*a. *Med. Soc. v. Marconis*, 942 F.2d 842, 847 (3d Cir. 1991); *see also Dent v. West Virginia*, 129 U.S. 114, 122 (1889) (recognizing the state's powers to regulate medical professions from "time immemorial"). Congress did not delegate to the Secretary of HHS the authority to exercise control over the practice of medicine, *Rasulis v. Weinberger*, 502 F.2d 1006 (7th Cir. 1974), and Congress went out of its way to state that no provision of the Social Security Act should be construed as authorizing the Secretary to exercise such control, *see* 42 U.S.C. § 1395.

73.75.  The Kennedy Declaration infringes on the Plaintiff States' role as regulators of the practice of medicine by attempting to impose coercive conditions on its providers' participation

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

in federal health care programs, and retroactive and coercive conditions on the Plaintiff States' access to federal health care funding. *See Arizona v. Yellen*, 34 F.4th 841, 851–53 (9th Cir. 2022).

74.76.  The Kennedy Declaration also infringes on the Plaintiff States' traditional role in regulating the practice of medicine within the Plaintiff States by declaring substantive standards of care that conflict with state law and undermine state civil rights protections. *E.g.*, Or. Rev. Stat. § 743A.325. The Kennedy Declaration thereby impairs Plaintiff States' authority to "exercise … sovereign power over individuals and entities within [its] jurisdiction, including the power to create and enforce a legal code." *Washington v. U.S. Food & Drug Admin.*, 108 F. 4th 1163, 1176 (9th Cir. 2024) (internal quotation marks omitted). That interest "is sufficient to convey standing to … challenge a federal statute that preempts or nullifies state law." *Id.* The Kennedy Declaration obstructs compliance with state law and effectively nullifies those state laws.

## C.    The Kennedy Declaration's Harm to the Plaintiff States is Immediate and Ongoing

75.77.  The Kennedy Declaration has immediate harmful effect upon the Plaintiff States. The Kennedy Declaration threatens to exacerbate an already serious shortage of providers willing to participate in Plaintiff States' Medicaid programs, especially in critical specialties like pediatrics and endocrinology, including the provision of medically necessary gender-affirming care. It also immediately disrupts the Plaintiff States' regulation of the practice of medicine by creating a separate and legally unsupported standard of care that purports to displace state standards.

## VI.    CAUSES OF ACTION

### COUNT 1
### Violation of APA —
### Without Observance of Procedure Required by Law (5 U.S.C. § 706(2)(D)) —
### Violation of Medicare Rulemaking and Notice and Comment Requirements
### (42 U.S.C. §§ 1302, 1395hh)

76.78.  Plaintiff States incorporate by reference the allegations contained in the preceding paragraphs.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

77.79.  Defendants include "agenc[ies]" under the APA, 5 U.S.C. § 551(1), and the Kennedy Declaration is a final agency action subject to review under the APA. The Kennedy Declaration marks the consummation of HHS's decision-making process because it announces the agency's decision to immediately implement a policy that will dramatically change the agency policy regarding gender-affirming care. The Kennedy Declaration announces that the provision of medically necessary healthcare for transgender minors "will be deemed not to meet the professionally recognized standards of health care" and thus allows exclusion of the provider from Medicare and Medicaid.

78.80.  When HHS seeks to change a substantive legal standard under the Medicare Act, it must first allow the public 60 days to comment on the proposed regulation. "No rule, requirement, or other statement of policy (other than a national coverage determination) that establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services or benefits under this title subchapter shall take effect unless it is promulgated by the Secretary by regulation." 42 U.S.C. § 1395hh(a)(2). Subject to exceptions not applicable here, "before issuing in final form any regulation under subsection (a), the Secretary shall provide for notice of the proposed regulation in the Federal Register and a period of not less than 60 days for public comment thereon." *Id.*

79.81.  The Kennedy Declaration violates Medicare notice and comment requirements because it changes a substantive legal standard and was not a "previously published notice of proposed rulemaking or interim final rule." 42 U.S.C. § 1395hh(a)(4). HHS has no "lawful excuse for neglecting its statutory notice-and-comment obligations," and thus HHS's "new policy cannot stand." *Azar v. Allina Health Servs.*, 587 U.S. 566, 568 (2019).

