DAN RAYFIELD
Attorney General
ALLIE M. BOYD  #163478
BRIAN SIMMONDS MARSHALL #196129
LAUREN ROBERTSON #124362
Senior Assistant Attorneys General
KATE E. MORROW #215611
YOUNGWOO JOH #164105
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: allie.m.boyd@doj.oregon.gov
        brian.s.marshall@doj.oregon.gov
        lauren.robertson@doj.oregon.gov
        kate.e.morrow@doj.oregon.gov
        youngwoo.joh@doj.oregon.gov

Attorneys for the State of Oregon

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| STATE OF OREGON, et al, | Case No.  6:25-cv-02409-MTK |
| Plaintiffs, | DECLARATION OF JANE BEYER |
| v. | |
| ROBERT F. KENNEDY, JR., in his official capacity as the Secretary of the Department of Health and Human Services, et al, | |
| Defendants. | |

## DECLARATION OF JANE BEYER

I, JANE BEYER, pursuant to 28 U.S.C. § 1746, declare as follows:

1.    I am over the age of 18, competent to testify as to the matters herein, and attest to the information set forth below through personal knowledge as well as through the Washington State Office of the Insurance Commissioner personnel who have assisted me in gathering this information from our institution.

2.    I have served as Senior Health Policy Advisor to the Washington State Office of the Insurance Commissioner (OIC) for over 8 years, since January 2017.

3.    Prior to joining the OIC, I was a Program Officer serving a joint appointment at the Milbank Memorial Fund and the Oregon Health & Science University Center for Evidence-Based Policy from 2015-2016. As a Program Officer, I supported states in developing and implementing evidence-informed health and human services policies, with a special focus on Medicaid programs.

4.    From 2012-2015, I served as the Assistant Secretary for the Behavioral Health and Service Integration Administration at the Washington State Department of Social and Health Services (DSHS). In this role, I administered and oversaw many community-based mental health and chemical dependency services programs in addition to Washington's three psychiatric facilities. I specialized in initiatives to improve care for individuals with multi-system or complex care needs. During this time, I also served as Washington State's Behavioral Health Commissioner.

5.    I was Senior Counsel to the Washington State House of Representatives for over 20 years, from 1988-1994 and from 1999-2012. As Senior Counsel, I worked on a broad range of health and human services issues.

1

6. I also served as Washington State's Medicaid director from 1995 through 1998. I began my career as a legal services attorney in Tacoma, Washington.

7. I graduated with honors from the University of North Carolina School of Law and am admitted to the Washington State and District of Columbia bar.

8. I am the Chair of the National Academy for State Health Policy Executive Committee and chair the National Association of Insurance Commissioner's Mental Health Parity (MHPAEA) Working Group.

9. As the OIC's Senior Health Policy Advisor, I am responsible for presenting OIC's Gender Affirming Treatment Study to the Washington State Legislature. The report is submitted to the Legislature biennially, as described below. The OIC contracts with OnPoint Health Data, who prepares a draft report for review and ultimate approval by the OIC. A team of staff in the OIC Policy and Legislative Affairs Division, of which I am a part, undertakes the contracting and review functions, under my guidance.

**Washington State OIC Gender-Affirming Treatment Study Methodology**

10. The 2021 Gender Affirming Treatment Act, SB 5313 (the Act) (codified at Wash. Rev. Code § 48.43.0128) prohibits health insurers from denying or limiting coverage for gender-affirming treatment when care is medically necessary and prescribed per accepted standards of care. It prohibits carriers from applying categorical cosmetic or blanket exclusions to gender-affirming treatment. The Act also directs the OIC, in consultation with the Health Care Authority and the Department of Health, to issue a report to the Washington State Legislature on geographical access to gender-affirming treatment across Washington.

2

11.    The OIC submits this report to the legislature on a biennial basis. The OIC released its initial gender-affirming treatment report in November 2022 and its most recent report in November 2024.

12.    The report includes information on the number of providers that offered gender-affirming treatment services during the applicable reporting year in each Washington county, the health insurers and Medicaid managed care organizations with which those providers have active contracts, and the types of services provided by each provider in each region.

13.    The OIC contracted with OnPoint Health Data (OnPoint), Washington's All-Payer Claims Database (APCD) vendor, to complete the report.

14.    A true and correct copy of the November 2024 WA OIC Gender-Affirming Treatment Study is attached as **Exhibit A**.

15.    Data Source: OIC, in partnership with OnPoint, used data from Washington's APCD to identify patients and providers of gender-affirming treatment. The APCD contains administrative claims data submitted by state health insurers and Medicaid managed care organizations, including data from private fully-insured health plans, Medicaid, and a subset of Medicare sources. The APCD includes medical, pharmacy, and dental claims and provides a wealth of information regarding services provided, provider locations, diagnoses, procedures, providers' billed charges, amounts paid by health insurers, and more.

