DAN RAYFIELD
Attorney General
ALLIE M. BOYD  #163478
BRIAN SIMMONDS MARSHALL #196129
LAUREN ROBERTSON #124362
Senior Assistant Attorneys General
KATE E. MORROW #215611
YOUNGWOO JOH #164105
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  allie.m.boyd@doj.oregon.gov
          brian.s.marshall@doj.oregon.gov
          lauren.robertson@doj.oregon.gov
          kate.e.morrow@doj.oregon.gov
          youngwoo.joh@doj.oregon.gov

Attorneys for the State of Oregon

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| STATE OF OREGON, et al, | Case No.  6:25-cv-02409-MTK |
| Plaintiffs, | DECLARATION OF DANIEL SOUTHARD |
| v. | |
| ROBERT F. KENNEDY, JR., in his official capacity as the Secretary of the Department of Health and Human Services, et al, | |
| Defendants. | |

## DECLARATION OF DANIEL SOUTHARD

I, Daniel Southard, declare as follows:

1.      I am over 18 years of age, competent to testify, and make this declaration based on my personal knowledge.

## Personal and Agency Background

2.      I am the Chief Deputy Director for California Department of Managed Health Care (DMHC). I have held that position since 2021. Before that, I served as the Deputy Director of the DMHC's Office of Plan Monitoring for five years and held various other managerial positions within the DMHC since 2012.

3.      The DMHC is the state agency responsible for licensing and regulating health care service plans in California. DMHC-licensed health plans include both commercial and Medi-Cal (California's Medicaid) plans that provide health care coverage to more than 30 million people, representing 75 percent of Californians.

4.      The DMHC regulates all aspects of the operations of California licensed health plans to ensure they comply with the California Knox-Keene Health Care Service Plan Act (Knox-Keene Act) and other applicable laws. The DMHC's regulatory functions include: reviewing health plan documents, such as Evidences of Coverage, to ensure those documents specify the services the plans must cover by law; auditing the plans' financial operations to ensure the plans have sufficient financial resources to deliver required services; and reviewing the health plans' provider networks to ensure the plans have enough providers to timely deliver the health care services the plans' enrollees need and that those providers are located sufficiently close to where the enrollees live or work.

5.      The DMHC also has a consumer assistance unit—called the Help Center—that resolves enrollees' complaints against their health plans and helps health plan enrollees navigate

1

and understand their coverage and benefits. The Help Center also provides an independent medical review process for enrollees when a health plan denies coverage of a service based on the plan's position that the service is not medically necessary for the enrollee or the service is experimental or investigational.

6.     In 2024, the most recent year for which complete data is available, the DMHC's Help Center handled almost 14,000 enrollee complaints and resolved more than 5000 requests for independent medical review. Of those reviews, approximately 73% resulted in the requested health care service being covered by the health plans.

**Health Plan Coverage of Gender Affirming Care**

7.     The Knox-Keene Act requires health plans to deliver "basic health care services" as specified by the Act. Such services include medically necessary services to treat gender dysphoria in minors and adults. The Knox-Keene Act also specifies that health plans may not discriminate against enrollees in the delivery of care based on, among other things, an enrollee's gender, gender identity, or gender expression.

8.     Interventions to treat gender dysphoria can include, but are not limited to, puberty suppression therapy; hormone therapy; behavioral health services; and surgical procedures. California law requires health plans to cover such services when the services are medically necessary to treat an enrollee diagnosed with gender dysphoria. Health plans must deliver these medically necessary services in a timely manner and by providers with the appropriate licensing and experience who are located within a reasonable distance to where the enrollee lives or works. This means that enrollees should not have to wait an unreasonably long time to access needed services and should not have to travel unreasonable distances to access the services.

2

9.      Given the above, numerous patients requiring gender affirming care in California, including those aged 18 and under and their families, have come to rely on the Knox-Keene Act's requirements that health plans cover such care. Without health plan coverage, many patients would be unable to afford these treatments. For those currently undergoing courses of treatment based on that coverage, and given its historical availability, they have had little reason to expect the coverage would be abruptly terminated. Medical providers in California—some of whom have dedicated a substantial portion of their practices to the provision of gender affirming care to minors—have also come to assume that they will be able to continue to provide gender affirming care to their patients.

