DAN RAYFIELD
Attorney General
ALLIE M. BOYD  #163478
BRIAN SIMMONDS MARSHALL #196129
LAUREN ROBERTSON #124362
Senior Assistant Attorneys General
KATE E. MORROW #215611
YOUNGWOO JOH #164105
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: allie.m.boyd@doj.oregon.gov
　　　　brian.s.marshall@doj.oregon.gov
　　　　lauren.robertson@doj.oregon.gov
　　　　kate.e.morrow@doj.oregon.gov
　　　　youngwoo.joh@doj.oregon.gov

Attorneys for the State of Oregon

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| STATE OF OREGON, et al, <br><br> Plaintiffs, <br> v. <br> ROBERT F. KENNEDY, JR., in his official capacity as the Secretary of the Department of Health and Human Services, et al, <br><br> Defendants. | Case No.  6:25-cv-02409-MTK <br><br> DECLARATION OF ADELA FLORES-BRENNAN |

## DECLARATION OF ADELA FLORES-BRENNAN

I, Adela Flores-Brennan, declare as follows:

1. I am over 18 years of age, competent to testify, and make this declaration based on my personal knowledge.

**Personal and Agency Background**

2. I am the Medicaid Director for the Colorado Department of Health Care Policy and Financing (HCPF). I have held that position since 2022. Before that, I served as a nonprofit executive and health care policy expert.

3. I hold bachelor's and master's degrees from the University of Denver and a juris doctor from the University of Colorado at Boulder. I was admitted to the Colorado Bar in 2005 and am currently on inactive status. I have over 25 years of experience in public policy and nearly 20 years of experience in health care policy specifically.

4. HCPF is the single state agency responsible for administering Health First Colorado, Colorado's Medicaid program. HCPF also administers the Child Health Plan *Plus* (CHP+), the state's Children's Health Insurance Program (CHIP). The agency's mission is to improve health care equity, access and outcomes for the people we serve while saving Coloradans money on health care and driving value for Colorado. These programs are governed by federal statutes and rules, and supported by federal funding, but administered by the state.

5. Colorado's Medicaid program provides low-income individuals with access to comprehensive healthcare coverage at no or low cost. Medicaid's coverage includes medical, dental, mental health, substance use disorder treatment, and long-term care. HCPF is also the largest purchaser of health coverage in Colorado. The state's Medicaid and Children's Health Insurance Program (CHIP) programs cover nearly 20% percent of the state's population. In total,

1

the state's Medicaid and CHIP programs insure approximately 1.3 million people, including over 542,500 children.

**Health First Colorado and Child Health Plan *Plus*'s (CHP+) Coverage of Gender Affirming Care**

6. Medicaid is a federal-state partnership funded by both federal and state dollars. HCPF administers Health First Colorado pursuant to broad federal requirements and the terms of the state's "plan for medical assistance"—also known as a "State Plan"—which is subject to approval by the U.S. Centers for Medicare and Medicaid Services (CMS).

7. CMS is obligated to make federal funding contributions to all conforming state Medicaid plans. 42 U.S.C. § 1396a(b); 42 U.S.C. §§ 1396b(a), 1396-1. Those contributions are referred to as "Federal Financial Participation" (FFP). FFP covers a percentage of HCPF's expenditures on eligible enrollees in Colorado's Medicaid plan. If the federal government were to withhold its FFP, Colorado lacks the resources to continue to fund its State Plan on its own.

8. HCPF covers an array of services for transgender individuals, including gender-affirming interventions for gender dysphoria.

9. This is in line with Colorado law requiring all commercial medical insurance plans in the state to provide coverage for gender-affirming health care. *See* Colo. Rev. Stat. § 10-16-104(30)(b).

10. Gender-affirming interventions can include, but are not limited to, puberty suppression therapy; hormone therapy; behavioral health services; and surgical procedures. When requested and determined to be medically necessary, HCPF pays for these gender affirming interventions consistent with agency rules. These services are available to all transgender Health First Colorado members. This includes individuals aged twenty and younger through the early and

periodic screening, diagnosis, and treatment (EPSDT) program and is explicitly provided for under Colorado regulations at 10 CCR 2505-10, § 8.735.4.D.

11. HCPF has claimed and received FFP for gender-affirming interventions for at least eight (8) years. Colorado covers medically necessary gender affirming care under a variety of sections of our State Plan including under physician services, inpatient services, OLP, counseling, etc., all of which have been approved by CMS. CMS has never rejected or disapproved of Colorado's plan based on its inclusion of gender affirming services nor has it disallowed claims.

12. Given the above, numerous patients requiring gender affirming care in Colorado, including those aged 18 and under and their families, have come to rely on HCPF's coverage of such care. Many patients are currently undergoing courses of treatment based on that coverage, and given its historical availability, they have had little reason to expect that it would be abruptly terminated. Medical providers in Colorado—some of whom have dedicated a substantial portion of their practices to the provision of gender affirming care to minors—have also come to rely on the same coverage for the same reasons.

