DAN RAYFIELD
Attorney General
ALLIE M. BOYD  #163478
BRIAN SIMMONDS MARSHALL #196129
LAUREN ROBERTSON #124362
Senior Assistant Attorneys General
KATE E. MORROW #215611
YOUNGWOO JOH #164105
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  allie.m.boyd@doj.oregon.gov
        brian.s.marshall@doj.oregon.gov
        lauren.robertson@doj.oregon.gov
        kate.e.morrow@doj.oregon.gov
        youngwoo.joh@doj.oregon.gov

Attorneys for the State of Oregon

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| STATE OF OREGON, et al,<br><br>　　　　Plaintiffs,<br><br>　　v.<br>ROBERT F. KENNEDY, JR., in his official capacity as the Secretary of the Department of Health and Human Services, et al,<br><br>　　　　Defendants. | Case No.  6:25-cv-02409-MTK<br><br><br>DECALARATION OF<br>WILLIAM HALSEY |

## DECLARATION OF WILLIAM HALSEY

I, William Halsey, declare as follows:

1.      I am over 18 years of age, competent to testify, and make this declaration based on my personal knowledge.

## Personal and Agency Background

2.      I am the Medicaid Director for the Connecticut Department of Social Services ("DSS"), and have held this position for approximately 15 months. I have worked at DSS since 2011, where I have held various leadership roles, including Director of Behavioral Health, Deputy Medicaid Director, and Interim Medicaid Director.  I have a master's degree in social work from Columbia University and I am a licensed clinical social worker in Connecticut.  Additionally, I have a master's degree in business administration from the University of Hartford.

3.      As Connecticut's State Medicaid Director, I am responsible, in part, for executive level oversight and administration of the Medicaid program.

4.      DSS is the single state agency responsible for administering Connecticut's Medicaid program. The agency's mission includes improving the overall health of this state's residents by promoting affordable access to medically necessary care. DSS annually provides health care coverage for over 1 million state residents.  As the only state Medicaid agency, DSS is one of the largest health care coverage providers in Connecticut.  In this role, DSS seeks to ensure that Connecticut residents have access to high-quality, affordable health care, and it is committed to whole-person care, integrating physical and behavioral health services for better results and healthier communities in Connecticut.

5.      In Connecticut, Medicaid and other medical assistance programs are collectively called "HUSKY Health" or simply "HUSKY."  HUSKY provides comprehensive health care coverage to State residents, including preventative care, inpatient and outpatient services,

1

behavioral health services, dental care and many other health care services. This program includes Connecticut's Medicaid program and the Children's Health Insurance Program (CHIP). These programs are governed by federal statutes and rules, and supported by federal funding, but administered by the state.

6. Connecticut's Medicaid program provides low-income individuals with access to comprehensive healthcare coverage at no or low cost. Medicaid's coverage includes medical, dental, mental health, substance use disorder treatment, and long-term care. As the only state Medicaid agency, DSS is one of the largest health care coverage providers in Connecticut. In this role, DSS seeks to ensure that Connecticut residents have access to high-quality, affordable health care, and it is committed to whole-person care, integrating physical and behavioral health services for better results and healthier communities in Connecticut.

7. In total, HUSKY health and CHIP cover approximately 1 million residents in Connecticut, including approximately 374,000 individuals under the age of 18.

**HUSKY's Coverage of Gender Affirming Care**

8. Medicaid is a federal-state partnership funded by both federal and state dollars. DSS administers HUSKY pursuant to broad federal requirements and the terms of the state's "plan for medical assistance"—also known as a "State Plan"—which is subject to approval by the U.S. Centers for Medicare and Medicaid Services (CMS).

9. CMS is obligated to make federal funding contributions to all conforming state Medicaid plans. 42 U.S.C. § 1396a(b); 42 U.S.C. §§ 1396b(a), 1396-1. Those contributions are referred to as "Federal Financial Participation" (FFP). FFP covers a percentage of DSS's expenditures on eligible enrollees in Connecticut's Medicaid plan. If the federal government were

to withhold its FFP entirely, Connecticut lacks the resources to continue to fund its State Plan on its own.

10.    HUSKY covers an array of services for transgender individuals, including gender-affirming interventions for gender dysphoria.

11.    Under Connecticut law, DSS—like all medical insurers in the state—is prohibited from categorically discriminating on the basis of gender identity gender affirming care from coverage. See Conn. Gen. Stat. § 46a-64; Conn. Insurance Dept. Bulletin IC-34. Thus, the agency is required to cover such treatment when medically necessary.

12.    Gender-affirming interventions can include, but are not limited to, puberty suppression therapy; hormone therapy; behavioral health services; and surgical procedures. When requested, HUSKY pays for these gender affirming interventions consistent with agency rules and when they are determined to be medically necessary. These services are available to all transgender HUSKY clients. This includes individuals aged twenty and younger through the early and periodic screening, diagnosis, and treatment (EPSDT) program.

13.    DSS has claimed and received FFP for gender-affirming interventions for a approximately ten years. In 2015, Connecticut amended its regulations and its State Plan to cover gender affirming care. Previously, several provisions in DSS's regulations had excluded coverage for surgical gender affirming care. The Centers for Medicare & Medicaid Services ("CMS") approved Connecticut's State Plan amendment in April of 2015 allowing for coverage of gender reassignment surgery and related services for the treatment of gender dysphoria. CMS has never rejected or disapproved Connecticut's state plan based on coverage of these services.

