DAN RAYFIELD
Attorney General
ALLIE M. BOYD  #163478
BRIAN SIMMONDS MARSHALL #196129
LAUREN ROBERTSON #124362
Senior Assistant Attorneys General
KATE E. MORROW #215611
YOUNGWOO JOH #164105
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  allie.m.boyd@doj.oregon.gov
        brian.s.marshall@doj.oregon.gov
        lauren.robertson@doj.oregon.gov
        kate.e.morrow@doj.oregon.gov
        youngwoo.joh@doj.oregon.gov

Attorneys for the State of Oregon

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| STATE OF OREGON, et al, | Case No.  6:25-cv-02409-MTK |
| Plaintiffs, | DECLARATION OF ANDREW WILSON |
| v. | |
| ROBERT F. KENNEDY, JR., in his official capacity as the Secretary of the Department of Health and Human Services, et al, | |
| Defendants. | |

## DECLARATION OF ANDREW WILSON

I, Andrew Wilson, declare as follows:

1.     I am over 18 years of age, competent to testify, and make this declaration based on my personal knowledge.

**Personal and Agency Background**

2.     I am the Division Director for the Division of Medicaid and Medical Assistance (DMMA) at the Delaware Department of Health and Social Services (DHSS). As the Director, I am responsible for overseeing the administration of Delaware's Medicaid program, including eligibility policy, benefits design, managed care operations, and provider reimbursement. This includes responsibility for federally funded reproductive health and family planning services under the state's Medicaid plan and Section 1115 waiver, ensuring compliance with federal requirements and access to covered services through approved Medicaid providers. I have held that position since 2023. I have a Bachelor's degree in English Writing from St. Lawrence University and a Juris Doctor from Albany Law School.

3.     DHSS is the single state agency responsible for administering Delaware's Medicaid program through DMMA.  The DMMA mission includes improving the overall health of this state's residents by promoting affordable access to medically necessary care.

4.     DMMA includes Delaware's Medicaid program and the Children's Health Insurance Program (CHIP). These programs are governed by federal statutes and rules, and supported by federal funding, but administered by the state.

5.     Delaware's Medicaid program provides low-income individuals with access to comprehensive healthcare coverage at no or low cost. Medicaid's coverage includes medical, dental, mental health, substance use disorder treatment, and long-term care.  DMMA/DHSS also

1

includes other health programs that are funded exclusively by the state, such as some behavioral health services, prescription assistance, and public health services.

6.    DMMA is also the largest purchaser of health coverage in Delaware. The state's Medicaid programs cover about 25 percent of the state's population. In total, the state's Medicaid and CHIP programs cover approximately 240,000 people, including 105,000 children.

**Delaware Medicaid and CHIP's Coverage of Gender Affirming Care**

7.    Delaware's Medicaid state plan, the Delaware Medical Assistance Plan (DMAP) is a federal-state partnership funded by both federal and state dollars. DHSS/DMMA administer DMAP pursuant to broad federal requirements and the terms of the state's "plan for medical assistance"—also known as a "State Plan"—which is subject to approval by the U.S. Centers for Medicare and Medicaid Services (CMS).

8.    CMS is obligated to make federal funding contributions to all conforming state Medicaid plans. 42 U.S.C. § 1396a(b); 42 U.S.C. §§ 1396b(a), 1396-1. Those contributions are referred to as "Federal Financial Participation" (FFP). FFP covers a percentage of DHSS's expenditures on eligible enrollees in Delaware's Medicaid plan. If the federal government were to withhold its FFP, Delaware lacks the resources to continue to fund its State Plan on its own.

9.    Delaware Medicaid covers an array of services for transgender individuals, including gender-affirming interventions for gender dysphoria.

