DAN RAYFIELD
Attorney General
ALLIE M. BOYD  #163478
BRIAN SIMMONDS MARSHALL #196129
LAUREN ROBERTSON #124362
Senior Assistant Attorneys General
KATE E. MORROW #215611
YOUNGWOO JOH #164105
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: allie.m.boyd@doj.oregon.gov
       brian.s.marshall@doj.oregon.gov
       lauren.robertson@doj.oregon.gov
       kate.e.morrow@doj.oregon.gov
       youngwoo.joh@doj.oregon.gov

Attorneys for the State of Oregon

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| STATE OF OREGON, et al, | Case No.  6:25-cv-02409-MTK |
| Plaintiffs, | DECLARATION OF KRISTIN SOUSA |
| v. | |
| ROBERT F. KENNEDY, JR., in his official capacity as the Secretary of the Department of Health and Human Services, et al, | |
| Defendants. | |



Rhode Island Executive Office of Health and Human Services
Virks Building, 3 West Road, Cranston, RI 02920

## DECLARATION OF KRISTIN SOUSA

I, Kristin Sousa, declare as follows:

1. I am over eighteen (18) years of age, competent to testify, and make this declaration based on my personal knowledge.

## Personal and Agency Background

2. I am the Director for the Rhode Island Medicaid Program, situated within the Rhode Island Executive Office of Health and Human Services ("EOHHS"). I have held that position since 2022. Before that, I served as Interim Medicaid Program Director, Deputy Medicaid Program Director, and Managed Care Program Director, since I began at EOHHS in 2018.

3. I graduated from Providence College with a Bachelor of Science in Health Services Administration and have worked in health care and Medicaid public finance since 2009.

4. EOHHS is the single state agency responsible for administering Rhode Island's Medicaid program. The agency's mission includes improving the overall health of this State's residents by promoting affordable access to medically necessary care.

5. EOHHS operates the Rhode Island Medicaid Program. This program includes Rhode Island's Medicaid program and the Children's Health Insurance Program (CHIP). These programs are governed by federal statutes and rules, and supported by federal funding, but administered by the State.

6. The Rhode Island Medicaid Program provides low-income individuals with access to comprehensive healthcare coverage at no or low cost. Medicaid's coverage includes medical, dental, mental health, substance use disorder treatment, and long-term care. Additionally, as part of the RIte Care program, the Rhode Island Medicaid Program provides comprehensive coverage to children under the age of eighteen (18) who are not authorized to live in the United States, where such coverage is funded exclusively with State funds.

7. EOHHS is also the largest purchaser of health coverage in the State of Rhode Island. The Rhode Island Medicaid Program covers about twenty-eight percent (28%)percent of the State's population. In total, the State's Medicaid program insures approximately 296,619 people, including approximately 150,000 children.



1

**Rhode Island Medicaid Program's Coverage of Gender Affirming Care**

8. Medicaid is a federal-state partnership funded by both federal and state dollars. EOHHS administers the Rhode Island Medicaid Program pursuant to broad federal requirements and the terms of the state's "plan for medical assistance"—also known as a "State Plan"—which is subject to approval by the U.S. Centers for Medicare and Medicaid Services (CMS).

9. CMS is obligated to make federal funding contributions to all conforming state Medicaid plans. 42 U.S.C. § 1396a(b); 42 U.S.C. §§ 1396b(a), 1396-1. Those contributions are referred to as "Federal Financial Participation" (FFP). FFP covers a percentage of the Rhode Island Medicaid Program's expenditures on eligible enrollees. If the federal government were to withhold its FFP, the State of Rhode Island lacks the resources to continue to fund its State Plan on its own.

10. The Rhode Island Medicaid Program covers an array of services for transgender individuals, including gender-affirming interventions for gender dysphoria.

11. Gender-affirming interventions can include, but are not limited to, puberty suppression therapy; hormone therapy; behavioral health services; and surgical procedures. When requested, the Rhode Island Medicaid Program pays for these gender affirming interventions consistent with agency rules and when they are determined to be medically necessary. These services are available to all transgender Rhode Island Medicaid Program clients. This includes individuals aged twenty (20) and younger through the early and periodic screening, diagnosis, and treatment (EPSDT) program.

12. EOHHS has claimed and received FFP for gender-affirming care for at least ten (10) years.

13. Given the above, numerous patients requiring gender affirming care in the State of Rhode Island, including those aged eighteen (18) and under and their families, have come to rely on the Rhode Island Medicaid Program's coverage of such care. Many patients are currently undergoing courses of treatment based on that coverage, and given its historical availability, they have had little reason to expect that it would be abruptly terminated. Medical providers in the State of Rhode Island—some of whom have dedicated a portion of their practices to the provision of gender affirming care to minors—have also come to rely on the same coverage for the same reasons.

