DAN RAYFIELD
Attorney General
ALLIE M. BOYD  #163478
BRIAN SIMMONDS MARSHALL #196129
LAUREN ROBERTSON #124362
Senior Assistant Attorneys General
KATE E. MORROW #215611
YOUNGWOO JOH #164105
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  allie.m.boyd@doj.oregon.gov
        brian.s.marshall@doj.oregon.gov
        lauren.robertson@doj.oregon.gov
        kate.e.morrow@doj.oregon.gov
        youngwoo.joh@doj.oregon.gov

Attorneys for the State of Oregon

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| STATE OF OREGON, et al, | Case No.  6:25-cv-02409-MTK |
|---|---|
| Plaintiffs, | DECLARATION OF DEBRA STANDRIDGE |
| v. | |
| ROBERT F. KENNEDY, JR., in his official capacity as the Secretary of the Department of Health and Human Services, et al, | |
| Defendants. | |

## **DECLARATION OF DEBRA STANDRIDGE**

I, Debra K. Standridge, declare as follows:

1.    I am a resident of the State of Wisconsin. I am over 18 years of age, competent to testify, and make this declaration based on my personal knowledge and on my review of information and records gathered by agency staff.

**Personal and Agency Background**

2.    I am the Deputy Secretary for the Wisconsin Department of Health Services (DHS).

3.    Wisconsin DHS is the single state agency responsible for administering Wisconsin's Medicaid program. The agency's mission includes improving the overall health of Wisconsin residents by promoting affordable access to medically necessary care.

4.    Wisconsin DHS operates Wisconsin's Medicaid program. This program includes, but is not limited to: BadgerCare Plus, Care4Kids, Children's Long-Term Support Program, Katie Beckett, ForwardHealth Medicaid Emergency Services, SSI-Related, IRIS, Family Care, and Family Care Partnership.[1] Wisconsin DHS also operates the Children's Health Insurance Program in Wisconsin. These programs are governed by federal statutes and rules, and supported by federal funding, but administered by the state.

5.    Wisconsin's Medicaid program provides low-income individuals with access to comprehensive healthcare coverage at no or low cost. Medicaid's coverage includes medical, dental, mental health, substance use disorder treatment, and long-term care.

6.    Wisconsin DHS is the largest purchaser of health coverage in Wisconsin. Wisconsin Medicaid and related programs cover approximately twenty percent of the state's population. In total, Wisconsin Medicaid insures approximately 1.26 million people, half of which are children.

---

[1] Full list of Wisconsin Medicaid Programs: Medicaid in Wisconsin: A to Z

**Wisconsin Medicaid's Coverage of Gender Affirming Care**

7.      Medicaid is a federal-state partnership funded by both federal and state dollars. Wisconsin DHS administers Wisconsin's Medicaid program pursuant to broad federal requirements and the terms of the state's "plan for medical assistance"—also known as a "State Plan"—which is subject to approval by the U.S. Centers for Medicare and Medicaid Services (CMS).

8.      CMS is obligated to make federal funding contributions to all conforming state Medicaid plans. 42 U.S.C. § 1396a(b); 42 U.S.C. §§ 1396b(a), 1396-1. Those contributions are referred to as "Federal Financial Participation" (FFP). FFP covers a percentage of Wisconsin DHS's expenditures on eligible enrollees in Wisconsin's Medicaid plan. If the federal government were to withhold its FFP, Wisconsin lacks the resources to continue to fund its State Plan on its own.

9.      Wisconsin Medicaid covers services for transgender individuals, including gender-affirming interventions for gender dysphoria.

10.      Wisconsin Medicaid provides coverage of gender affirming care services as required by a permanent injunction in *Flack vs. Wisconsin Department of Health Services*, 395 F.Supp.3d 1001 (W.D. Wis. 2019). In *Flack*, the United States District Court for the Western District of Wisconsin held Wisconsin's administrative rules prohibiting the coverage of gender affirming care services violated the Equal Protection Clause of the Fourteenth Amendment, section 1557 of the Affordable Care Act, and the federal Medicaid Act. Wisconsin DHS is permanently enjoined from enforcing the provisions that prohibit coverage of gender affirming care. Thus, the agency is required to cover such treatment when medically necessary.

11.     Gender-affirming interventions can include, but are not limited to, puberty suppression therapy; hormone therapy; behavioral health services; and surgical procedures.[2] When requested, Wisconsin Medicaid covers gender affirming interventions if they are medically necessary as defined in Wis. Admin. Code § 101.03(96m). For certain gender-affirming interventions Wisconsin Medicaid has established additional coverage criteria for members under 18 years of age, which must be documented in a request for services. Wisconsin Medicaid also covers services for individuals under age 21 through the early and periodic screening, diagnosis, and treatment (EPSDT) program.

12.     Given the above, patients requiring gender affirming care in Wisconsin, including those aged 18 and under and their families, have come to rely on Wisconsin Medicaid's coverage of such care. Patients may currently be undergoing courses of treatment based on that coverage, and given the permanent injunction in *Flack*, they have had little reason to expect that it would be abruptly terminated. Medical providers in Wisconsin have also come to rely on the same coverage for the same reasons.

