KATHRYN L. ALKIRE
(FL Bar No. 1050146)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 451-7743
Email: Kathryn.L.Alkire@usdoj.gov
*Attorney for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| STATE OF OREGON, *et al.*, | Case No.: 6:25-cv-2409-MTK |
| Plaintiffs, | |
| v. | DEFENDANTS' SUPPLEMENTAL BRIEF ON INJUNCTIVE RELIEF |
| ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the Department of Health and Human Services, *et al.*, | |
| Defendants. | |

**INTRODUCTION**

On March 19, 2026, the Court heard oral argument on Defendants' motion to dismiss and the Parties' cross-motions for summary judgment, ECF No. 73 and ECF No. 32. The Court indicated that it would issue an order denying Defendants' motion to dismiss and granting Plaintiffs' motion for summary judgment on Counts 1-3. Tr. 143:17–25.[1] The Court took Count 4 under advisement. Tr. 144:1–10. With respect to relief, the Court indicated that it would vacate the Kennedy Declaration, Tr. 144:11–12, and issue a declaratory judgment that "the defendants lack authority to establish superseding standards of care to exclude providers from federal healthcare programs," Tr. 144:16–18. The Court ordered supplemental briefing to address whether it should also grant the injunctive relief Plaintiffs requested for the first time in their omnibus opposition/reply, which would enjoin Defendants from "enforcing, implementing, giving effect to, or relying on the Kennedy Declaration—or a materially similar policy which supersedes or purports to supersede the professionally recognized standards of care that exist in the Plaintiff States—against any provider in the Plaintiff States," ECF No. 77, at 39–40; *see* Tr. 144:1–145:8; 151:6–7.[2]

The Court should deny injunctive relief because it is not necessary to redress Plaintiffs' alleged harms. The Court already indicated that it intends to vacate the Kennedy Declaration. *See* Tr. 144:11–12. With no operative Declaration for HHS to apply in any exclusion proceeding, Plaintiffs cannot show any ongoing or imminent irreparable harm from the agency action they challenge.

---

[1] The March 19, 2026, hearing transcript is cited as Tr. [page number]:[line number].

[2] Plaintiffs' motion for summary judgment explicitly sought narrower relief. *See* ECF No. 32, at 10 (seeking entry of judgment that "enjoins Defendants . . . from implementing, instituting, maintaining, or giving effect to the Kennedy Declaration").

Defendants' Supplemental Brief on Injunctive Relief

Moreover, even if the Court determines injunctive relief is necessary, the Court should not enter the sweeping and amorphous injunction requested in Plaintiffs' omnibus opposition/reply. That broad request is waived because Plaintiffs did not seek it in their motion for summary judgment or their complaint. In any event, it is improper. It is untethered to any specific agency action and improperly extends far beyond the only challenged agency action in this case, *i.e.*, the Kennedy Declaration. In addition, the belatedly requested injunction would place a forward-looking burden on every agency action in perpetuity and subject HHS to the threat of contempt without proper notice of prohibited conduct. Thus, if the Court determines injunctive relief is necessary (and it is not), it should be limited to the relief requested in Plaintiffs' motion for summary judgment—enjoining Defendants from implementing, instituting, maintaining, or giving effect to the Kennedy Declaration.[3]

### LEGAL STANDARD

"[A]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (citing *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982)). To obtain a permanent injunction, a "plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388 (2006). The last two factors merge when the

---

[3]    Acronyms are used as defined in Defendants' opening brief, ECF No. 73, and Defendants' reply, ECF No. 86.

Defendants' Supplemental Brief on Injunctive Relief

government is the defendant. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"An injunction is an exercise of a court's equitable authority, to be ordered only after taking into account all of the circumstances that bear on the need for prospective relief," *Salazar v. Buono*, 559 U.S. 700, 714 (2010), and "an injunction must be narrowly tailored to affect only those persons over which it has power and to remedy only the specific harms shown by the plaintiffs, rather than to enjoin all possible breaches of the law," *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (citation modified) (quoting *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir.1983)). "If a less drastic remedy (such as partial or complete vacatur of [an agency's] decision) [is] sufficient to redress respondents' injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Monsanto Co.*, 561 U.S. at 165.

