DAN RAYFIELD
Attorney General
ALLIE M. BOYD #163478
BRIAN SIMMONDS MARSHALL #196129
LAUREN ROBERTSON #124362
Senior Assistant Attorneys General
KATE E. MORROW #215611
YOUNGWOO JOH #164105
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: allie.m.boyd@doj.oregon.gov
        brian.s.marshall@doj.oregon.gov
        lauren.robertson@doj.oregon.gov
        kate.e.morrow@doj.oregon.gov
        youngwoo.joh@doj.oregon.gov

*Attorneys for the State of Oregon*

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| STATE OF OREGON, et al., | No. 6:25-cv-02409-MTK |
| Plaintiffs, | PLAINTIFFS' SUPPLEMENTAL BRIEFING ON INJUNCTIVE RELIEF |
| v. | |
| ROBERT F. KENNEDY, JR., in his official capacity as the Secretary of the Department of Health and Human Services, et al., | |
| Defendants. | |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ...................................................................................................... 2

     A.   Permanent Injunctive Relief Is Warranted ........................................................ 2

     B.   Permanent Injunctive Relief Is Needed to Provide Complete Relief to the Plaintiffs ........ 6

     C.   Plaintiffs' Requested Injunction Is Appropriately Tailored .............................................. 10

     D.   Plaintiffs' Requested Injunction Meets the Specificity Requirements of Rule 65............ 13

     E.   The Court Should Direct Entry of a Final Judgment .......................................................... 15

III. CONCLUSION.................................................................................................... 16

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

# TABLE OF AUTHORITIES

## Cases

*Am. Fed'n of Gov't Emps Nat'l VA Council v. Dep't of Veterans Affairs*,
No. 25-cv-583 (D.R.I. Mar. 20, 2026) (unpublished) (hyperlink not available)
(attached to Declaration of William McGinty as Exhibit E).......................................................... 8

*Barco Mercado v. Noem*,
No. 25-cv-06568 (S.D.N.Y. Mar. 2, 2026) (unpublished) (hyperlink not available)
(attached to Declaration of William McGinty as Exhibit F)........................................................ 8

*Califano v. Yamasaki*,
442 U.S. 682 (1979)..................................................................................................................... 12

*Church of the Holy Light of the Queen v. Holder*,
443 F. App'x 302 (9th Cir. 2011) ................................................................................................ 11

*Curtiss-Wright Corp. v. General Elec. Co.*,
446 U.S. 1 (1980)......................................................................................................................... 16

*Dannenberg v. Software Toolworks, Inc.*,
16 F.3d 1073 (9th Cir. 1994)........................................................................................................ 16

*Dent v. West Virginia*,
129 U.S. 114 (1889)....................................................................................................................... 5

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006)........................................................................................................................ 2

*Fed. Election Comm'n v. Furgatch*,
869 F.2d 1256 (9th Cir. 1989) ............................................................................................... 13, 15

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*,
98 F.4th 1180 (9th Cir. 2024)...................................................................................................... 12

*Galvez v. Jaddou*,
52 F.4th 821 (9th Cir. 2022).......................................................................................................... 2

*Google LLC v. Epic Games, Inc.*,
No. 25-521, 2026 WL 682610 (U.S. Mar. 10, 2026)................................................................... 14

*Gulf Oil Corp. v. Brock*,
778 F.2d 834 (D.C. Cir. 1985) ............................................................................................... 12, 13

*High Sierra Hikers Ass'n v. Blackwell*,
390 F.3d 630 (9th Cir. 2004)......................................................................................................... 6

*Hous. Auth. of City & Cnty. of San Francisco v. Turner*,
No. 25-cv-08859-JST, 2025 WL 2961794 (N.D. Cal. Oct. 18, 2025) ...................................... 11

*Illinois v. Noem*,
No. 1:25-cv-00495-MSM-PAS, 2025 WL 3707011 (D.R.I. Dec. 22, 2025) ........................... 11

*In re Google Play Store Antitrust Litig.*,
147 F.4th 917 (9th Cir. 2025) .................................................................................................. 13

*INS v. Legalization Assistance Project of L.A. Cnty. Fed'n of Labor*,
510 U.S. 1301 (1993)................................................................................................................. 5

*Martin Luther King, Jr. Cnty. v. Turner*,
798 F. Supp. 3d 1224 (W.D. Wash. 2025)............................................................................... 11

*Meinhold v. Dep't of Def.*,
34 F.3d 1469 (9th Cir. 1994).................................................................................................... 12

*N. Cheyenne Tribe v. Norton*,
503 F.3d 836 (9th Cir. 2007).................................................................................................... 6

*New York v. Dep't of Energy*,
No. 6:25-cv-01458-MTK (D. Or. Nov. 10, 2025) (unpublished) (hyperlink not
available) (attached to Declaration of William McGinty as Exhibit H) ................................. 10

*New York v. Dep't of Energy*,
No. 6:25-cv-01458-MTK, 2025 WL 3140578 (D. Or. Nov. 10, 2025)............................ 2, 6, 10

*New York v. Trump*,
777 F. Supp. 3d 112 (D.R.I. 2025) ........................................................................................... 7

*New York v. Trump*,
No. 25-1236, 25-1413, 2026 WL 734941 (1st Cir. Mar. 16, 2026) ...................................... 7, 11

*R.I. Coal. Against Domestic Violence v. Kennedy*,
No. 25-cv-342-MRD-PAS, 2025 WL 2988705 (D.R.I. Oct. 23, 2025) ................................... 11

*Steffel v. Thompson*,
415 U.S. 452 (1974)................................................................................................................... 7

*Tobay Robles v. Noem*,
No. 26-cv-107 (D. Minn. Jan. 28, 2026) (unpublished) (hyperlink not available)
(attached to Declaration of William McGinty as Exhibit G) ..................................................... 8

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025)............................................................................................................... 5, 6

Page iii – PLAINTIFFS' SUPPLEMENTAL BRIEFING ON INJUNCTIVE RELIEF

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

*United Aeronautical Corp. v. Air Force*,
  80 F.4th 1017 (9th Cir. 2023) ................................................................................ 7

*United States v. Christie Indus., Inc.*,
  465 F.2d 1000 (3d Cir.1971) ................................................................................ 13

*United States v. Holtzman*,
  762 F.2d 720 (9th Cir. 1985) ............................................................................... 14

*Washington v. Dep't of Educ.*,
  167 F.4th 1241 (9th Cir. 2026) .............................................................................. 6

*Washington v. Dep't of Educ.*,
  No. C25-1228-KKE, 2025 WL 3690779 (W.D. Wash. Dec. 19, 2025) ................................. 6, 7