**COUNT 2**
**Violation of APA —**
**Without Observance of Procedure Required by Law (5 U.S.C. § 706(2)(D)) —**
**Violation of APA Rulemaking and Notice and Comment Requirements**
**(5 U.S.C. § 553; 42 U.S.C. § 1302)**

80.82.  Plaintiff States incorporate by reference the allegations contained in the preceding paragraphs.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

81.83.  Under the APA, a court "shall … hold unlawful and set aside agency action, findings and conclusions found to be … without observance of procedure required by law[.]" 5 U.S.C. § 706(2)(D).

82.84.  The Kennedy Declaration constitutes a rule for purposes of the APA because it is an "agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." *Id.* § 551(4).

83.85.  Subject to express exceptions not applicable here, federal agencies must complete the process of agency rulemaking before issuing a rule. *Id.* § 553(b). The Kennedy Declaration is subject to notice and comment because it is a substantive, legislative rule. "Legislative rules … create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress." *Hemp Indus. Ass'n v. Drug Enf't Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003). Thus, the Kennedy Declaration is not exempt from notice-and-comment rulemaking as an "interpretative rule[], general statement[] of policy, or rule[] of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A).

84.86.  When the APA was enacted in 1947, it exempted from its notice-and-comment requirements any "matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts." 5 U.S.C. § 553(a)(2). Case law interpreted that provision to exclude Medicaid as a "benefit" program. *See, e.g.*, *Cubanski v. Heckler*, 781 F.2d 1421, 1428–29 (9th Cir. 1986), *vacated sub nom. on other grounds, Bowen v. Kizer*, 485 U.S. 386 (1988). Subsequent statutory changes, however, have removed Medicaid regulations from that general exemption. In 1987, Congress enacted legislation requiring each notice of proposed rulemaking affecting Medicaid or Medicare "that may have a significant impact on the operations of a substantial number of small rural hospitals" to include an "initial regulatory impact analysis" on these hospitals, and each final rule to include a final regulatory impact analysis. 42 U.S.C. § 1302(b) (P.L. 100-203, Dec. 22, 1987). That requirement is inconsistent with a blanket exemption of Medicaid regulations from the APA's notice-and-comment requirements.

85.87.  In 1971, HHS waived any exemption from rulemaking requirements, which determined "[t]he public participation requirements prescribed by 5 U.S.C. § 553(b) and (c) will

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

be followed by all agencies of the Department in rulemaking relating to … grants, benefits, or contracts." 36 Fed. Reg. 13,804 (1971). This commitment, known as the "Richardson Waiver," is enforceable. *Cubanski*, 781 F.2d at 1428–29; *Clarian Health W., LLC v. Hargan*, 878 F.3d 346, 356–57 (D.C. Cir. 2017).

86.88.  In March of this year, HHS attempted to disavow the Richardson Waiver in a one-page Federal Register notice. 90 Fed. Reg. 11,029 (March 3, 2025). That revocation is ineffective, because it is arbitrary and capricious: HHS's departure from its decades' old policy lacks "a rational connection between the facts found and the choice made." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

87.89.  Regardless of whether notice and comment are required, a substantive rule must be published in the Federal Register at least 30 days before its effective date. 5 U.S.C. § 553(d).

88.90.  Because the Kennedy Declaration did not follow these required procedures, as required by the APA and the Richardson Waiver, it is procedurally invalid.

## COUNT 3
### Violation of APA — In Excess of Statutory Authority
### (5 U.S.C. § 706(2)(C))

89.91.  Plaintiff States incorporate by reference the allegations contained in the preceding paragraphs.

90.92.  The APA requires that a court "hold unlawful and set aside agency action, findings, and conclusions found to be … in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

91.93.  The Kennedy Declaration exceeds the Secretary's authority because it purports to set a national standard of care, but there is no statute that permits the Secretary of HHS to do so. No statute allows the Secretary to unilaterally declare that a treatment modality is not safe and effective and thus grounds for exclusion from the program.