16.    For purposes of the gender-affirming care treatment report, OnPoint analyzed APCD claims from private fully-insured health plan payers, Medicaid managed care organizations, and Medicaid Fee-for-Service. Public Employee Benefits Board and School Employee Benefits Board (health plans administered by the Washington State Health Care Authority for the benefit of state employees and public school employees) health plans and claims are included in APCD

3

data. Medicare and uninsured populations were not included in the report. The APCD data does not include claims from self-funded group health plans, other than the PEBB/SEBB Uniform Medical Plan. In Washington, approximately 2.5 million people get their health coverage through a self-funded group health plan. Thus, the report did not include the full range of gender-affirming treatment services provided in Washington.

17.    The methodology for data analysis included in the report was developed jointly by OIC, the Health Care Authority, the Department of Health and OnPoint. OIC approved the final methodology used by OnPoint to prepare the report.

18.    Population: To identify the patient population of transgender individuals, the study used a combination of diagnosis codes related to gender dysphoria and validated them using confirmatory diagnoses, billing codes, and evidence of hormone prescriptions.

19.    Services: To identify a list of gender-affirming procedures and drugs, OIC and OnPoint obtained from the Washington State Health Care Authority a list of common gender-affirming treatment procedures and Healthcare Common Procedure Coding System codes covered by Washington's Medicaid program as well as a list of endocrine and metabolic prescriptions that frequently are prescribed for patients receiving gender-affirming treatment.

20.    Claims: To identify the claims for gender-affirming procedures and drugs, OnPoint extracted from the APCD data claims for office visits and behavioral health visits where the patient was identified as transgender and the claim's diagnosis code included gender dysphoria. OnPoint likewise extracted from the APCD data claims for procedures, pharmacy, and retail pharmacy visits where the patient was identified as transgender.

21.    Providers: Using the claims, the study extracted provider data including each provider's unique National Provider Identifier and zip code to identify gender-affirming treatment

4

providers, regions of care, and carriers. The study included out-of-state claims for services received by Washington residents and claims for services received out-of-state by Washington residents. The study did not include out-of-state claims for services received by non-residents.

**Washington State OIC Gender-Affirming Treatment Study Findings**

22.    The study made a number of findings regarding transgender patients in Washington. First, the study found that in 2023, 0.46% of patients with primary coverage under a private, fully insured health plan or Medicaid plan (including Medicaid Fee-for-Service and Medicaid Managed Care) were identified as transgender using diagnosis codes.

23.    The study found that 16,818 patients received GAT in 2023 either in Washington (Washington residents and non-residents) or in other states (Washington residents only).

24.    Transgender patients received gender-affirming treatment throughout the state. Within each of OIC's nine geographic rating areas, there were patients who received gender-affirming treatment and providers who provided that care.

25.    Transgender patients received care from 7,424 providers within Washington and 1,181 providers in states other than Washington. This also included 5,641 distinct providers that provided gender-affirming care to clients receiving services through Medicaid.

26.    The study also found that in 2023, more than 169,000 claims were billed to private fully insured health plans or Medicaid plans for gender-affirming treatment services.

27.    The most common types of gender-affirming treatment services included office visits (85% of transgender patients), hormone therapy prescriptions (74% of transgender patients), and behavioral health services (26% of transgender patients).

28.    Seven Medicaid managed care plans paid for gender-affirming treatment in 2023, with Caremark paying for the highest number of claims (23,994). Twenty-one private fully-insured

5

health plans paid for gender-affirming treatment. The highest numbers of claims were paid by Kaiser Foundation Health Plan of Washington (18,146) and Regence BlueShield (16,997).

29.    Transgender patients received most of their gender-affirming treatment within Washington but were more likely to travel out of state for gender-affirming treatment related procedures than for other types of gender-affirming treatment services, with 9% traveling to Oregon for gender-affirming treatment procedures and 2% traveling to other states.

**The Federal Action**

30.    On December 18, 2025, U.S. Department of Health and Human Services (HHS) Secretary Robert F. Kennedy, Jr., posted to the HHS website a "declaration" titled "Safety, Effectiveness, and Professional Standards of Care for Sex-Rejecting Procedures on Children and Adolescents," (hereinafter the "Kennedy Declaration"). The Kennedy Declaration purports to set a new national professional standard of health care, applicable everywhere in the United States, that gender-affirming treatment for children and adolescents are "neither safe nor effective." According to the Kennedy Declaration, HHS may bar health care providers and institutions from participating in Medicare, Medicaid, and other federal health care programs if they treat *any* patients with these medical interventions, even outside federally funded health programs. *See* 42 U.S.C. § 1320a-7(b)(6)(B).