**Harms from the Kennedy Declaration**

10.     I understand that, on December 18, 2025, Secretary of Health and Human Services Robert F. Kennedy, Jr., issued a "declaration" entitled "Safety, Effectiveness, and Professional Standards of Care for Sex-Rejecting Procedures on Children and Adolescents." ("Kennedy Declaration"). The Kennedy Declaration purports to declare that gender-affirming care for children and adolescents is neither safe nor effective.

11.     The Kennedy Declaration further states that the Secretary "'may' exclude individuals or entities from participation in any Federal health care program if the Secretary determines the individual or entity has furnished or caused to be furnished items or services to patients of a quality which fails to meet professionally recognized standards of health care." The Declaration elsewhere states that, according to HHS, the provision of any gender-affirming medical care to adolescents falls below the professionally recognized standards of care. The Kennedy Declaration thus makes clear that the provision of any such care is, *per se*, a basis to exclude providers from federal health care programs.

3

12.     In these respects, the Kennedy Declaration is at odds with the requirements of the Knox-Keene Act and the DMHC's mission to enforce the Act by threatening to impose restrictions that deter health care providers from offering gender-affirming services. The Declaration thus harms California in the following and numerous other ways.

13.     The Kennedy Declaration will irreparably damage the networks of medical providers that California health plans rely on to deliver gender affirming care and which the DMHC has reviewed and approved. Providers who offer gender-affirming care—including gender-affirming mental health services, puberty blockers, and hormone therapy—often provide other kinds of care too. To illustrate, mental health counselors who treat patients with gender dysphoria often treat patients' other mental health diagnoses, such as depression or anxiety. An endocrinologist who prescribes puberty blockers to treat gender dysphoria will also likely prescribe the same medications to other patients to treat precocious puberty. And a physician who prescribes hormone therapy for gender dysphoria will also likely prescribe the same medications for delayed puberty.

14.     The Kennedy Declaration threatens to exclude a provider who delivers gender-affirming care even to just a small subset of the provider's patients from participating in federal health care programs with respect to *any* patients, even those patients who do not need gender-affirming care. This means that the health plans regulated by the DMHC will have fewer providers to rely on to treat their enrollees, even those enrollees who do *not* have gender dysphoria and do *not* need gender-affirming care.

15.     At the same time, this action will also make it very difficult if not impossible for health plans regulated by the DMHC to find health care providers willing to provide gender-affirming care to health plan enrollees. If plans cannot find providers willing to deliver gender-

affirming care, the DMHC will be in the impossible position of being unable to enforce compliance with California law requiring plans to provide medically necessary health care services to treat gender dysphoria. This will undermine the clear legislative intent of the California Legislature when enacting such requirements in state law and undermine DMHC's mission of ensuring compliance with the Knox-Keene Act.

16.    Indeed, the DMHC has already received reports from health care providers indicating that, due to the federal actions discussed above, some providers have ceased or are considering discontinuing the provision of gender-affirming care services.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED this 5th day of January, 2026.

/s/    *Dan Southard*
_____
Daniel Southard

5

## CERTIFICATE OF SERVICE

I certify that on January <u>6</u>, 2026, I served the foregoing DECLARATION OF DANIEL

SOUTHARD  upon the parties hereto by the method indicated below, and addressed to the

following:

**Susanne Luse**
Assistant United States Attorney
U.S. Attorney's Office for the District of Oregon
1000 SW Third Ave. Suite 600
Portland, OR 97204
    *Counsel for Defendants*

___ HAND DELIVERY
___ MAIL DELIVERY
___ OVERNIGHT MAIL
___ TELECOPY (FAX)
___ E-SERVE
<u>X</u> E-MAIL
(susanne.luse@usdoj.gov)


    *s/Allie M. Boyd*
ALLIE M. BOYD #163478
BRIAN SIMMONDS MARSHALL #196129
LAUREN ROBERTSON #124362
Senior Assistant Attorneys General
KATE E. MORROW #215611
YOUNGWOO JOH #164105
Assistant Attorneys General
Tel (503) 947-4700
Fax (503) 947-4791
allie.m.boyd@doj.oregon.gov
brian.s.marshall@doj.oregon.gov
lauren.robertson@doj.oregon.gov
kate.e.morrow@doj.oregon.gov
youngwoo.joh@doj.oregon.gov
Of Attorneys for Plaintiff State of Oregon

Page 1 -    CERTIFICATE OF SERVICE
    AB9/bm9/984790637