13. Colorado has similarly come to rely on FFP for medically necessary gender affirming care. HCPF has built its gender affirming care benefit with a great deal of intentionality and input from providers and Medicaid members. HCPF's gender affirming care benefit focuses on providing care to members when it is medically necessary, a determination that is ordinarily left to the discretion of states and providers. In order to provide these benefits to Health First Colorado members, FFP is essential.

**Harms from the Kennedy Declaration**

14. I understand that, on December 18, 2025, Secretary of Health and Human Services Robert F. Kennedy, Jr., issued a "declaration" entitled "Safety, Effectiveness, and Professional

3

Standards of Care for Sex-Rejecting Procedures on Children and Adolescents." ("Kennedy Declaration"). The Kennedy Declaration purports to declare that gender-affirming care for children and adolescents is neither safe nor effective.

15. The Kennedy Declaration further states that the Secretary "'may' exclude individuals or entities from participation in any Federal health care program if the Secretary determines the individual or entity has furnished or caused to be furnished items or services to patients of a quality which fails to meet professionally recognized standards of health care." And the Declaration elsewhere states that, according to HHS, the provision of any gender-affirming medical care to adolescents falls below the professionally recognized standards of care. The Kennedy Declaration thus makes clear that the provision of any such care is, *per se*, a basis to exclude providers from federal health care programs.

16. In these respects, the Kennedy Declaration directly undermines HCPF's mission by threatening to impose restrictions that deter health care providers from offering gender-affirming services. The Declaration thus harms Colorado in these and numerous other ways.

17. For example, the Kennedy Declaration will irreparably damage HCPF's network of medical providers. Providers who offer gender-affirming care—including gender-affirming mental health services, puberty blockers, and hormone therapy—often provide other kinds of care too. To illustrate, a mental health counselor who treats patients with gender dysphoria might also treat patients with depression. An endocrinologist who prescribes puberty blockers to treat gender dysphoria will also likely prescribe the same medications to treat precocious puberty. And a physician who prescribes hormone therapy for gender dysphoria will also likely prescribe the same medications for delayed puberty.

18. The Kennedy Declaration threatens to exclude such providers from federal health care programs. And even before that occurs, some providers will likely choose to cease participating in those programs based on this threat. This means that HCPF will have fewer providers to rely on to treat its members even if they do *not* have gender dysphoria and even if they do *not* need gender-affirming care. At the same time, this action will also make it very difficult if not impossible for HCPF to find health care providers willing to provide gender-affirming care to Health First Colorado members.

19. These harms are compounded by the fact that, under 42 C.F.R. Part 438, the federal government requires states participating in Medicaid to maintain a network of providers that is sufficient in number, mix, and geographic distribution to meet the needs of the anticipated number of enrollees in the service area. This particularly includes mental health and primary care providers. Because the Kennedy Declaration will drive such providers out of HCPF's provider network, it also threatens to undermine the state's efforts to meet these federal requirements.

20. In addition, the Kennedy Declaration will have a direct impact on the amount of federal funding Colorado receives to reimburse medical expenses for children. As providers increasingly decline to offer gender-affirming care services due to these federal policies, HCPF will be deprived of the FFP it has historically received and relied upon for the provision of such care.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED this  29  day of    December    , 2025.

                                                   Adela Flores-Brennan

## CERTIFICATE OF SERVICE

I certify that on January 6, 2026, I served the foregoing DECLARATION OF ADELA FLORES-BRENNAN upon the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| **Susanne Luse** | \_\_\_ HAND DELIVERY |
| Assistant United States Attorney | \_\_\_ MAIL DELIVERY |
| U.S. Attorney's Office for the District of Oregon | \_\_\_ OVERNIGHT MAIL |
| 1000 SW Third Ave. Suite 600 | \_\_\_ TELECOPY (FAX) |
| Portland, OR 97204 | \_\_\_ E-SERVE |
| *Counsel for Defendants* | _X_ E-MAIL |
| | (susanne.luse@usdoj.gov) |

       *s/Allie M. Boyd*
ALLIE M. BOYD #163478
BRIAN SIMMONDS MARSHALL #196129
LAUREN ROBERTSON #124362
Senior Assistant Attorneys General
KATE E. MORROW #215611
YOUNGWOO JOH #164105
Assistant Attorneys General
Tel (503) 947-4700
Fax (503) 947-4791
allie.m.boyd@doj.oregon.gov
brian.s.marshall@doj.oregon.gov
lauren.robertson@doj.oregon.gov
kate.e.morrow@doj.oregon.gov
youngwoo.joh@doj.oregon.gov
Of Attorneys for Plaintiff State of Oregon

Page 1 -    CERTIFICATE OF SERVICE
      AB9/bm9/984790637

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791