14.    Given the above, numerous patients requiring gender affirming care in Connecticut, including those aged 18 and under and their families, have come to rely on HUSKY's coverage of

such care. Many patients are currently undergoing courses of treatment based on that coverage, and given its historical availability, they have had little reason to expect that it would be abruptly terminated. Medical providers in Connecticut—some of whom have dedicated a substantial portion of their practices to the provision of gender affirming care to minors—have also come to rely on the same coverage for the same reasons.

15.    Connecticut has similarly come to rely on FFP for medically necessary complex healthcare for youth, inclusive of gender affirming care.

**<u>Harms from the Kennedy Declaration</u>**

16.    I understand that, on December 18, 2025, Secretary of Health and Human Services Robert F. Kennedy, Jr., issued a "declaration" entitled "Safety, Effectiveness, and Professional Standards of Care for Sex-Rejecting Procedures on Children and Adolescents." ("Kennedy Declaration"). The Kennedy Declaration purports to declare that gender-affirming care for children and adolescents is neither safe nor effective.

17.    The Kennedy Declaration further states that the Secretary "'may' exclude individuals or entities from participation in any Federal health care program if the Secretary determines the individual or entity has furnished or caused to be furnished items or services to patients of a quality which fails to meet professionally recognized standards of health care." And the Declaration elsewhere states that, according to HHS, the provision of any gender-affirming medical care to adolescents falls below the professionally recognized standards of care. The Kennedy Declaration thus makes clear that the provision of any such care is, *per se*, a basis to exclude providers from federal health care programs.

4

18.     In these respects, the Kennedy Declaration directly undermines DSS's mission by threatening to impose restrictions that deter health care providers from offering gender-affirming services. The Declaration thus harms Connecticut in these and numerous other ways.

19.     For example, the Kennedy Declaration will irreparably damage HUSKY's network of medical providers. Providers who offer gender-affirming care—including gender-affirming mental health services, puberty blockers, and hormone therapy—often provide other kinds of care too. To illustrate, a mental health counselor who treats patients with gender dysphoria might also treat patients with depression. An endocrinologist who prescribes puberty blockers to treat gender dysphoria will also likely prescribe the same medications to treat precocious puberty. And a physician who prescribes hormone therapy for gender dysphoria will also likely prescribe the same medications for delayed puberty.

20.     The Kennedy Declaration threatens to exclude such providers from federal health care programs. And even before that occurs, some providers will likely choose to cease participating in those programs based on this threat. This means that HUSKY will have fewer providers to rely on to treat its clients even if they do *not* have gender dysphoria and even if they do *not* need gender-affirming care. At the same time, this action will also make it very difficult if not impossible for DSS to find health care providers willing to provide gender-affirming care to HUSKY clients.

21.     These harms are compounded by the fact that, under 42 C.F.R. Part 438, the federal government requires states participating in Medicaid to maintain a network of providers that is sufficient in number, mix, and geographic distribution to meet the needs of the anticipated number of enrollees in the service area. This particularly includes mental health and primary care providers.

Because the Kennedy Declaration will drive such providers out of DSS's provider network, it also threatens to undermine the state's efforts to meet these federal requirements.

22.    Indeed, due to federal actions, including those discussed above, seeking to restrict gender affirming care, some providers have ceased or reconsidered offering gender-affirming care services in Connecticut. Additionally, DSS has been made aware that some patients have experienced increased delays in accessing these services, contributing to heightened anxiety and uncertainty within the transgender and gender-diverse community.

23.    In addition, the Kennedy Declaration will have a direct impact on the amount of federal funding Connecticut receives to reimburse medical expenses for children. As providers increasingly decline to offer gender-affirming care services due to these federal policies, DSS will be deprived of the FFP it has historically received for the provision of such care.

24.    DSS's administration of its healthcare programs which have been approved by CMS through the formal state plan amendment process will be adversely affected by this federal policy and contradicts a currently approved state plan.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED this 30th  day of December, 2025.


*William Halsey*

William Halsey
Medicaid Director
Connecticut Department of Social Services

6

## CERTIFICATE OF SERVICE

I certify that on January <u>6</u>, 2026, I served the foregoing DECLARATION OF WILLIAM

HALSEY upon the parties hereto by the method indicated below, and addressed to the following:

**Susanne Luse**                                                   ___ HAND DELIVERY
Assistant United States Attorney                        ___ MAIL DELIVERY
U.S. Attorney's Office for the District of Oregon   ___ OVERNIGHT MAIL
1000 SW Third Ave. Suite 600                         ___ TELECOPY (FAX)
Portland, OR 97204                                      ___ E-SERVE
    *Counsel for Defendants*                          <u>X</u> E-MAIL
                                          (susanne.luse@usdoj.gov)

                                  <u>  *s/Allie M. Boyd*           </u>
                                  ALLIE M. BOYD #163478
                                  BRIAN SIMMONDS MARSHALL #196129
                                  LAUREN ROBERTSON #124362
                                  Senior Assistant Attorneys General
                                  KATE E. MORROW #215611
                                  YOUNGWOO JOH #164105
                                  Assistant Attorneys General
                                  Tel (503) 947-4700
                                  Fax (503) 947-4791
                                  allie.m.boyd@doj.oregon.gov
                                  brian.s.marshall@doj.oregon.gov
                                  lauren.robertson@doj.oregon.gov
                                  kate.e.morrow@doj.oregon.gov
                                  youngwoo.joh@doj.oregon.gov
                                  Of Attorneys for Plaintiff State of Oregon

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791