10.    DMAP, like all medical insurers in the state—is prohibited from categorically excluding gender affirming care from coverage. More than a decade ago, Delaware enacted the Gender Identity Nondiscrimination Act of 2013 (the "Act"), which adds gender identity to the already-existing list of protected classes in Delaware's nondiscrimination laws. Under the Act, discrimination against a person on the basis of gender identity in housing, employment, public

2

works contracting, public accommodations, and insurance is now prohibited. The Act also provides enhanced penalties under Delaware's hate crimes law for targeting a person because of his or her gender identity. Under the Act, "gender identity" is defined as a gender-related identity, appearance, expression, or behavior of a person, regardless of the person's assigned sex at birth. The Act protects both transgender individuals and individuals who do not conform to traditional gender stereotypes. According to the Act, gender identity may be demonstrated by "consistent and uniform assertion of the gender identity or any other evidence that the gender identity is sincerely held as part of a person's core identity," but cannot be asserted "for any improper purpose." 6 Del C. §§ 4501-4, 4601-5, 4607, 4619; 9 Del C. § 1183; 11 Del. C. § 1304, 18 Del. C. § 2304, 19 Del. C. §§ 710-11, 25 Del. C. §§ 5105, 5116, 5141, 5316, 5953, 6962.

11.    In particular, under 18 Del. C. § 2304(22), Delaware's Insurance Code makes it an unfair practice to discriminate "in any way because of the insured's race, color, religion, sexual orientation, gender identity, military status, or national origin or to classify or refer to any individual on the basis of race, color, religion, sexual orientation, gender identity, military status, or national origin." Further, under 18 Del. C. 2034(13), insurers are prohibited from discriminating between individuals of the same class and of essentially the same hazard in the amount of premiums, policy fees or rates charged for any policy or contract of health insurance. In 2016, Delaware's Department of Insurance issued a bulletin prohibiting "the denial, cancellation, termination, limitation, refusal to issue or renew, or restriction of insurance coverage or benefits thereunder because of a person's gender identity or transgender status, or because the person is undergoing gender transition. This includes the availability of health insurance coverage and the provision of health insurance benefits." The regulations binding DHSS/DMMA are consistent, requiring that neither DHSS/DMMA "nor its contractors will discriminate against any person

3

because of race, color, national origin, sex, sexual orientation, gender identity, religious creed, age, disability, political beliefs, limited English proficiency (LEP), and/or retaliation." 16 DE ADC 1006.

12. Thus, the agency and the insurance it provides are required to cover gender affirming care when medically necessary.

13. Gender-affirming interventions can include, but are not limited to, puberty suppression therapy; hormone therapy; behavioral health services; and surgical procedures. When requested, DMAP pays for these gender affirming services consistent with agency rules and when they are determined to be medically necessary. These services are available to all transgender DMAP clients subject to the same coverage, medical necessity and utilization management standards that apply to other DMAP services. This includes individuals aged twenty and younger through the early and periodic screening, diagnosis, and treatment (EPSDT) program.

14. DMAP has claimed and received FFP for gender-affirming interventions. Moreover, Delaware's State Plan expressly provides for coverage of gender-affirming care. That plan has previously been approved by CMS. CMS has never rejected or disapproved of Delaware's plan based on its inclusion of such coverage.

15. Given the above, numerous patients requiring gender affirming care in Delaware, including those aged 18 and under and their families, have come to rely on Delaware's coverage of such care. Many patients are currently undergoing courses of treatment based on that coverage, and given its historical availability, they have had little reason to expect that it would be abruptly terminated. Medical providers in Delaware—some of whom have dedicated a substantial portion of their practices to the provision of gender affirming care to minors—have also come to rely on the same coverage for the same reasons.

4

**Harms from the Kennedy Declaration**

16.    I understand that, on December 18, 2025, Secretary of Health and Human Services Robert F. Kennedy, Jr., issued a "declaration" entitled "Safety, Effectiveness, and Professional Standards of Care for Sex-Rejecting Procedures on Children and Adolescents." ("Kennedy Declaration"). The Kennedy Declaration purports to declare that gender-affirming care for children and adolescents is neither safe nor effective.

17.    The Kennedy Declaration further states that the Secretary "'may' exclude individuals or entities from participation in any Federal health care program if the Secretary determines the individual or entity has furnished or caused to be furnished items or services to patients of a quality which fails to meet professionally recognized standards of health care." And the Declaration elsewhere states that, according to HHS, the provision of any gender-affirming medical care to adolescents falls below the professionally recognized standards of care. The Kennedy Declaration thus makes clear that the provision of any such care is, *per se*, a basis to exclude providers from federal health care programs.