14. The State of Rhode Island has similarly come to rely on FFP for medically necessary gender affirming care.

**Harms from the Kennedy Declaration**

15. I understand that, on December 18, 2025, Secretary of Health and Human Services Robert F. Kennedy, Jr., issued a "declaration" entitled "Safety, Effectiveness, and Professional Standards of Care for Sex-Rejecting Procedures on Children and Adolescents." ("Kennedy Declaration"). The Kennedy Declaration purports to declare that gender-affirming care for children and adolescents is neither safe nor effective.

16. The Kennedy Declaration further states that the Secretary "'may' exclude individuals or entities from participation in any Federal health care program if the Secretary determines the individual or entity has furnished or caused to be furnished items or services to patients of a quality which fails to meet professionally recognized standards of health care." And the Declaration elsewhere states that, according to HHS, the provision of any gender-affirming medical care to adolescents



2

falls below the professionally recognized standards of care. The Kennedy Declaration thus makes clear that the provision of any such care is, *per se*, a basis to exclude providers from federal health care programs.

17. In these respects, the Kennedy Declaration directly undermines EOHHS's mission by threatening to impose restrictions that deter health care providers from offering gender-affirming services. The Declaration thus harms the State of Rhode Island in these and numerous other ways.

18. For example, the Kennedy Declaration will irreparably damage the Rhode Island Medicaid Program's network of medical providers. Providers who offer gender-affirming care—including gender-affirming mental health services, puberty blockers, and hormone therapy—often provide other kinds of care too. To illustrate, a mental health counselor who treats patients with gender dysphoria might also treat patients with depression. An endocrinologist who prescribes puberty blockers to treat gender dysphoria will also likely prescribe the same medications to treat precocious puberty. And a physician who prescribes hormone therapy for gender dysphoria will also likely prescribe the same medications for delayed puberty.

19. The Kennedy Declaration threatens to exclude such providers from federal health care programs. And even before that occurs, some providers will likely choose to cease participating in those programs based on this threat. This means that the Rhode Island Medicaid Program will have fewer providers to rely on to treat its clients even if they do *not* have gender dysphoria and even if they do *not* need gender-affirming care. At the same time, this action will also make it very difficult if not impossible for the Rhode Island Medicaid Program to find health care providers willing to provide gender-affirming care to Rhode Island Medicaid Program clients.

20. These harms are compounded by the fact that, under 42 C.F.R. Part 438, the federal government requires states participating in Medicaid to maintain a network of providers that is sufficient in number, mix, and geographic distribution to meet the needs of the anticipated number of enrollees in the service area. This particularly includes mental health and primary care providers. Because the Kennedy Declaration will drive such providers out of the Rhode Island Medicaid Program's provider network, it also threatens to undermine the state's efforts to meet these federal requirements.

21. In addition, the Kennedy Declaration will have a direct impact on the amount of federal funding the State of Rhode Island receives to reimburse medical expenses for children in the State of Rhode Island. As providers increasingly decline to offer gender-affirming care services due to these federal policies, the Rhode Island Medicaid Program will be deprived of the FFP it has historically received for the provision of such care.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED this _5th___ day of _____January_____, 2026.

*Kristin Pono Sousa*

Kristin Pono Sousa
Medicaid Program Director
Rhode Island Executive Office of Health and Human Services

3

## CERTIFICATE OF SERVICE

I certify that on January <u>6</u>, 2026, I served the foregoing DECLARATION OF KRISTIN

SOUSA   upon the parties hereto by the method indicated below, and addressed to the following:

**Susanne Luse**                                             ___ HAND DELIVERY
Assistant United States Attorney                     ___ MAIL DELIVERY
U.S. Attorney's Office for the District of Oregon   ___ OVERNIGHT MAIL
1000 SW Third Ave. Suite 600                         ___ TELECOPY (FAX)
Portland, OR 97204                                    ___ E-SERVE
        *Counsel for Defendants*                      _X_ E-MAIL
                                                      (susanne.luse@usdoj.gov)

　

        *s/Allie M. Boyd*
        ALLIE M. BOYD #163478
        BRIAN SIMMONDS MARSHALL #196129
        LAUREN ROBERTSON #124362
        Senior Assistant Attorneys General
        KATE E. MORROW #215611
        YOUNGWOO JOH #164105
        Assistant Attorneys General
        Tel (503) 947-4700
        Fax (503) 947-4791
        allie.m.boyd@doj.oregon.gov
        brian.s.marshall@doj.oregon.gov
        lauren.robertson@doj.oregon.gov
        kate.e.morrow@doj.oregon.gov
        youngwoo.joh@doj.oregon.gov
        Of Attorneys for Plaintiff State of Oregon

Page 1 -   CERTIFICATE OF SERVICE
            AB9/bm9/984790637