13.     Wisconsin similarly relies on FFP for medically necessary gender affirming care.

**Harms from the Kennedy Declaration**

14.     I understand that on December 18, 2025, Secretary of Health and Human Services Robert F. Kennedy, Jr., issued a "declaration" entitled "Safety, Effectiveness, and Professional Standards of Care for Sex-Rejecting Procedures on Children and Adolescents." ("Kennedy Declaration"). The Kennedy Declaration purports to declare that gender-affirming care for children and adolescents is neither safe nor effective.

---

[2] These services are not exclusively covered to treat gender affirming care. For example, an individual under 18 may receive medically necessary puberty blockers unrelated to gender affirming care.

15.     The Kennedy Declaration further states that the Secretary "'may' exclude individuals or entities from participation in any Federal health care program if the Secretary determines the individual or entity has furnished or caused to be furnished items or services to patients of a quality which fails to meet professionally recognized standards of health care." And the Declaration elsewhere states that, according to HHS, the provision of any gender-affirming medical care to adolescents falls below the professionally recognized standards of care. The Kennedy Declaration thus makes clear that the provision of any such care is, *per se*, a basis to exclude providers from federal health care programs.

16.     In these respects, the Kennedy Declaration directly undermines Wisconsin DHS's mission by threatening to impose restrictions that deter health care providers from offering medically necessary gender-affirming services. The Declaration thus harms Wisconsin in these and numerous other ways.

17.     For example, the Kennedy Declaration has the potential to irreparably damage Wisconsin Medicaid's network of medical providers. Providers who offer gender-affirming care— including gender-affirming mental health services, puberty blockers, and hormone therapy—often provide other kinds of care too. To illustrate, a mental health counselor who treats patients with gender dysphoria might also treat patients with depression. An endocrinologist who prescribes puberty blockers to treat gender dysphoria will also likely prescribe the same medications to treat precocious puberty. And a physician who prescribes hormone therapy for gender dysphoria will also likely prescribe the same medications for delayed puberty.

18.     The Kennedy Declaration threatens to exclude such providers from federal health care programs. And even before that occurs, some providers will likely choose to cease participating in those programs based on this threat. This means that Wisconsin Medicaid will

4

likely have fewer providers to rely on to treat its clients even if they do *not* have gender dysphoria and even if they do *not* need gender-affirming care. At the same time, this action will also make it very difficult if not impossible for Wisconsin Medicaid to find health care providers willing to provide gender-affirming care to Wisconsin Medicaid clients.

19.     These harms are compounded by the fact that, under 42 C.F.R. Part 438, the federal government requires states participating in Medicaid to maintain a network of providers that is sufficient in number, mix, and geographic distribution to meet the needs of the anticipated number of enrollees in the service area. This particularly includes mental health and primary care providers. Because the Kennedy Declaration has the potential to drive such providers out of Wisconsin Medicaid's provider network, it also threatens to undermine the state's efforts to meet these federal requirements.

20.     In addition, the Kennedy Declaration will have a direct impact on the amount of federal funding Wisconsin receives to reimburse medical expenses for children in Wisconsin. As providers increasingly decline to offer gender-affirming care services due to these federal policies, Wisconsin Medicaid will be deprived of the FFP it has historically received for the provision of such care.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED this 5th day of January 2026.

s/ Debra K. Standridge_____
DEBRA  K. STANDRIDGE

5

## CERTIFICATE OF SERVICE

I certify that on January <u>6</u>, 2026, I served the foregoing DECLARATION OF DEBRA STANDRIDGE upon the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| **Susanne Luse**<br>Assistant United States Attorney<br>U.S. Attorney's Office for the District of Oregon<br>1000 SW Third Ave. Suite 600<br>Portland, OR 97204<br>   *Counsel for Defendants* | \_\_\_ HAND DELIVERY<br>\_\_\_ MAIL DELIVERY<br>\_\_\_ OVERNIGHT MAIL<br>\_\_\_ TELECOPY (FAX)<br>\_\_\_ E-SERVE<br>_X_ E-MAIL<br>(susanne.luse@usdoj.gov) |

*s/Allie M. Boyd*
ALLIE M. BOYD #163478
BRIAN SIMMONDS MARSHALL #196129
LAUREN ROBERTSON #124362
Senior Assistant Attorneys General
KATE E. MORROW #215611
YOUNGWOO JOH #164105
Assistant Attorneys General
Tel (503) 947-4700
Fax (503) 947-4791
allie.m.boyd@doj.oregon.gov
brian.s.marshall@doj.oregon.gov
lauren.robertson@doj.oregon.gov
kate.e.morrow@doj.oregon.gov
youngwoo.joh@doj.oregon.gov
Of Attorneys for Plaintiff State of Oregon

Page 1 -    CERTIFICATE OF SERVICE
       AB9/bm9/984790637