## ARGUMENT

I.    **The Court should deny injunctive relief because Plaintiffs cannot show any ongoing or imminent irreparable harm given the Court's intent to vacate the Kennedy Declaration**

The Court should not grant any injunctive relief because it is not necessary to redress Plaintiffs' alleged harms. *See E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019) ("An injunction must be 'narrowly tailored to remedy the specific harm shown.'" (citation omitted)). The only agency action before the Court is the Kennedy Declaration, and Plaintiffs only identified injuries allegedly stem from OIG's potential use of the Kennedy Declaration in a future exclusion proceeding to exclude a provider in the Plaintiff States from federal health care programs. However, the Court has already indicated it intends to vacate the Kennedy Declaration, *see* Tr. 144:11–12, and in the absence of an operative Declaration for OIG to apply in any exclusion proceeding, Plaintiffs' alleged injuries are fully redressed. Vacatur eliminates the Kennedy

Defendants' Supplemental Brief on Injunctive Relief

3

Declaration as a potential source of information that could be used by OIG in any future exclusion proceeding. And Plaintiffs cannot identify any additional harm that would persist from the Kennedy Declaration once it has been vacated.

To the extent Plaintiffs claim harm from some future, hypothetical agency action, that does not warrant injunctive relief. The "possibility" of irreparable harm cannot support the need for an injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (noting that issuing an injunction "based only on a possibility of irreparable harm is inconsistent with [the U.S. Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"); *see also Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931) ("One will not be granted [an injunction] against something merely feared as liable to occur at some indefinite time in the future."). If Plaintiffs face the prospect of harm in the future from some new agency action, they can seek judicial review of the new agency action at that time. Because vacatur provides Plaintiffs with complete relief, and any future claims could be litigated if and when they arise, there is no basis for injunctive relief.

The Court also indicated that it would issue a declaratory judgment stating that Defendants "lack authority to establish superseding standards of care to exclude providers from federal healthcare programs," Tr. 144:16–18. Defendants object to this vague and overbroad declaratory judgment for the reasons stated in their reply, *see* ECF No. 86, at 22–26, as well as the reasons explained herein with respect to Plaintiffs' similarly vague and overbroad request for injunctive relief.[4] If the Court determines declaratory relief is necessary, it should be limited to the declaratory

---

[4] The declaratory relief the Court indicated it intends to enter is phrased differently than the injunctive relief Plaintiffs have requested. *Compare* Tr. 144:16–18 (discussing a declaration that Defendants "lack authority to establish superseding standards of care to exclude providers from federal healthcare programs"), *with* ECF No. 77, at 39-40 (discussing injunction against

Defendants' Supplemental Brief on Injunctive Relief

4

judgment Plaintiffs' requested in their motion for summary judgment and complaint—*i.e.*, a declaration that "the Kennedy Declaration is unlawful." ECF No. 32, at 10; *accord* Am. Compl., ECF No. 28, at 35. If the Court vacates the Kennedy Declaration and also enters this narrower declaratory judgment, an injunction is doubly unnecessary because the federal government is presumed to follow the law as declared by courts. *See Comm. on Judiciary of the U.S. House of Representatives v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008) (per curiam) ("[W]e have long presumed that officials of the Executive Branch will adhere to the law as declared by the court.").

## II.    The Court should reject Plaintiffs' broadened request for injunctive relief.

Even if the Court determines some injunctive relief is necessary, the Court should not enter the sweeping and amorphous injunction requested in Plaintiffs' omnibus opposition/reply for multiple reasons.[5]

### A.    Plaintiffs' broadened request was improperly raised for the first time on reply

As an initial matter, Plaintiffs' expanded relief requested for the first time in Plaintiffs' opposition/reply is improper and/or waived. A party responding to a motion "may not seek affirmative relief through its Opposition." *Smith v. Premiere Valet Servs., Inc.*, No. 2:19-cv-9888-CJC-MAA, 2020 WL 7034346, at *14 (C.D. Cal. Aug. 4, 2020). Several district courts in this

---

implementing any "materially similar policy which supersedes or purports to supersede the professionally recognized standards of care that exist in the Plaintiff States"). These proposed orders are ambiguous for the reasons explained below, but their obscurity is magnified by the fact that they are worded differently without any indication if the differences are intentional and meaningful.