*Washington v. Dep't of Health & Hum. Servs.*,
  No. 6:25-cv-01748-AA, 2025 WL 3002366 (D. Or. Oct. 27, 2025) ..................................... 11

*Washington v. FEMA*,
  No. 25-12006-RGS, 2025 WL 3551751 (D. Mass. Dec. 11, 2025) ....................................... 7

*Washington v. FEMA*,
  No. 25-12006-RGS (D. Mass. Dec. 11, 2025) (unpublished) (hyperlink not available)
  (attached to Declaration of William McGinty as Exhibit C) ............................................ 7

*Washington v. FEMA*,
  No. 25-12006-RGS (D. Mass. Mar. 6, 2026) (unpublished) (hyperlink not available)
  (attached to Declaration of William McGinty as Exhibit D) ............................................ 7

*Washington v. Trump*,
  145 F.4th 1013 (9th Cir. 2025) .............................................................................. 6

*Wood v. GCC Bend, LLC*,
  422 F.3d 873 (9th Cir. 2005) ............................................................................... 16

**Statutes**

42 U.S.C. § 1320a-7 ............................................................................................. 17

**Regulations**

42 C.F.R. § 1001.2 ........................................................................................... 10, 17

42 C.F.R. § 1001.2001(a) ........................................................................................ 4

63 Fed. Reg. 46682 (Sept. 2, 1998) .............................................................................. 4

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

**Other Authorities**

Gwynn Hogan, *ICE moved detainees to previously undisclosed floor of 26 Federal Plaza*, MSN.com (Feb. 9, 2026) ............................................................................... 8

Press Release, Department of Health and Human Services, Office of Inspector General, OIG and Tenet Healthcare Corporation Reach Divestiture Agreement To Address Exclusion of Redding Medical Center (Dec. 11, 2003) (attached to Declaration of William McGinty as Exhibit B) ............................................................................... 5

## I.    INTRODUCTION

In addition to the vacatur and declaratory relief this Court has already determined appropriate, this Court should enter permanent injunctive relief. At the hearing on the parties' cross-dispositive motions, the Court indicated that it will grant Plaintiff States' motion for summary judgment, deny Defendants' motion to dismiss, hold unlawful and set aside the Kennedy Declaration, and declare that "defendants lack authority to establish superseding standards of care to exclude providers from federal healthcare programs." Decl. of William McGinty (McGinty Decl.), Ex. A at 144:11-18. The Court requested supplemental briefing on the Plaintiff States' request for permanent injunctive relief. *Id.* at 144:19-145:8. Accordingly, this brief focuses on why a permanent injunction is necessary to give Plaintiff States complete relief.

Plaintiff States easily meet the test for a permanent injunction because they actually succeeded on the merits of their claims and because Defendants, if not enjoined, will irreparably harm Plaintiff States' Medicaid provider networks and their fundamental authority to regulate the practice of medicine. By contrast, Defendants will suffer no injuries from being enjoined from taking actions they have no legal authority to take, making balancing the equities a straightforward exercise.

In addition, injunctive relief would not be duplicative of vacatur and declaratory judgment. Unlike other forms of relief, an injunction is enforceable through motions to enforce, motions for contempt, or other post-judgment motions, which this Court would have jurisdiction to decide. Thus, the narrow injunctive relief that Plaintiff States have requested will ensure that Defendants do not simply re-adopt the reasoning of the Kennedy Declaration—or its illegal attempt to supersede the relevant standards of care in Plaintiff States—under a different name or via a different instrument. Last, the injunctive relief Plaintiff States request, including as to any substantially similar policy, is a usual and routine form of remedy to ensure the federal government does not reimplement a challenged policy through other means. Indeed, this Court has entered such relief. *See New York v. Dep't of Energy,* No. 6:25-cv-01458-MTK, 2025 WL 3140578, at *18 (D.

Page 1 – PLAINTIFFS' SUPPLEMENTAL BRIEFING ON INJUNCTIVE RELIEF

Or. Nov. 10, 2025) (granting a permanent injunction to prevent the federal government from implementing a "substantially similar policy"). And the relief that Plaintiff States request is fully compliant with Rule 65, including its requirements for specificity.

Accordingly, to provide Plaintiffs with complete relief, this Court should enter partial final judgment in favor of Plaintiffs on Counts I through IV, vacate the Kennedy Declaration, enter a declaratory judgment that Defendants have no authority to establish standards of care that supersede the relevant standards of care for the provision of gender-affirming care recognized in the Plaintiff States or to exclude providers from federal health care programs solely based on their provision of gender-affirming care in the Plaintiff States, and permanently enjoin Defendants from enforcing or implementing the Kennedy Declaration or a substantially similar policy.

## II.    ARGUMENT

### A.    Permanent Injunctive Relief Is Warranted

As Plaintiff States previously established, because the Secretary of HHS does not have any legal authority to supersede the relevant standards of care prevailing in the Plaintiff States, and because imposing such a superseding standard of care impairs the Plaintiff States' Medicaid provider networks as well as the Plaintiff States' sovereign interests in regulating the practice of medicine, entering a permanent injunction is entirely appropriate. *See* ECF 77 at 39-43.

To warrant a permanent injunction, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). The final two factors merge when the government is the opposing party. *Galvez v. Jaddou*, 52 F.4th 821, 831 (9th Cir. 2022). Notably, Defendants have not seriously disputed that Plaintiffs have satisfied the permanent injunction factors. *See* ECF 86 at 22-26. Nor could they.

Page 2 – PLAINTIFFS' SUPPLEMENTAL BRIEFING ON INJUNCTIVE RELIEF

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

With regard to irreparable harm, the Plaintiff States submitted extensive evidence detailing the irreparable injury to their proprietary interests in operating a viable Medicaid provider network. Plaintiff States explained, for instance, that as the number of providers of transgender health care continues to dwindle due to mounting fear of exclusion from federal health care programs, including fear stemming from targeted threats of exclusion based on the Kennedy Declaration, it has become increasingly difficult for Plaintiff States to ensure such care is available, notwithstanding their obligations to ensure access to such medically necessary care under state law and to maintain an adequate network of providers to meet the needs of Medicaid enrollees under federal law. ECF 77 at 40-41 (citing declarations).

Defendants do not dispute the existence of these proprietary harms, nor that they would be radically compounded if major providers of pediatric care in Plaintiff States—including at least 13 major hospitals that have been referred for exclusion to the Office of Inspector General (HHS-OIG) based on the Kennedy Declaration—were excluded from federal health care programs due to their provision of medical treatment for gender dysphoria. *Id.* at 41-42. Indeed, Plaintiff States submitted evidence demonstrating their inability to provide critical healthcare services, particularly in highly specialized areas such as pediatric organ transplants, genetic and neurological disorders, and childhood cancer treatments, if the referred hospitals were in fact excluded by HHS-OIG. *Id.* Based on this undisputed evidence, there can be no doubt that exclusion of major hospitals would irreparably harm Plaintiff States' ability to run a functioning Medicaid system and result in the catastrophic elimination of specialized medical care for children in Plaintiff States. *Id.* at 14-16, 41-42; *see also* ECF 62 ¶ 12; ECF 78 ¶ 9; ECF 79 ¶ 5; ECF 81 ¶¶ 6-8; ECF 82 ¶¶ 17, 20-21.