92.94.  Under the Medicare statute, Federal officers or employees are prohibited from "excercis[ing] any supervision or control over the practice of medicine or the manner in which medical services are provided." 42 U.S.C. § 1395. This provision explicitly states the intent "to

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

minimize federal intrusion" into state healthcare regulation. *Mass. Med. Soc. v. Dukakis*, 815 F.2d 790, 791 (1st Cir. 1987) (opinion of Breyer, J.).

93.95.  "An agency literally has no power to act … unless and until Congress confers power upon it." *FERC*, 535 U.S. at 18. The Kennedy Declaration does not identify any statutory authority for "declaring" a national standard of care. And although the Kennedy Declaration states that it is "informed by" a regulation, 42 C.F.R. § 1001.2, an agency cannot grant itself authority to create substantive law by promulgating a regulation. In any event, the cited regulation is a definitional provision that does not provide any substantive grant of authority at all.

94.96.  The Kennedy Declaration threatens to invoke 42 U.S.C. § 1320a-7(b)(6)(B), which provides that "[t]he Secretary may exclude … from participation in any Federal health care program … [a]ny individual or entity that the Secretary determines … has furnished or caused to be furnished items or services to patients … of a quality which fails to meet professionally recognized standards of health care …." But that statute is a limitation on, not an expansion of, the Secretary's authority to identify a standard of care, because it empowers the Secretary to exclude providers who violate "*professionally recognized* standards of health care"—not standards of care that he declares by edict. Moreover, that provision contemplates actions based on the "quality" of "items or services," not a categorical prohibition on a disfavored category of care.

95.97.  Because the Kennedy Declaration exceeds the Secretary's statutory authority, it is invalid.

### COUNT 4
### Violation of APA (5 U.S.C. § 706(2)(A)) —
### Not in Accordance with Law

96.98.  Plaintiff States incorporate by reference the allegations contained in the preceding paragraphs.

97.99.  ***Regulation of the practice of medicine.*** The Kennedy Declaration violates 42 U.S.C. § 1395 ("Nothing in this subchapter shall be construed to authorize any Federal officer or

Page 32 —– AMENDED COMPLAINT

employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided ….").

98.100.        The Secretary's actions violate multiple, substantive statutory requirements for Medicaid programs.

99.101.        ***Altering the terms of federally approved Medicaid state plans.*** Pursuant to 42 U.S.C. § 1396b, "the Secretary (except as otherwise provided in this section) shall pay to each State which has a plan approved" amounts specified by statute. Pursuant to 42 U.S.C.§ 1396a, the Secretary has approved state Medicaid and CHIP plans for each Plaintiff State under which each state provides health services to eligible individuals. "The State plan contains all information necessary for CMS to determine whether the plan can be approved to serve as a basis for Federal financial participation (FFP) in the State program." 42 C.F.R. § 430.10. The Kennedy Declaration purports to unilaterally amend a state plan by threatening to drastically reduce the number of eligible providers by deeming them presumptively excluded from participation, and by curtailing the states' traditional authority under the Medicaid Act to determine which providers are eligible. Accordingly, Defendants' action is ultra vires and contrary to law.

100.102.        ***Free Choice of Provider.*** The Kennedy Declaration's prohibition of medical providers who provide medically necessary gender-affirming care from participating in the Medicaid program violates the requirement that Medicaid beneficiaries have a free choice of provider. The Medicaid statutes gives states the authority to set qualifications for providers who may participate in their State Plan. 42 U.S.C. § 1396a(a)(23); 42 C.F.R. § 431.51; *see also Medina*, 606 U.S. at 364 ("States have traditionally exercised primary responsibility over … regulation of the practice of medicine.").

101.103.        ***Comparability requirement.*** The Kennedy Declaration's denial of medically necessary services to Medicaid recipients violates Medicaid's comparability requirement by effectively forcing plans to offer a service to one category of patients (individuals with "a verifiable disorder of sexual development" or other purposes unrelated to such disorders), but to deny the same service to a different category (namely those with a diagnosis of

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

gender dysphoria or gender incongruence), on the basis of medical diagnosis. 42

U.S.C.§ 1396a(a)(10)(B); 42 C.F.R. § 440.240. It similarly forces plans to offer services to some

patients (those above a certain threshold age), while denying the same services to a different

category (those under the threshold age).