31.    The Kennedy Declaration will fundamentally harm the provision of gender-affirming treatment in Washington. In 2023, for example, there were 84,129 Medicaid claims for gender-affirming treatment in Washington. Medicaid made it possible for nearly 10,000 transgender patients in Washington to receive gender-affirming treatment services. In Washington, almost 2 million people receive Medicaid coverage. Approximately 1.5 million people get their coverage through Medicare. Thus, almost half of the residents of the state are covered by Medicaid

6

or Medicare. In rural and urban underserved communities, health care providers are heavily dependent upon Medicare and Medicaid funding to sustain their financial survival. Safety net providers, such as community clinics, community behavioral health agencies and public hospitals (i.e. Harborview and the University of Washington) serve disproportionate numbers of Medicare and Medicaid patients and also depend heavily upon those funds.

32. For those health care providers that choose to continue to provide gender-affirming treatment services and no longer participate in Medicare or Medicaid, the harm caused to health care access will not be limited to Washington's transgender patients. Health care providers who participate in Medicare and Medicaid treat patients for literally thousands of health care conditions and illnesses. They also provide critical preventive care services. If health care providers are, in fact, excluded from Medicaid and Medicare for the provision of gender-affirming treatment, those providers will not only be unable to provide gender-affirming treatment services, but all of the other health care services they provide to both cisgender and transgender residents.

33. Given existing provider access challenges, this would be a significant blow to Washington's Medicaid program's ability to provide accessible care, especially in rural or otherwise underserved areas and especially in certain practice areas, such as pediatrics and endocrinology. The Washington Medicaid program contracts with managed care organizations to provide care for the vast majority of Medicaid clients in the state. Federal law requires that Medicaid managed care organizations meet network adequacy requirements, i.e. they must show that they contract with a sufficient number of health care providers to meet the needs of the Medicaid clients enrolled in their health plans. The loss of health care providers will challenge the ability of the managed care organizations to develop adequate provider networks. In dramatically impacting Washington's health care provider network, the impact of the Kennedy Declaration will

reach beyond federal health care programs, and transgender residents will lose access to necessary health care services.

34. But what is more likely is that many health care providers will cease offering gender-affirming treatment all together because of the impact of being excluded from the Medicaid or Medicare programs. This impact is not limited to those federal health care programs. There are often significant collateral consequences when providers are excluded from federal health care programs. When excluded, providers are placed on a publicly-available national exclusions database maintained by HHS's Office of Inspector General. Excluded health care providers often face significant barriers when seeking malpractice insurance, admissions to hospitals, and maintaining the practice of medicine. If health care providers are at risk of being excluded from participation in the Medicaid and Medicare programs, then many (if not all) will effectively have no choice, given how critical Medicare and Medicaid funding are to their financial sustainability, and will likely cease providing gender-affirming care.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 26 day of December 2025, at Olympia, Washington.

JANE BEYER
Senior Health Policy Advisor
Washington State Office of the Insurance
Commissioner

# CERTIFICATE OF SERVICE

I certify that on January <u>6</u>, 2026, I served the foregoing DECLARATION OF JANE

BEYER upon the parties hereto by the method indicated below, and addressed to the following:

**Susanne Luse**                                              ___ HAND DELIVERY
Assistant United States Attorney                   ___ MAIL DELIVERY
U.S. Attorney's Office for the District of Oregon   ___ OVERNIGHT MAIL
1000 SW Third Ave. Suite 600                       ___ TELECOPY (FAX)
Portland, OR 97204                                 ___ E-SERVE
        *Counsel for Defendants*                   _X_ E-MAIL
                                                   (susanne.luse@usdoj.gov)


            *s/Allie M. Boyd*
            ALLIE M. BOYD #163478
            BRIAN SIMMONDS MARSHALL #196129
            LAUREN ROBERTSON #124362
            Senior Assistant Attorneys General
            KATE E. MORROW #215611
            YOUNGWOO JOH #164105
            Assistant Attorneys General
            Tel (503) 947-4700
            Fax (503) 947-4791
            allie.m.boyd@doj.oregon.gov
            brian.s.marshall@doj.oregon.gov
            lauren.robertson@doj.oregon.gov
            kate.e.morrow@doj.oregon.gov
            youngwoo.joh@doj.oregon.gov
            Of Attorneys for Plaintiff State of Oregon

Page 1 -   CERTIFICATE OF SERVICE
            AB9/bm9/984790637