18.    In these respects, the Kennedy Declaration directly undermines DHSS/DMMA's mission by threatening to impose restrictions that deter health care providers from offering gender-affirming services. The Declaration thus harms Delaware in these and numerous other ways.

19.    For example, the Kennedy Declaration will irreparably damage DMAP's network of medical providers. Providers who offer gender-affirming care—including gender-affirming mental health services, puberty blockers, and hormone therapy—often provide other kinds of care too. To illustrate, a mental health counselor who treats patients with gender dysphoria likely treats patients with depression. An endocrinologist who prescribes puberty blockers to treat gender dysphoria will also likely prescribe the same medications to treat precocious puberty. And a

5

physician who prescribes hormone therapy for gender dysphoria will also likely prescribe the same medications for delayed puberty.

20.    The Kennedy Declaration threatens to exclude such providers from federal health care programs. And even before that occurs, some providers will likely choose to cease participating in those programs based on this threat. This means that DMAP will have fewer providers to rely on to treat its clients even if they do *not* have gender dysphoria and even if they do *not* need gender-affirming care. At the same time, this action will also make it very difficult if not impossible for DMAP to find health care providers willing to provide gender-affirming care to DMAP clients.

21.    These harms are compounded by the fact that, under 42 C.F.R. Part 438, the federal government requires states participating in Medicaid to maintain a network of providers that is sufficient in number, mix, and geographic distribution to meet the needs of the anticipated number of enrollees in the service area. This particularly includes mental health and primary care providers. Because the Kennedy Declaration will drive such providers out of DMAP's provider network, it also threatens to undermine the state's efforts to meet these federal requirements.

22.     Indeed, DHSS has received reports from health care providers indicating that, due to federal actions, some providers have reconsidered offering gender-affirming care services.

23.    In addition, the Kennedy Declaration will have a direct impact on the amount of federal funding Delaware receives to reimburse medical expenses for children in Delaware. A removal of the FFP it has historically received for the provision of such care would cause harm by shifting the financial burden to the state to continue these covered services.

24.    DHSS/DMMA's administration of its healthcare programs and will also be adversely affected by this federal policy. The state has an obligation to provide access to quality

care to its members. Federal restrictions limiting or prohibiting clinically indicated gender affirming care would create conflicts in program administration, complicate medical necessity and disrupt existing utilization management and appeals processes. These disruptions are likely to result in delayed or foregone care and higher rates of adverse behavioral health outcomes including increased risk of depression, anxiety, self-harm and suicidality among affected members.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED this 30th day of December 2025.

DocuSigned by:

*Andrew Wilson*

35F947C98C8B499...

Andrew Wilson, Director

7

## CERTIFICATE OF SERVICE

I certify that on January <u>6</u>, 2026, I served the foregoing DECLARATION OF ANDREW

WILSON upon the parties hereto by the method indicated below, and addressed to the following:

**Susanne Luse**                                    ___ HAND DELIVERY
Assistant United States Attorney                    ___ MAIL DELIVERY
U.S. Attorney's Office for the District of Oregon   ___ OVERNIGHT MAIL
1000 SW Third Ave. Suite 600                        ___ TELECOPY (FAX)
Portland, OR 97204                                  ___ E-SERVE
    *Counsel for Defendants*     <u>X</u> E-MAIL
                                                    (susanne.luse@usdoj.gov)


    *s/Allie M. Boyd*
ALLIE M. BOYD #163478
BRIAN SIMMONDS MARSHALL #196129
LAUREN ROBERTSON #124362
Senior Assistant Attorneys General
KATE E. MORROW #215611
YOUNGWOO JOH #164105
Assistant Attorneys General
Tel (503) 947-4700
Fax (503) 947-4791
allie.m.boyd@doj.oregon.gov
brian.s.marshall@doj.oregon.gov
lauren.robertson@doj.oregon.gov
kate.e.morrow@doj.oregon.gov
youngwoo.joh@doj.oregon.gov
Of Attorneys for Plaintiff State of Oregon

Page 1 -   CERTIFICATE OF SERVICE
      AB9/bm9/984790637