[5] The Court directed Plaintiffs to submit with their supplemental brief "a proposed judgment that includes proposed language for vacatur, declaratory relief, and injunctive relief." ECF No. 87. Since the Parties' supplemental briefs are due on the same day, and in accordance with the Court's clarification at the March 19, 2026, hearing, Tr. 150:25–151:7, Defendants only have the benefit of responding to the injunction language Plaintiffs requested in their opposition/reply, *see* Pls.' Opp'n, at 43.

Defendants' Supplemental Brief on Injunctive Relief

Circuit and others "have concluded that a request for affirmative relief is not proper when raised for the first time in an opposition." *See, e.g.*, *id*. (collecting cases); *see also* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."). Moreover, even though Plaintiffs filed an omnibus opposition/reply, "[t]he district court need not consider arguments raised for the first time in a reply brief" either. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003)); *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir.1992) (per curiam) (noting courts generally decline to consider arguments raised for the first time in a reply brief). Although a court may address an argument "raised by [the movant] for the first time in the reply brief if [the respondent] raised the issue in the responding brief," *United States v. Dupard*, 43 F.3d 1480 (9th Cir. 1994) (citing *Bohn*, 956 F.2d at 209), that is not the case here. Defendants did not object to the scope of relief sought in Plaintiffs' motion for summary judgment, ECF No. 32, in either Defendants' cross-motion, ECF No. 73, or in Defendants' opposition to Plaintiffs' motion for summary judgment, ECF No. 74. Because Plaintiffs' newly expanded request for relief is improper, the Court should not consider it at all.

> **B.      The proposed injunction would subject HHS to the threat of contempt without proper notice of prohibited conduct.**

The balance of hardships weighs decisively against the proposed injunction because its indeterminate terms would expose the agency to the risk of contempt without providing clear notice of what conduct is prohibited. Since injunctions carry the force of contempt, Rule 65(d) mandates that "[e]very order granting an injunction" must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d). "[T]he specificity provisions of Rule 65(d) are no mere technical requirements." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). The rule "was

Defendants' Supplemental Brief on Injunctive Relief

designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Id.* "Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Id.* Simply put, Rule 65(d) "requires the language of injunctions to be reasonably clear so that ordinary persons will know precisely what action is proscribed." *Premier Commc'ns Network, Inc. v. Fuentes*, 880 F.2d 1096, 1100 (9th Cir. 1989) (quoting *United States v. Holtzman*, 762 F.2d 720, 726 (9th Cir.1985)).

The language of Plaintiffs' requested injunction is not "reasonably clear." *See id.* The agency and the public at large are left to guess what is meant by "a materially similar policy which supersedes or purports to supersede the professionally recognized standards of care that exist in the Plaintiff States . . . ." Pls.' Opp'n, at 39–40. Plaintiffs do not identify the "material[]" aspects of the Kennedy Declaration that the injunction would prohibit in any future policy. *See id.* Nor do they explain what they mean by "the professionally recognized standards of care that exist in the Plaintiff States." *See id.* And when the Court probed this question during the hearing, Plaintiffs were unable to clearly articulate how those standards of care are determined under 42 U.S.C. § 1320a-7(b)(6)(B), much less how they would be determined under Plaintiffs' proposed injunction so that Defendants could be sure not to violate any injunction by purporting to supersede them in any new policy. *See, e.g.*, Tr. 63: 20–21 (MS. BOYD: "I think . . . it might differ depending upon the medical issue."); Tr. 63:24–64:1 ("THE COURT: Would it be a state legislature, or I thought we were just talking about peers making these decisions?"); Tr. 65:19–21 ("THE COURT: So a standard of care can also be established by ballot measure? MS. BOYD: Correct."); Tr. 66:10–13 (MS. BOYD: "I think it's recognizing that there may be national standards, for example, major

Defendants' Supplemental Brief on Injunctive Relief

medical associations, if there are statements by say, you know, the American Pediatric Association."); *see also* Tr. 136:11–25, 137:1–12 (discussing how even if a state's legislature or local agency bodies prohibited certain types of health care, that alone would not be dispositive of the applicable standard of care). To the extent Plaintiffs intend the injunction to prevent Defendants from displacing some unspecified state standard relating to treatments for pediatric gender dysphoria when applying 42 U.S.C. § 1320a-7(b)(6)(B)—and the proposed injunction certainly is not cabined in that way—that would be improper too. The Court has not undertaken (and should not undertake) any sort of hypothetical analysis to determine what the applicable standard of care is under § 1320a-7(b)(6)(B) in the Plaintiff states (or nationally) for any treatment for pediatric gender dysphoria in any or all circumstances. That is a determination OIG makes in the first instance, under the circumstances of a given case, and the Court should not short-circuit that assessment, which Congress assigned to the agency.