Further, Defendants' representations in their briefing and at the March 19 hearing made it plain that, unless they are enjoined from relying, in whole or in part, on the Kennedy Declaration or a materially similar policy, Defendants will continue to regard medical treatments to minors for gender dysphoria as categorically falling below professionally recognized standards of care and

Page 3 – PLAINTIFFS' SUPPLEMENTAL BRIEFING ON INJUNCTIVE RELIEF

will simply disguise their policy through exclusion determinations made by HHS-OIG. *See* ECF 73 at 35 (arguing that providers could still be excluded "in the absence of the Declaration"); *see also* McGinty Decl., Ex. A at 96:17-18 ("If the Kennedy Declaration did not exist, there would still be this substantive legal standard in the statute.").[1]

Separately, Defendants' representations at the March 19 hearing also suggest that Defendants could use notices of intent to exclude (NOI) to inflict these same harms on Plaintiff States, even if no exclusion determination is made. Defendants represented at the hearing that the inception of the exclusion process (i.e., the issuance of an NOI) is merely "a determination to open up an investigation," *Id.* at 11:2-4, and an "investigative period," *id.* at 16:7. That representation is incorrect: it minimizes the significance and real-world consequences of an NOI. In reality, NOIs are issued only when the agency already "proposes to exclude an individual or entity." 42 C.F.R. § 1001.2001(a). HHS's prior practices confirm that NOIs are typically issued *after* the agency has conducted a thorough investigation and come to the conclusion that exclusion is appropriate. *See* 63 Fed. Reg. 46682 (Sept. 2, 1998) ("the vast majority of cases involving a proposal to exclude are medical in nature, with the OIG relying on a Medicare intermediary or carrier, a peer review organization or other medical reviewer to provide medical review of a case prior to it being referred by the OIG"); *see also infra* n.2 (discussing issuance of an NOI to a medical center for "unnecessary and substandard invasive cardiology services" following a $54 million False Claims Act settlement with the Department of Justice related to the same conduct). Accordingly, should HHS make good on its threat to begin issuing NOIs to providers in the Plaintiff States simply based on their provision of transgender health care, it would be all but certain to lead providers to stop providing transgender health care for youth and adolescents given the significant consequences

---

[1] Given these representations, Defendants' complaint that Plaintiff States waived a request for injunctive relief beyond the four corners of the Kennedy Declaration falls flat. Plaintiffs made this request in direct response to Defendants' position, and Defendants have had the opportunity to respond, twice now, obviating any potential prejudice. Further, Defendants included a request for permanent injunctive relief against the "Kennedy Declaration in any form" in their amended complaint, ECF 28 at 35, which is consistent with the request for permanent injunctive relief that Plaintiff States are seeking here.

Page 4 – PLAINTIFFS' SUPPLEMENTAL BRIEFING ON INJUNCTIVE RELIEF

associated with potential exclusion. *See* ECF 34 ¶ 19 (Washington's chief medical officer explaining exclusion from participation on federal health care programs "constitutes a de facto bar on the practice of medicine"); *see also* ECF 77 at 10-16 (discussing institutions that stopped providing transgender health care following referral to HHS-OIG, as well as institutions that stopped providing care based on the fear of referral or other retribution from the federal government); ECF 35 ¶ 34.[2]

In addition, the impairment of the Plaintiff States' government interest in regulating the practice of medicine is straightforwardly irreparable injury, as it is a prerogative that states have enjoyed since "time immemorial." *Dent v. West Virginia*, 129 U.S. 114, 122 (1889); *cf. Trump v. CASA, Inc.*, 606 U.S. 831, 859 (2025) (holding that the improper intrusion "on a coordinate branch of Government" constitutes irreparable harm (quoting *INS v. Legalization Assistance Project of L.A. Cnty. Fed'n of Labor*, 510 U.S. 1301, 1306 (1993) (O'Connor, J., in chambers) (citation modified))).

---

[2] The immediate and dire consequences that accompany a hospital's receipt of an NOI are reflected on HHS-OIG's own website. For example, Redding Medical Center, a 269-bed acute care facility in Redding, California, was issued an NOI "based upon unnecessary and substandard invasive cardiology services provided at the hospital" after the entity entered into a $54 million False Claims Act settlement with the Department of Justice related to the same conduct. *See* McGinty Decl., Ex. B, Press Release, Department of Health and Human Services, Office of Inspector General, OIG and Tenet Healthcare Corporation Reach Divestiture Agreement To Address Exclusion of Redding Medical Center (Dec. 11, 2003), available at https://oig.hhs.gov/newsroom/news-releases-articles/oig-and-tenet-healthcare-corporation-reach-divestiture-agreement-address-exclusion-redding-medical-center/. Just three months after the NOI was issued, the medical center's owner agreed to divest the medical center to an unrelated party in exchange for OIG agreeing to withhold issuing a formal notice of exclusion. As HHS-OIG explained in its press release, "[h]ad an agreement not been finalized . . . , the next step in the process would have been for the OIG to issue a notice of exclusion to the hospital, after which the exclusion would have gone into effect in 20 days." This, in turn, would have prevented the medical center from "bill[ing] Medicare, Medicaid or another other Federal health care program for items or services furnished to beneficiaries of those programs." As this example demonstrates, given the devastating financial consequences associated with exclusion from federal healthcare programs, medical entities effectively have no option other than to enter into an agreement with the federal government after receipt of an NOI in order to avoid having a final exclusion notice issued. The same would be true for the hospitals referred to HHS-OIG for exclusion in Plaintiff States, as federal health care programs are major payors of these entities. *See* ECF 77 at 14-16.

Page 5 – PLAINTIFFS' SUPPLEMENTAL BRIEFING ON INJUNCTIVE RELIEF

Finally, the balance of equities and public interest clearly favor an injunction here, where the Secretary's Declaration has no grounding in lawful authority whatsoever. *See Washington v. Trump*, 145 F.4th 1013, 1037 (9th Cir. 2025) (holding injunctive relief served the public interest where it enjoined government action that was "beyond its authority").