102.104.        ***Medical necessity requirement.*** The Kennedy Declaration's effect of

denying medically necessary services to Medicaid enrollees violates the Medicaid Act's

requirement that medically necessary services be made available to Medicaid enrollees. 42

U.S.C. § 1396a(a)(10)(B); 42 C.F.R. §§ 440.210, 440.220, 440.230.

103.105.        Because the Kennedy Declaration is not in accordance with law, it is

invalid.

## COUNT 5
### Violation of APA (5 U.S.C. § 706(2)(A)) —
### Arbitrary and Capricious and an Abuse of Discretion

104.106.        Plaintiff States incorporate by reference the allegations contained in the

preceding paragraphs.

105.107.        The APA requires that a court "hold unlawful and set aside agency action,

findings, and conclusions found to be … arbitrary, capricious, [or] an abuse of discretion."

5 U.S.C. § 706(2)(A).

106.108.        The Kennedy Declaration is arbitrary and capricious because it departs

from CMS's past practice of allowing States to include gender-affirming care in their Medicaid

state plans and never prohibiting providers from providing gender-affirming care as a condition

of participation. This abrupt reversal disrupts the Plaintiff States' settled expectations, and those

of patients already undergoing care, based on CMS's approval of their state plans and CMS's

implementation of those state plans through ongoing payments for gender-affirming care. The

agency failed to adequately address these "serious reliance interests" engendered by its prior

policy while also failing to "show that there are good reasons for the new policy." *Encino*

*Motorcars, LLC*, 579 U.S. at 221 (citation modified).

107.109.        The Kennedy Declaration also fails to include consideration of important

aspects of the problem the Declaration creates, namely, the shortage of Medicaid providers,

Page 34 –— AMENDED COMPLAINT

particularly in the fields of pediatrics and endocrinology; the reliance interests of Plaintiff States in structuring their Medicaid Programs based on the availability of providers who meet statutory criteria for eligibility; and the harms to patients and providers within Plaintiff States that would be caused should this rule be implemented. And Defendants failed to adequately consider alternatives.

108.110.    The Kennedy Declaration also fails to include consideration of reasonable alternatives. For example, nowhere in the Kennedy Declaration does Secretary Kennedy claim that provision of gender-affirming care to each and every child or adolescent with gender dysphoria results in harmful outcomes, nor does he cite a single study making such a claim. For example, he cites a study from Sweden recommending that "[h]ormonal interventions may serve as last-resort measures for select youth." But the Kennedy Declaration seeks the extreme outcome of eliminating gender-affirming care entirely without considering less extreme actions, like restricting such care to a "last resort" measure.

109.111.    The Kennedy Declaration also fails to explain its rationale adequately, particularly with respect to the statutory authority upon which it is based. It cites no statute as a basis upon which the Secretary may declare a certain treatment modality or protocol to fall below professionally recognized standards of care and thus fails to explain the Secretary's authority to promulgate the declaration in the first place.

110.112.    Accordingly, the Kennedy Declaration is arbitrary and capricious and an abuse of the Secretary's discretion, and therefore invalid. *See* 5 U.S.C. § 706(2)(A).

## VII.    PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that the Court:

a.    Declare and hold unlawful the Kennedy Declaration;

b.    Stay, vacate, and set aside the Kennedy Declaration;

c.    Preliminarily and permanently enjoin Defendants; their officers, agents, servants, employees, and attorneys; and anyone acting in concert or participation with Defendants from implementing, instituting, maintaining, enforcing, or giving effect to the Kennedy Declaration in any form;

Page 35 –  – AMENDED COMPLAINT

d.      Postpone the effective date of the Kennedy Declaration pending judicial review;

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

e.    Award Plaintiffs' costs of suit and reasonable attorneys' fees and expenses pursuant to any applicable law; and

f.    Award such additional relief as the interests of justice may require.