Because the requested injunction does not inform Defendants, or "ordinary persons," "precisely what action" is prohibited, *Premier*, 880 F.2d at 1100 (quoting *Holtzman*, 762 F.2d at 726), yet it would subject HHS to the threat of contempt for any violation, the Court should reject Plaintiffs' requested injunction.

###### C.    The proposed injunction would improperly regulate unchallenged agency action.

Plaintiffs seek relief that is untethered to any discrete agency action or specific exercise of agency authority. Instead, they ask this Court to place a burden on every future HHS action in perpetuity. But the Court cannot enter sweeping relief that "reaches beyond the scope of the complaint and enjoins government regulations [or actions] that were explicitly never challenged or litigated," and have not even occurred. *Church of the Holy Light of the Queen v. Holder*, 443 F.

Defendants' Supplemental Brief on Injunctive Relief

App'x 302, 303 (9th Cir. 2011) (vacating injunction against enforcement of generally-applicable controlled substances regulations that swept beyond the particular "outright prohibition" the plaintiff had challenged as burden on religious observance); *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) ("The [APA's, 5 U.S.C. § 706(1),] limitation to discrete agency action precludes the kind of broad programmatic attack we rejected in *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990)); *Sierra Club v. Morton*, 405 U.S. 727, 732, n.3 (1972) ("Congress may not confer jurisdiction on Art. III federal courts to render advisory opinions.").

Any future, hypothetical agency action would rely on unique statutory authority, may include different or additional reasoning, and may undergo different procedures. As the Court appeared to recognize, "[t]here would have been ways to be able to approach the policy decision, which is within the context of the executive branch. . . . [There] could have been ways in which rule-making would have been initiated, notice would have been provided, the opportunity for evidence to be considered." Tr. 147:22–148:7. Although the Court noted that it was not "speak[ing] to those issues with any specific particularity," that is precisely the point. Tr. 147:24–25. The Court should not enter an injunction that would prohibit the agency from taking any new actions in the future when we do not yet know the nature of those actions, the authority on which the agency may rely, what procedures it might use, or what reasons it might give.

Several courts, including the Ninth Circuit, have vacated injunctions that purport to invalidate agency decisions that were never challenged in litigation, or that prohibit an agency from taking action that might produce a result "similar" to the action in which the court has identified some defect. *E.g.*, *Meinhold v. U.S. Dep't of Def.*, 34 F.3d 1469, 1480 (9th Cir. 1994) (vacating injunction to the extent it went beyond ordering that the Navy reinstate unlawfully discharged sailor and not discharge him on same ground in the future); *see also Flathead-Lolo-*

*Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1197 (9th Cir. 2024) (vacating injunction to the extent it went beyond recreational wolf trapping to prohibit other types of wolf trapping that the plaintiffs had not challenged); *Gulf Oil Corp. v. Brock*, 778 F.2d 834, 842–43 (D.C. Cir. 1985) (vacating injunction that "enjoin[ed] disclosure not only of the [specific document at issue], but also of all 'substantially similar' documents").

Plaintiffs similarly seek to restrain prospective agency action that has not yet been attempted. For the reasons discussed in those cases, such an injunction imposes significant hardship on agency decision making and is not warranted here.

## CONCLUSION

For the foregoing reasons, injunctive relief is not appropriate here. Defendants respectfully request that the Court limit any relief to vacatur. If the Court determines injunctive relief is necessary, it should be limited to Plaintiffs' original request, *i.e.*, an injunction prohibiting Defendants from implementing, instituting, maintaining, or giving effect to the Kennedy Declaration.

Defendants' Supplemental Brief on Injunctive Relief

10

Dated: April 2, 2026.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE BENNETT
Assistant Branch Director
Federal Programs Branch

/s/ *Kathryn Alkire*
KATHRYN L. ALKIRE
(FL Bar No. 1050146)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 451-7743
E-mail: Kathryn.L.Alkire@usdoj.gov
*Attorney for Defendants*