**B.      Permanent Injunctive Relief Is Needed to Provide Complete Relief to the Plaintiffs**

In addition to vacatur and declaratory relief, injunctive relief is needed to provide the Plaintiff States complete relief. "A district court has 'broad latitude in fashioning equitable relief when necessary to remedy an established wrong.'" *N. Cheyenne Tribe v. Norton*, 503 F.3d 836, 843 (9th Cir. 2007) (quoting *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 641 (9th Cir. 2004)); *cf. CASA*, 606 U.S. at 851-52 (recognizing the complete-relief principle "has deep roots in equity" and focuses on whether an injunction "will offer complete relief to the plaintiffs before the court").

Here, a permanent injunction is needed to ensure Defendants do not simply adopt the reasoning of the Kennedy Declaration—or its illegal attempt to supersede the relevant standards of care for transgender health care in Plaintiff States—under a different name or via a different instrument. Only a permanent injunction will provide Plaintiff States with certainty that their providers will not be targeted for exclusion from federal healthcare programs based solely on their provision of lawful transgender health care. Notably, courts in this circuit, including this Court, have recognized the same need for complete relief in analogous circumstances. *See, e.g., New York v. Dep't of Energy*, 2025 WL 3140578, at *18 (granting a permanent injunction where plaintiff States sought an injunction to prevent government from implementing a "substantially similar policy" of capping indirect costs in federal grants; finding that such relief "is not encompassed by other relief ordered"); *Washington v. Dep't of Educ.*, No. C25-1228-KKE, 2025 WL 3690779, at *17 (W.D. Wash. Dec. 19, 2025), *stay pending appeal denied by* 167 F.4th 1241 (9th Cir. 2026) (granting permanent injunctive relief as to all grantees within plaintiff States' borders preventing premature discontinuation of multi-year school-based mental health grants without reasoned

Page 6 – PLAINTIFFS' SUPPLEMENTAL BRIEFING ON INJUNCTIVE RELIEF

decision making, in addition to vacatur and declaratory judgment); *see also Washington v. FEMA, No. 25-12006-RGS, 2025 WL 3551751 (D. Mass. Dec. 11, 2025)* (granting permanent injunctive relief preventing termination of pre-disaster resiliency and mitigation grants mandated by Congress, in addition to vacatur and declaratory judgment).

Further, while declaratory relief is necessary to determine the rights of the parties in this dispute, it is not sufficient to provide the Plaintiff States full relief. As the Ninth Circuit has observed, "declaratory relief 'is a much milder form' of relief because it is not backed by the power of contempt." *United Aeronautical Corp. v. Air Force, 80 F.4th 1017, 1031 (9th Cir. 2023)* (citing *Steffel v. Thompson, 415 U.S. 452, 471 (1974)*). While vacatur and declaratory relief *should* theoretically be sufficient to stop Defendants from implementing a substantially similar Declaration or policy, a permanent injunction will provide the Plaintiff States with an enforceable form of relief in the event HHS attempts to exclude providers in Plaintiff States from federal health care programs pursuant to the same categorical position of the Kennedy Declaration (i.e., that offering medical treatment to minors for gender dysphoria is inconsistent with professionally recognized standards of care). *See, e.g.*, *Dep't of Educ.*, 2025 WL 3690779, at *18 (entering final judgment but retaining jurisdiction to enforce the court's injunction and judgment); Summary Judgment Order, *Washington v. FEMA*, No. 25-12006-RGS (D. Mass. Dec. 11, 2025), ECF 130 (McGinty Decl., Ex. C) (same). And as recent litigation between the Plaintiff States and the federal government has unfortunately demonstrated, having an enforceable order has remained critical to states (and other parties) obtaining complete relief. *See, e.g.*, Order to Enforce the Court's Summary Judgment Order, *Washington v. FEMA*, No. 25-12006-RGS (D. Mass. Mar. 6, 2026), ECF 137 (McGinty Decl., Ex. D) (granting Plaintiff States' motion to enforce and ordering relief after defendants failed to reinstitute terminated grant program); *New York v. Trump, 777 F. Supp. 3d 112, 119-20 (D.R.I. 2025)*, *aff'd, No. 25-1236, 25-1413, 2026 WL 734941 (1st Cir. Mar. 16, 2026)* (granting Plaintiff States' motion to enforce and finding FEMA's institution of lengthy, manual review process for grants in violation of the court's preliminary injunction order); *see also*

Page 7 – PLAINTIFFS' SUPPLEMENTAL BRIEFING ON INJUNCTIVE RELIEF

Memorandum in Support of Plaintiffs' Motion to Enforce the Preliminary Injunction, *Am. Fed'n of Gov't Emps Nat'l VA Council v. Dep't of Veterans Affairs*, No. 25-cv-583 (D.R.I. Mar. 20, 2026), ECF 33-1 (McGinty Decl., Ex. E) (moving to enforce preliminary injunction requiring agency to reinstate collective bargaining agreement, where agency formally reinstated agreement but represented in court filing that it did not intend to abide by agreement's terms and continued to violate agreement's terms regarding, inter alia, parental leave); Contempt Motion Stipulation and Order, *Barco Mercado v. Noem*, No. 25-cv-06568 (S.D.N.Y. Mar. 2, 2026), ECF 141 (McGinty Decl., Ex. F) (voluntarily resolving motion for contempt after ICE official admitted in deposition that ICE was skirting order enjoining ICE from holding noncitizens on tenth floor of federal building by instead holding noncitizens on ninth floor of federal building);[3] Order, *Tobay Robles v. Noem*, No. 26-cv-107 (D. Minn. Jan. 28, 2026), ECF 10 (McGinty Decl., Ex. G) (attaching appendix of 96 court orders that ICE had violated in 74 cases).

Additionally, as discussed above, a permanent injunction is needed to prevent HHS from abusing the exclusion process. Defendants argued at the March 19 hearing that OIG uses "multiple sources of information to determine both what the standard of care is and whether a provider has violated it." McGinty Decl., Ex. A at 127:22-25; *see also* 136:5-7 ("exclusion regulations do not treat standards of care as fixed"). That is, according to Defendants, HHS-OIG gets to decide the standard of care. *Id.* at 129:6-24 (analogizing professionally recognized standards of care to a speed limit); *id.* at 137:10-12 (arguing that state laws pertaining to the standard of care are not dispositive on HHS-OIG determinations). But this is wrong, because medical treatment for gender dysphoria is plainly within the professionally recognized standards of care in the Plaintiff States. *See, e.g.*, ECF 32 at 12-14 (summarizing state laws protecting medical treatment of gender dysphoria); *see also* 42 C.F.R. § 1001.2 (defining professionally recognized standards of care as those that apply

---

[3] *See also* Gwynn Hogan, *ICE moved detainees to previously undisclosed floor of 26 Federal Plaza*, MSN.com (Feb. 9, 2026) available at: https://www.msn.com/en-us/politics/government/ice-moved-detainees-to-previously-undisclosed-floor-of-26-federal-plaza/ar-AA1W14Uu?ocid=BingNewsVerp.