DATED: ~~December 23~~January 6, 2025

Respectfully submitted,


**DAN RAYFIELD**
Attorney General
State of Oregon

By: *s/ Allie M. Boyd*
ALLIE M. BOYD #163478
BRIAN SIMMONDS MARSHALL #196129
LAUREN ROBERTSON #124362
Senior Assistant Attorneys General
KATE E. MORROW #215611
YOUNGWOO JOH #164105
Assistant Attorneys General
Tel (503) 947-4700
Fax (503) 947-4791
allie.m.boyd@doj.oregon.gov
brian.s.marshall@doj.oregon.gov
kate.e.morrow@doj.oregon.gov
youngwoo.joh@doj.oregon.gov
lauren.robertson@doj.oregon.gov

*Attorneys for the State of Oregon*


**NICHOLAS W. BROWN**
Attorney General
State of Washington

By: *s/ William McGinty*
WILLIAM MCGINTY
CRISTINA SEPE
MARSHA CHIEN
Deputy Solicitors General
LAURYN K. FRAAS
MOLLY POWELL
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
Tel (206) 464-7744
william.mcginty@atg.wa.gov
cristina.sepe@atg.wa.gov
marsha.chien@atg.wa.gov
lauryn.fraas@atg.wa.gov
molly.powell@atg.wa.gov

*Attorneys for the State of Washington*

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**LETITIA JAMES**
Attorney General
State of New York

By: *s/ Matthew Faiella*
MATTHEW FAIELLA
Special Counsel for LGBTQIA Rights
GALEN SHERWIN
Special Counsel for Reproductive Rights
RABIA MUQADDAM
Chief Counsel for Federal Initiatives
TRAVIS W. ENGLAND
Deputy Chief, Civil Rights Bureau
ELIZABETH A. BRODY
Assistant Solicitor General
VICTORIA OCHOA
Assistant Attorney General
28 Liberty St.
New York, NY 10005
Tel (212) 416-8000
matthew.faiella@ag.ny.gov
galen.sherwin@ag.ny.gov
rabia.muqaddam@ag.ny.gov
travis.england@ag.ny.gov
elizabeth.brody1@ag.ny.gov
victoria.ochoa@ag.ny.gov

*Attorneys for the State of New York*

**ROB BONTA**
Attorney General
State of California

By: *s/ Crystal Adams*
CRYSTAL ADAMS
Deputy Attorney General
NELI PALMA
Senior Assistant Attorney General
NIMROD PITSKER ELIAS
Supervising Deputy Attorney General
HILARY BURKE CHAN
Deputy Attorney General
1515 Clay St., Suite 2000
Oakland, CA 94612
Tel (408) 679-7010
crystal.adams@doj.ca.gov
neli.palma@doj.ca.gov
nimrod.elias@doj.ca.gov
hilary.chan@doj.ca.gov

*Attorneys for the State of California*

**PHILIP J. WEISER**
Attorney General
State of Colorado

By: *s/ Sarah H. Weiss*
SARAH H. WEISS, CBA #61914
Senior Assistant Attorney General
MICHAEL D. MCMASTER, CBA #42368
Assistant Solicitor General
Colorado Department of Law
1300 Broadway, #10
Denver, CO 80203
Tel (720) 508-6000
sarah.weiss@coag.gov
michael.mcmaster@coag.gov

*Attorneys for the State of Colorado*

**WILLIAM TONG**
Attorney General
State of Connecticut

By: *s/ Alma Nunley*
ALMA NUNLEY
Special Counsel for Reproductive Rights
165 Capitol Ave
Hartford, CT 06106
Tel (860) 808-5020
alma.nunley@ct.gov

*Attorney for the State of Connecticut*

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**KATHLEEN JENNINGS**
Attorney General
State of Delaware

By: *s/ Ian R. Liston*
IAN R. LISTON
Director of Impact Litigation
VANESSA L. KASSAB
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
Tel (302) 683-8899
ian.liston@delaware.gov
vanessa.kassab@delaware.gov