Page 8 – PLAINTIFFS' SUPPLEMENTAL BRIEFING ON INJUNCTIVE RELIEF

"within a State"). Defendants' position highlights a substantial risk that they will simply launder their categorical policy through a series of pre-ordained exclusion proceedings, effectively applying a categorical ban. *See* ECF 73 at 35 (arguing that providers could still be excluded "in the absence of the Declaration"); *see also* McGinty Decl., Ex. A at 96:17-18 ("If the Kennedy Declaration did not exist, there would still be this substantive legal standard in the statute."). Enjoining Defendants from enforcing not only the Kennedy Declaration itself, but also any materially similar policy under which the federal government seeks to apply a categorical ban on medically necessary health care for youth with gender dysphoria, is thus vital to protect Plaintiff States from irreparable injury.

In other words, absent an injunction, HHS could begin issuing NOIs to providers in Plaintiff States based on the same categorical position taken in the Kennedy Declaration that the provision of transgender health care to minors, alone, is inconsistent with professionally recognized standards of care, without *any* investigation into whether the providers furnished services *of a quality* that failed to meet the relevant standard of care in Plaintiff States. Such a notice of intent to exclude would all but erase the role of professional standards organizations and medical experts in determining whether the quality of care provided to an individual patient met the appropriate standards set in Plaintiff States. It was this effort to establish a categorical exclusion rule that the Court correctly observed was as "clear proof of claim [of *ultra vires*] as there can be." McGinty Decl., Ex. A at 144. Indeed, given the practical impacts of an NOI, *see supra* at 4-5, coupled with the government's position that an NOI is not final agency action, McGinty Decl., Ex. A at 11:7-11, an injunction from this Court may be the Plaintiff States' only stopgap prior to hospitals in the Plaintiff States ending the provision of gender-affirming care permanently.

Thus, given the irreparable harms that will occur in Plaintiff States if Defendants initiate exclusion proceedings pursuant to the Kennedy Declaration or a substantially similar policy, *supra* at II.A, permanent injunctive relief is needed to provide Plaintiff States full relief.

Page 9 – PLAINTIFFS' SUPPLEMENTAL BRIEFING ON INJUNCTIVE RELIEF

**C.      Plaintiffs' Requested Injunction Is Appropriately Tailored**

The request that this Court enjoin Defendants from giving effect to the Kennedy Declaration or a materially similar policy is appropriately tailored to remedy the harm to Plaintiff States. The requested injunction is no broader than necessary and limited to the Plaintiff States' irreparable injuries. This Court and many others around the country have ordered comparable injunctive relief, and the cases involving vacated or modified injunctions that Defendants rely on are inapposite.

As this Court noted at the summary judgment hearing, this Court has enjoined a federal agency from enforcing a challenged policy and substantially similar policies. *See id.* at 140:22-141:2. Specifically, this Court entered such relief against a challenged Department of Energy policy that limited the payment or reimbursement of indirect costs. *See* Judgment, *New York v. Dep't of Energy*, No. 6:25-cv-01458-MTK (D. Or. Nov. 10, 2025), ECF 84 (McGinty Decl., Ex. H) ("The Court permanently enjoins Defendants and their officers and agents from implementing the Policy Flash *or a substantially similar policy* that categorically caps states and local government reimbursement of indirect and/or fringe costs in Plaintiff States.") (emphasis added). As this Court recognized in that case, an injunction was needed, in part, because the Department of Energy indicated it would effectuate the challenged policy without reference to that specific policy through other means. *See New York v. Dep't Energy*, 2025 WL 3140578, at *17–18. Likewise, here, Defendants assert the authority to exclude providers from federal health care programs, including Medicaid and Medicare, for the mere provision of transgender health care to adolescents "even in the absence of the Declaration[.]" ECF 73 at 21. Plaintiffs are thus justified in asking the Court to enjoin the Declaration and materially similar policies that likewise purport to supersede the relevant professionally recognized standards of care that exist in Plaintiff States.

For judicial efficiency and to prevent games of legal whack-a-mole, courts around the country have regularly entered injunctions against challenged policies as well as materially or substantially similar policies—in order to prevent federal defendants from implementing the

Page 10 – PLAINTIFFS' SUPPLEMENTAL BRIEFING ON INJUNCTIVE RELIEF

enjoined policies by other means. *See, e.g.*, *New York v. Trump*, 2026 WL 734941, at *5 (largely affirming a preliminary injunction enjoining federal agency defendants from freezing federal funds based on an Office of Management and Budget directive "*or any other materially similar* order, memorandum, directive, policy, or practice under which the federal government imposes or applies a categorical pause or freeze of funding appropriated by Congress") (emphasis added); *Washington v. Dep't of Health & Hum. Servs.*, No. 6:25-cv-01748-AA, 2025 WL 3002366, at *31 (D. Or. Oct. 27, 2025) (enjoining HHS from enforcing challenged conditions "or any materially similar terms or conditions" as to specific funds awarded to plaintiff states); *R.I. Coal. Against Domestic Violence v. Kennedy*, No. 25-cv-342-MRD-PAS, 2025 WL 2988705, at *14 (D.R.I. Oct. 23, 2025) (entering injunction enjoining defendants from enforcing challenged requirements "or any substantially similar requirement"); *Illinois v. Noem*, No. 1:25-cv-00495-MSM-PAS, 2025 WL 3707011, at *19 (D.R.I. Dec. 22, 2025) (enjoining FEMA "from enforcing by any means against Plaintiffs and their instrumentalities and subdivisions" challenged grant award terms "or any materially similar terms"); *Martin Luther King, Jr. Cnty. v. Turner*, 798 F. Supp. 3d 1224, 1240 (W.D. Wash. 2025) (enjoining HUD from imposing or enforcing challenged funding conditions "or any materially similar terms or conditions"); *Hous. Auth. of City & Cnty. of San Francisco v. Turner*, No. 25-cv-08859-JST, 2025 WL 2961794, at *2 (N.D. Cal. Oct. 18, 2025) (similar).