*Attorneys for the State of Delaware*

**ANNE E. LOPEZ**
~~KWAME RAOUL~~
Attorney General
State of ~~Illinois~~Hawaiʻi

By: *s/ ~~Aleeza Strubel~~ Kalikoʻonālani D. Fernandes*
~~ALEEZA STRUBEL~~
~~Complex Litigation Counsel~~
~~ELIZABETH B. SCOTT~~
DAVID D. DAY
Special Assistant to the Attorney General
~~ELENA S. METH~~
~~Assistant Attorney~~KALIKOʻONĀLANI D. FERNANDES
Solicitor General
~~Office of the Illinois Attorney General~~
~~115 S. LaSalle St., 35th Floor~~
~~Chicago, IL 60603~~
425 Queen Street
Honolulu, HI 96813
Tel (~~773) 914-3046~~808) 586-1360
~~aleeza.strubel@ilag~~david.d.day@hawaii.gov
~~elizabeth.scott@ilag~~kaliko.d.fernandes@hawaii.gov
~~elena.meth@ilag.gov~~

*Attorneys for the State of ~~Illinois~~Hawaiʻi*

**AARON M. FREY**
Attorney General
State of Maine

By: *s/ Kevin J. Beal*
KEVIN J. BEAL, Maine Bar No. 7294
Assistant Attorney General
Office of the Attorney General

**BRIAN L. SCHWALB**
Attorney General
District of Columbia

By: *s/ Samantha Hall*
SAMANTHA HALL
Assistant Attorney General
Office of the Attorney General for the District of Columbia
400 Sixth Street, N.W.
Washington, D.C. 20001
Tel (202) 788-2081
samantha.hall@dc.gov

*Attorneys for the District of Columbia*

**KWAME RAOUL**
~~AARON M. FREY~~
Attorney General
State of ~~Maine~~Illinois

By: *s/ ~~Kevin J. Beal~~ Aleeza Strubel*
~~KEVIN J. BEAL, Maine Bar No. 7294~~
ALEEZA STRUBEL
Complex Litigation Counsel
ELIZABETH B. SCOTT
Assistant Attorney General
~~Office of the~~ELENA S. METH
Assistant Attorney General
~~111 Sewall Street, 6th~~Office of the Illinois Attorney General
115 S. LaSalle St., 35th Floor
~~6 State House Station~~
~~Augusta, ME 04333-0006~~
Chicago, IL 60603
Tel (~~207) 626-8800~~773) 914-3046
~~kevin.beal@maine~~aleeza.strubel@ilag.gov
elizabeth.scott@ilag.gov
elena.meth@ilag.gov

*Attorneys for the State of ~~Maine~~Illinois*

**ANTHONY G. BROWN**
Attorney General
State of Maryland

By: *s/ Lauren Gorodetsky*
LAUREN GORODETSKY
Assistant Attorney General

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

111 Sewall Street, 6th Floor
6 State House Station
Augusta, ME  04333-0006
Tel (207) 626-8800
kevin.beal@maine.gov

*Attorneys for the State of Maine*

**ANDREA JOY CAMPBELL**
Attorney General
Commonwealth of Massachusetts

By: *s/ Allyson Slater*
ALLYSON SLATER
Director, Reproductive Justice Unit
ADAM M. CAMBIER
JAK KUNDL
CHLOE CABLE
MORGAN CARMEN
Assistant Attorneys General
One Ashburton Place
Boston, MA 02108
Tel (617) 963-2811
allyson.slater@mass.gov
adam.cambier@mass.gov
jak.kundl@mass.gov
chloe.cable@mass.gov
morgan.carmen@mass.gov

*Attorneys for the Commonwealth of Massachusetts*

**KEITH ELLISON**
Attorney General
State of Minnesota

By: *s/ Lindsey E. Middlecamp*
LINDSEY E. MIDDLECAMP
Special Counsel
445 Minnesota Street, Suite 600
St. Paul, Minnesota, 55101
Tel (651) 300-0711
lindsey.middlecamp@ag.state.mn.us

*Attorneys for the State of Minnesota*

200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
Tel (410) 576-7057
lgorodetsky@oag.maryland.gov