The cases Defendants rely on for their argument that inclusion of the term "materially similar policies" would render the injunction impermissibly broad offer no support. *See* ECF 86 at 24–25. For example, in *Church of the Holy Light of the Queen v. Holder*, the Ninth Circuit vacated an injunction it determined was overbroad because the injunction "reach[ed] more conduct than that which the district court held violated [Religious Freedom Restoration Act]." 443 F. App'x 302, 303 (9th Cir. 2011). There, the district court's injunction enjoined the federal government from enforcing certain regulations in the Controlled Substances Act, though "plaintiffs repeatedly represented to the court and in discovery that they were not challenging any CSA regulations and had 'not alleged in the Complaint that the CSA violates their rights.'" *Id.* A comparable issue arose

Page 11 – PLAINTIFFS' SUPPLEMENTAL BRIEFING ON INJUNCTIVE RELIEF

in *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, where the district court enjoined a state agency from authorizing wolf trapping and snaring for recreational purposes within a specific geographical area and time period. 98 F.4th 1180, 1184 (9th Cir. 2024). On appeal, the plaintiffs agreed that the injunction could be clarified to establish that it wasn't meant to cover wolf trapping and snaring for government research, and so the Ninth Circuit vacated the injunction "to the extent that it prevents the State from trapping and snaring wolves for research purposes." *Id.* at 1197; *see id.* at 1187. By contrast, here, Plaintiff States explicitly challenged the Kennedy Declaration, this Court has determined that the Declaration violates the APA several times over, and so Plaintiffs ask this Court to enjoin Defendants from giving any effect to the Declaration and materially similar policies that would also purport to supersede standards of care for provision of transgender health care to youth and adolescents recognized in the Plaintiff States. Plaintiff States do not ask this Court to enjoin unchallenged regulations or unrelated conduct—but instead to enjoin the *same* policy already declared to be outside of the agency's authority from being effectuated in a different guise.

Meinhold v. Department of Defense, 34 F.3d 1469 (9th Cir. 1994), and *Gulf Oil Corp. v. Brock*, 778 F.2d 834 (D.C. Cir. 1985), fare no better. *Meinhold* addressed a nationwide injunction against the Department of Defense, which the Ninth Circuit vacated because the case was "not a class action," and the plaintiff "sought only to have his discharge voided and to be reinstated." 34 F.3d at 1480. Here, however, Plaintiffs ask for a permanent injunction limited to the Plaintiff States—an injunction "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see supra* II.B. Similarly, in *Gulf Oil*, a government contractor sued to prevent the FOIA disclosure of a specific affirmative action plan, the district court enjoined disclosure of that document and all "substantially similar documents," and the requesting party later withdrew its request for the specific plan. 778 F.2d at 835. The D.C. Circuit concluded the case was moot and the injunction was overbroad because the dispute wasn't about the agency's disclosure regulation but the application of that regulation to a

Page 12 – PLAINTIFFS' SUPPLEMENTAL BRIEFING ON INJUNCTIVE RELIEF

particular document that was no longer being requested. *Id.* at 842-43. Here, by contrast, the requested injunction is tailored to remedy the threat of ongoing harm established by Plaintiffs: injury to operating viable Medicaid provider networks and regulating the practice of medicine. *See* ECF 77 at 40–42.

Plaintiffs are entitled to an injunction against the Kennedy Declaration and materially similar policies that purport to supersede the relevant professionally recognized standards of care that exist in the Plaintiff States.

**D.      Plaintiffs' Requested Injunction Meets the Specificity Requirements of Rule 65**

Plaintiffs' requested injunction is more than sufficient to give the parties reasonable notice of what is prohibited. Defendants can't enforce or implement the Kennedy Declaration, or something substantially similar, by deciding that medical interventions such as puberty blockers and hormone therapy for the treatment of gender dysphoria in minors categorically fall below the professionally recognized standards of care in Plaintiff States. As this Court has already held, Defendants lack any authority to do so. While Plaintiff States' originally requested language suffices for the purposes of Rule 65, they now propose additionally clarifying language for the avoidance of any doubt.

Rule 65(d) requires that an injunction "state its terms specifically; and describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." In construing the meaning of an injunction courts "are not limited to the language of the injunction." *Fed. Election Comm'n v. Furgatch*, 869 F.2d 1256, 1263 (9th Cir. 1989). Instead, the acts prohibited or required are informed by "the circumstances surrounding the injunction's entry: the relief sought by the moving party, the evidence produced at the hearing of the injunction, and the mischief that the injunction sought to prevent." *Id.* (quoting *United States v. Christie Indus., Inc.*, 465 F.2d 1000, 1007 (3d Cir.1971)) (citation modified). At the same time, courts are not required to give enjoined parties "a cookbook on the specifics of complying with the injunction," *In re Google Play Store Antitrust Litig.*, 147 F.4th 917, 953 (9th Cir. 2025), *cert.*

Page 13 – PLAINTIFFS' SUPPLEMENTAL BRIEFING ON INJUNCTIVE RELIEF

*dismissed sub nom. Google LLC v. Epic Games, Inc.*, No. 25-521, 2026 WL 682610 (U.S. Mar. 10, 2026), and "[i]njunctions are not set aside under rule 65(d) [] unless they are so vague that they have no reasonably specific meaning," *United States v. Holtzman*, 762 F.2d 720, 726 (9th Cir. 1985).

Here, as this Court indicated at the hearing on the cross dispositive motions: "defendants lack authority to establish superseding standards of care to exclude providers from federal healthcare programs." McGinty Decl., Ex. A at 144:16-18. The injunction Plaintiff States requested would appropriately bar them from doing precisely that. Defendants plead ignorance as to the professionally recognized standards that they are prohibited from superseding. ECF 86 at 26 (claiming confusion about the term "'statewide standards,' whatever Plaintiffs mean by that"). And they complain that they cannot identify what would make a policy "materially similar" to the Kennedy Declaration such that it would be subject to the injunction. *See id.*; *see also* ECF 77 at 43 (articulating Plaintiff States' requested injunction). These arguments do not withstand scrutiny.[4] The Kennedy Declaration straightforwardly purports to declare that medical interventions such as puberty blockers or hormone therapy for the treatment of gender dysphoria in minors are inconsistent with professionally recognized standards of care, such that medical professionals who provide such services are subject to exclusion from federal health care programs regardless of the quality of the services provided and regardless of what the relevant standards of care are in the states in which those professionals practice medicine. *See* ECF 1-1 at 10; *see also* 42 C.F.R. § 1001.2 (defining "professionally recognized standards of care"); 42 U.S.C. § 1320a-7(b)(6)(B) (permitting exclusion for a provider who "furnished or caused to be furnished items or services to patients . . . of a quality which fails to meet professional recognized standards of health care"). Materially similar policies are, accordingly, policies that also target providers based solely on their provision of transgender health care in the Plaintiff States. In light of "the relief sought by the

---

[4] Defendants' claimed ignorance is belied by their own arguments describing exclusion proceedings at oral argument. *E.g.*, McGinty Decl., Ex. A at 125:18-126:5 (acknowledging that HHS-OIG must determine the "statewide standard" in any exclusion proceeding).