*Attorneys for the State of Maryland*

**DANA NESSEL**
Attorney General
State of Michigan

By: *s/ Neil Giovanatti*
NEIL GIOVANATTI
DANIEL PING
Assistant Attorneys General
Michigan Department of Attorney General
P.O. Box 30758
Lansing, MI 48909
Tel (517) 335-7603
giovanattin@michigan.gov
pingd@michigan.gov

*Attorneys for the State of Michigan*

**AARON D. FORD**
Attorney General
State of Nevada

By: *s/ K. Brunetti Ireland*
K. BRUNETTI IRELAND
Chief of Special Litigation
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
kireland@ag.nv.gov

*Attorneys for the State of Nevada*

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**ANTHONY G. BROWN**
Attorney General
State of Maryland

By: *s/ Lauren Gorodetsky*
LAUREN GORODETSKY
Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
Tel (410) 576-7057
lgorodetsky@oag.maryland.gov

*Attorneys for the State of Maryland*

**ANDREA JOY CAMPBELL**
Attorney General
Commonwealth of Massachusetts

By: *s/ Allyson Slater*
ALLYSON SLATER
Director, Reproductive Justice Unit
ADAM M. CAMBIER
JAK KUNDL
CHLOE CABLE
MORGAN CARMEN
Assistant Attorneys General
One Ashburton Place
Boston, MA 02108
Tel (617) 963-2811
allyson.slater@mass.gov
adam.cambier@mass.gov
jak.kundl@mass.gov
chloe.cable@mass.gov
morgan.carmen@mass.gov

*Attorneys for the Commonwealth of Massachusetts*

**DANA NESSEL**
Attorney General
State of Michigan

By: *s/ Neil Giovanatti*
NEIL GIOVANATTI
DANIEL PING
Assistant Attorneys General
Michigan Department of Attorney General
P.O. Box 30758
Lansing, MI 48909
Tel (517) 335-7603
giovanattin@michigan.gov
pingd@michigan.gov

*Attorneys for the State of Michigan*

**KEITH ELLISON**
Attorney General
State of Minnesota

By: *s/ Lindsey E. Middlecamp*
LINDSEY E. MIDDLECAMP
Special Counsel
445 Minnesota Street, Suite 600
St. Paul, Minnesota, 55101
Tel (651) 300-0711
lindsey.middlecamp@ag.state.mn.us

*Attorneys for the State of Minnesota*

Page 43 – AMENDED COMPLAINT

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

By: *s/ Lauren E. Van Driesen*
LAUREN E. VAN DRIESEN
JESSICA L. PALMER
Deputy Attorneys General
Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel (609) 696-5279
lauren.vandriesen@law.njoag.gov
jessica.palmer@law.njoag.gov

*Attorneys for the State of New Jersey*

**RAÚL TORREZ**
Attorney General
State of New Mexico

By: *s/ Amy Senier*
AMY SENIER, MBA# 672912
Senior Counsel
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM 87504-1508
Tel (505) 490-4060
asenier@nmdoj.gov

*Attorneys for the State of New Mexico*

**JOSH SHAPIRO in his official capacity as Governor of the Commonwealth of Pennsylvania**

By: *s/ Aimee D. Thomson*
JENNIFER SELBER
General Counsel
AIMEE D. THOMSON
Deputy General Counsel
Pennsylvania Office of the Governor
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
Tel (223) 234-4986
aimee.thomson@pa.gov

*Attorneys for Governor Josh Shapiro*

**PETER F. NERONHA**
Attorney General
State of Rhode Island

By: *s/ Julia C. Harvey*
JULIA C. HARVEY, RI Bar No. 10529
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2103
jharvey@riag.ri.gov

*Attorneys for the State of Rhode Island*

**CHARITY R. CLARK**
Attorney General
State of Vermont

By: *s/ Jonathan T. Rose*
JONATHAN T. ROSE
Solicitor General
Office of the Vermont Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3171
jonathan.rose@vermont.gov

*Attorneys for the State of Vermont*

**JOSHUA L. KAUL**
Attorney General
State of Wisconsin

By: *s/ Jody J. Schmelzer*
JODY J. SCHMELZER
Assistant Attorney General
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707
(608) 266-3094
jody.schmelzer@wisdoj.gov

*Attorneys for the State of Wisconsin*