Page 14 – PLAINTIFFS' SUPPLEMENTAL BRIEFING ON INJUNCTIVE RELIEF

moving party, the evidence produced at the hearing of the injunction, and the mischief that the injunction sought to prevent," Plaintiff States' requested injunction easily meets the specificity requirements of Rule 65(d). *See Fed. Election Comm'n*, 869 F.2d at 1263.

Furthermore, given Defendants' position that issuing an NOI is merely a preliminary investigatory step (*see supra* II.A), they should be enjoined from initiating any enforcement action in reliance on the Kennedy Declaration or a materially similar policy as set forth below (with new language in bold):

> The Court permanently enjoins Defendants and their officers, agents, servants, employees, and attorneys, including those at HHS-OIG, **from initiating enforcement action**, enforcing, implementing, giving intent to, or relying, in whole or in part, on the Kennedy Declaration—or **any** materially similar policy which supersedes or purports to supersede the professionally recognized standards of care **for gender-affirming care** that exist in the Plaintiff States—against any provider in the Plaintiff States.

Such an injunction would satisfy Rule 65(d) by any standard.

### E.    The Court Should Direct Entry of a Final Judgment

Plaintiff States moved for summary judgment only on Counts I-IV alleged in their Amended Complaint. *Compare* ECF 28 *with* ECF 32. The last count (Count V), alleging arbitrary and capricious agency action, was left for further litigation. *See id.* But the Court's ruling indicated that Plaintiff States will prevail on at least Counts I through III, with the disposition of Count IV to await the Court's written opinion.[5] McGinty Decl., Ex. A at 143:21-144:10. Particularly, Plaintiff States will be granted summary judgment on Count I, that the Kennedy Declaration exceeds Secretary Kennedy's statutory authority because "defendants lack authority to establish superseding standards of care to exclude providers from federal healthcare programs." *Id.* at 144:16-18; *see also id*. at 144:6-7 (the claim that the Kennedy Declaration is *ultra vires* is "on its face is about as clear [as a] clear proof of claim as there can be").

---

[5] For the avoidance of doubt, none of Plaintiff States' requested relief, including injunctive relief, depends upon their prevailing on Count IV of their complaint.

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

In these circumstances, the Court should direct entry of a final judgment on Counts I-IV because there is no just reason for delay under Rule 54(b). Entering final judgment under Rule54(b) is "exclusively within the discretion of the district court." *Dannenberg v. Software Toolworks, Inc., 16 F.3d 1073, 1078 (9th Cir. 1994)*.

In this case, the claims Plaintiff States have moved on, and this Court has stated it would decide, are legally and factually distinct from the single, unmoved claim. The question of Defendants' statutory authority to enact the Kennedy Declaration is sufficiently separate from whether Defendants appropriately exercised reasoned decision making. The ruling entered by this Court does not depend on the administrative record, which would be necessary to ultimately decide whether Defendants actions are arbitrary and capricious under Count V. So, while all claims challenge the same agency action—the Kennedy Declaration—Claims I-IV and V are legally and factually different, such that there is no risk of piecemeal appeals. *See Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 11 (1980); *see also Wood v. GCC Bend, LLC*, 422 F.3d 873, 881 (9th Cir. 2005) (Rule 54(b) certification may be appropriate when "there is an important or controlling legal issue"). Therefore, there is no just reason for delay, and the Court should certify its judgment under Rule 54(b).[6]

### III.   CONCLUSION

Plaintiff States respectfully request that this Court enter partial final judgment by granting summary judgment to the Plaintiff States on Counts I, II, III, and IV of its Amended Complaint and giving Plaintiff States all requested remedies, including injunctive relief.

DATED this 2nd day of April 2026.

---

[6] If the Court prefers not to enter partial final judgment under Rule 54(b), the Court can simply enter final judgment, dismissing any remaining counts without prejudice.

Page 16 – PLAINTIFFS' SUPPLEMENTAL BRIEFING ON INJUNCTIVE RELIEF

**DAN RAYFIELD**
Attorney General
State of Oregon


By: *s/ Allie M. Boyd*
ALLIE M. BOYD #163478
BRIAN SIMMONDS MARSHALL #196129
LAUREN ROBERTSON #124362
Senior Assistant Attorneys General
KATE E. MORROW #215611
YOUNGWOO JOH #164105
Assistant Attorneys General
Tel (503) 947-4700
Fax (503) 947-4791
allie.m.boyd@doj.oregon.gov
brian.s.marshall@doj.oregon.gov
kate.e.morrow@doj.oregon.gov
youngwoo.joh@doj.oregon.gov
lauren.robertson@doj.oregon.gov


*Attorneys for the State of Oregon*


**LETITIA JAMES**
Attorney General
State of New York


By: *s/ Matthew Faiella*
MATTHEW FAIELLA
Special Counsel for LGBTQIA Rights
GALEN SHERWIN
Special Counsel for Reproductive Rights
RABIA MUQADDAM
Chief Counsel for Federal Initiatives
TRAVIS W. ENGLAND
Deputy Chief, Civil Rights Bureau
ELIZABETH A. BRODY
Assistant Solicitor General
VICTORIA OCHOA
Assistant Attorney General
28 Liberty St.
New York, NY 10005
Tel (212) 416-8000
matthew.faiella@ag.ny.gov
galen.sherwin@ag.ny.gov
rabia.muqaddam@ag.ny.gov

**NICHOLAS W. BROWN**
Attorney General
State of Washington


By: *s/ William McGinty*
WILLIAM MCGINTY
CRISTINA SEPE
Deputy Solicitors General
LAURYN K. FRAAS
MOLLY POWELL
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
Tel (206) 464-7744
william.mcginty@atg.wa.gov
cristina.sepe@atg.wa.gov
lauryn.fraas@atg.wa.gov
molly.powell@atg.wa.gov


*Attorneys for the State of Washington*


**ROB BONTA**
Attorney General
State of California


By: *s/ Crystal Adams*
CRYSTAL ADAMS
Deputy Attorney General
NELI PALMA
Senior Assistant Attorney General
NIMROD PITSKER ELIAS
Supervising Deputy Attorney General
HILARY BURKE CHAN
Deputy Attorney General
1515 Clay St., Suite 2000
Oakland, CA 94612
Tel (408) 679-7010
crystal.adams@doj.ca.gov
neli.palma@doj.ca.gov
nimrod.elias@doj.ca.gov
hilary.chan@doj.ca.gov


*Attorneys for the State of California*

Page 17 – PLAINTIFFS' SUPPLEMENTAL BRIEFING ON INJUNCTIVE RELIEF

travis.england@ag.ny.gov
elizabeth.brody1@ag.ny.gov
victoria.ochoa@ag.ny.gov

*Attorneys for the State of New York*

**PHILIP J. WEISER**
Attorney General
State of Colorado

By: *s/ Sarah H. Weiss*
SARAH H. WEISS, CBA #61914
Senior Assistant Attorney General
MICHAEL D. MCMASTER, CBA #42368
Assistant Solicitor General
Colorado Department of Law
1300 Broadway, #10
Denver, CO 80203
Tel (720) 508-6000
sarah.weiss@coag.gov
michael.mcmaster@coag.gov

*Attorneys for the State of Colorado*

**KATHLEEN JENNINGS**
Attorney General
State of Delaware

By: *s/ Ian R. Liston*
IAN R. LISTON
Director of Impact Litigation
VANESSA L. KASSAB
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
Tel (302) 683-8899
ian.liston@delaware.gov
vanessa.kassab@delaware.gov

*Attorneys for the State of Delaware*

**WILLIAM TONG**
Attorney General
State of Connecticut

By: *s/ Alma Nunley*
ALMA NUNLEY
Special Counsel for Reproductive Rights
165 Capitol Ave
Hartford, CT 06106
Tel (860) 808-5020
alma.nunley@ct.gov

*Attorney for the State of Connecticut*

**BRIAN L. SCHWALB**
Attorney General
District of Columbia

By: *s/ Samantha Hall*
SAMANTHA HALL
Assistant Attorney General
Office of the Attorney General for the District
of Columbia
400 Sixth Street, N.W.
Washington, D.C. 20001
Tel (202) 788-2081
samantha.hall@dc.gov

*Attorneys for the District of Columbia*

Page 18 – PLAINTIFFS' SUPPLEMENTAL BRIEFING ON INJUNCTIVE RELIEF

**KWAME RAOUL**
Attorney General
State of Illinois

By: *s/ Aleeza Strubel*
ALEEZA STRUBEL
Complex Litigation Counsel
ELIZABETH B. SCOTT
Assistant Attorney General
ELENA S. METH
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St., 35th Floor
Chicago, IL 60603
Tel (773) 914-3046
aleeza.strubel@ilag.gov
elizabeth.scott@ilag.gov
elena.meth@ilag.gov

*Attorneys for the State of Illinois*

**ANTHONY G. BROWN**
Attorney General
State of Maryland

By: *s/ Lauren Gorodetsky*
LAUREN GORODETSKY
Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
Tel (410) 576-7057
lgorodetsky@oag.maryland.gov

*Attorneys for the State of Maryland*

**AARON M. FREY**
Attorney General
State of Maine

By: *s/ Kevin J. Beal*
KEVIN J. BEAL, Maine Bar No. 7294
Assistant Attorney General
Office of the Attorney General
111 Sewall Street, 6th Floor
6 State House Station
Augusta, ME 04333-0006
Tel (207) 626-8800
kevin.beal@maine.gov

*Attorneys for the State of Maine*

**ANDREA JOY CAMPBELL**
Attorney General
Commonwealth of Massachusetts

By: *s/ Allyson Slater*
ALLYSON SLATER
Director, Reproductive Justice Unit
ADAM M. CAMBIER
JAK KUNDL
CHLOE CABLE
MORGAN CARMEN
Assistant Attorneys General
One Ashburton Place
Boston, MA 02108
Tel (617) 963-2811
allyson.slater@mass.gov
adam.cambier@mass.gov
jak.kundl@mass.gov
chloe.cable@mass.gov
morgan.carmen@mass.gov

*Attorneys for the Commonwealth of Massachusetts*

**DANA NESSEL**
Attorney General
State of Michigan

By: *s/ Neil Giovanatti*
NEIL GIOVANATTI
DANIEL PING
Assistant Attorneys General
Michigan Department of Attorney General
P.O. Box 30758
Lansing, MI 48909
Tel (517) 335-7603
giovanattin@michigan.gov
pingd@michigan.gov

*Attorneys for the State of Michigan*

**AARON D. FORD**
Attorney General
State of Nevada

By: *s/ K. Brunetti Ireland*
K. BRUNETTI IRELAND
Chief of Special Litigation
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
kireland@ag.nv.gov

*Attorneys for the State of Nevada*

**RAÚL TORREZ**
Attorney General
State of New Mexico

By: *s/ Amy Senier*
AMY SENIER, MBA# 672912
Senior Counsel
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM 87504-1508
Tel (505) 490-4060

**KEITH ELLISON**
Attorney General
State of Minnesota

By: *s/ Lindsey E. Middlecamp*
LINDSEY E. MIDDLECAMP
Special Counsel
445 Minnesota Street, Suite 600
St. Paul, Minnesota, 55101
Tel (651) 300-0711
lindsey.middlecamp@ag.state.mn.us

*Attorneys for the State of Minnesota*

**JENNIFER DAVENPORT**
Acting Attorney General
State of New Jersey

By: *s/ Lauren E. Van Driesen*
LAUREN E. VAN DRIESEN
JESSICA L. PALMER
Deputy Attorneys General
Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel (609) 696-5279
lauren.vandriesen@law.njoag.gov
jessica.palmer@law.njoag.gov

*Attorneys for the State of New Jersey*

**JOSH SHAPIRO in his official capacity as Governor of the Commonwealth of Pennsylvania**

By: *s/ Aimee D. Thomson*
JENNIFER SELBER
General Counsel
AIMEE D. THOMSON
Deputy General Counsel
Pennsylvania Office of the Governor
30 N. 3rd St., Suite 200

Page 20 – PLAINTIFFS' SUPPLEMENTAL BRIEFING ON INJUNCTIVE RELIEF

asenier@nmdoj.gov

*Attorneys for the State of New Mexico*


**PETER F. NERONHA**
Attorney General
State of Rhode Island

By: *s/ Julia C. Harvey*
JULIA C. HARVEY, RI Bar No. 10529
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2103
jharvey@riag.ri.gov

*Attorneys for the State of Rhode Island*


**JOSHUA L. KAUL**
Attorney General
State of Wisconsin

By: *s/ Jody J. Schmelzer*
JODY J. SCHMELZER
Assistant Attorney General
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707
(608) 266-3094
jody.schmelzer@wisdoj.gov

*Attorneys for the State of Wisconsin*

Harrisburg, PA 17101
Tel (223) 234-4986
aimeethomson@pa.gov

*Attorneys for Governor Josh Shapiro*


**CHARITY R. CLARK**
Attorney General
State of Vermont

By: *s/ Jonathan T. Rose*
JONATHAN T. ROSE
Solicitor General
Office of the Vermont Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3171
jonathan.rose@vermont.gov

*Attorneys for the State of Vermont*

Page 21 – PLAINTIFFS' SUPPLEMENTAL BRIEFING ON INJUNCTIVE RELIEF