# Exhibit E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES NATIONAL VA COUNCIL; and<br><br>AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES LOCAL 2305<br><br>　　　*Plaintiffs,*<br><br>　　　**v.**<br><br>UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; and<br><br>DOUGLAS A. COLLINS, in his official capacity as U.S. Secretary of Veterans Affairs<br><br>　　　*Defendants.* | Case No. 1:25-cv-00583-MRD-PAS<br><br>EXPEDITED RELIEF REQUESTED (LR Cv 9) |

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE THE PRELIMINARY INJUNCTION</u>

**INTRODUCTION**

The Defendants in this case are violating an order of this Court. Accordingly, Plaintiffs respectfully seek the Court's swift intervention to protect their rights—and the rights of the federal employees they represent—and to safeguard the integrity of the judicial process.

On March 13, 2026, this Court issued the PI Order[1] requiring Defendants to immediately comply with all terms of the Master Agreement, which is the collective bargaining agreement between the VA and NVAC. While asserting that the Master Agreement has been reinstated, Defendants are not, in fact, complying with the terms of the Master Agreement and, thus, they are not complying with the PI Order. Defendants continue to deny employees the benefits and protections they are due under the Master Agreement.

Nor have Defendants communicated to Plaintiffs how they will comply with the PI Order in the future. At the national level, Defendants have told the union's leadership that compliance with the PI Order "raises complex questions of law" and that "additional information and guidance regarding VA's reinstatement of the [Master Agreement] and compliance with the Order will be forthcoming," without providing any further detail. Wheeler Decl., Ex. C (03/18/26 Memorandum from Office of Labor-Management Relations to Human Resource Officials). At the local level, VA officials are refusing to interact with local union leadership or to confirm employees' eligibility for benefits and protections they are due under the Master Agreement. Defendants' counsel has brushed off Plaintiffs' counsel's requests for confirmation

---

[1] In this brief, "PI Order" refers to the order issued on March 13, 2026, at docket entry 30. The "FSLMRS" refers to the Federal Service Labor-Management Relations Statute. "NVAC" is Plaintiff American Federation of Government Employees National Veterans Affairs Council. The "Wheeler Decl." is the concurrently filed Declaration of Alexandra Wheeler in Support of Plaintiffs' Motion to Enforce. The "Termination" refers to Defendant U.S. Secretary of Veterans Affairs Douglas A. Collins's decision to terminate the Master Agreement on August 6, 2025. The "VA" refers to the United States Department of Veterans Affairs.

that the Master Agreement will be reinstated per the PI Order. In short, there is no compliance today, and no promise of compliance tomorrow.

Instead, Defendants filed a motion seeking "clarification" of the PI Order. Plaintiffs will submit an opposition explaining why that motion lacks merit. But, for the purposes of this motion, the critical fact about Defendants' clarification motion is that neither of the ancillary issues that it raises has any bearing on whether Defendants can comply with the PI Order today.

Defendants are failing to comply with an order of this Court. The Court should address this situation by issuing a remedial order enforcing the PI Order containing the remedial measures that Plaintiffs seek below.

## FACTUAL BACKGROUND

On March 13, 2026, the Court issued the PI Order. It requires that Defendants "reinstate the Master CBA—as well as any amendments, local supplemental agreements, and memoranda of understanding that were in place subsidiary to the Master CBA—for the remainder of the agreed-upon term provided in the Master CBA." Dkt. 30 at 29.

On Tuesday, March 17, 2026, NVAC's President, Mary Jean Burke, raised to Defendant Collins' attention that VA officials were not complying with the PI Order but were instead claiming that they were "awaiting guidance" from the VA. Wheeler Decl., Ex. B (03/17/26 M. Burke Letter to D. Collins). Instead of engaging in good-faith implementation, the VA responded by pointing NVAC to an internal VA memorandum. The memorandum is ambiguous. It starts by stating that "Per the [PI] Order, the 2023 Master CBA with AFGE is reinstated." Wheeler Decl., Ex. C. (03/18/26 Memorandum from Office of Labor-Management Relations to Human Resource Officials). But the memorandum goes on to say that the "VA is currently reviewing the Order and has engaged with the Department of Justice for guidance on how to

2

correctly implement the Order.  The Order raises complex questions of law about how to reinstate the CBA while the FSLMRS remains inapplicable to the vast majority of VA employees.  Additional information and guidance regarding VA's reinstatement of the 2023 Master CBA and compliance with the Order will be forthcoming."  *Id.*  No timeline was provided.

On Thursday, March 19, 2026, lawyers for the VA asserted that the PI Order "did not address the validity of EO 14251, enjoin the implementation of EO 14251, or make the Federal Service Labor-Management Relations Statute (FSLMRS) broadly applicable to VA" and that the "Order's lack of clarity and failure to address how the CBA can be reinstated notwithstanding the valid and enforceable EO requires VA to get further guidance from the District Court." Wheeler Decl., Ex. L (03/19/26 N. Pasquarella Letter to F. Cornelius).

On Friday, March 20, 2026, the date this Motion is being filed, Defendants filed a "Motion for Clarification of Preliminary Injunction."  Dkt. 32.  But the March 20, 2026 Motion for Clarification omits any arguments about the relationship between the PI Order and Executive Order 14251, and instead raises two different and new issues that purportedly require clarification.  First, Defendants assert that the PI Order "could be read as forbidding Defendants from engaging in any future termination of the Master CBA through its scheduled expiration on August 8, 2026.  Defendants seek clarification that such a construction was not intended."  *Id.* at 6.  Second, Defendants "seek clarification that the [PI] Order is limited to 'local supplemental agreements, and memoranda of understanding' it has with the two Plaintiffs in this case."  *Id.* at 7.

Meanwhile Defendants' counsel has refused to confer with Plaintiffs' counsel about any of these issues.  When Plaintiffs' counsel first asked to confer, Defendants' counsel did not

3

respond and instead pointed to the ambiguous internal memorandum described above. Wheeler Decl., Ex. M (03/18/26 T. Becker Email to T. Silva). The following day, after Plaintiffs' counsel informed Defendants' counsel that the VA was continuing to deny employees their rights under the Master Agreement and asked for confirmation that the VA would comply with the PI Order by adhering to the Master Agreement, Wheeler Decl., Ex. N (03/19/26 T. Silva Email to T. Becker), defense counsel refused to provide that confirmation, instead stating that "If the union believes any provisions of the Master Agreement are not being honored, the agreement spells out the process for raising grievances." Wheeler Decl., Ex. O (03/20/26 T. Becker Email to T. Silva). Within minutes of sending this email, Defendants filed their Motion for Clarification.

All the while, Defendants have been defying the PI Order by openly refusing to follow the Master Agreement's terms. As Plaintiffs show below, the VA continues to deny employees benefits due under the Master Agreement, to deny union officials official time to attend to union duties, to deny employees right during the disciplinary process, and to refuse to participate in the negotiated grievance and arbitration procedure. *See infra*, Argument, Section D.

In sum, in the week since the Court issued the PI Order, Defendants have taken the position that they have complied with the PI Order by issuing a memorandum saying that the Master Agreement is "reinstated," without actually following the Master Agreement's terms. Defendants have simultaneously argued that the PI Order is so ambiguous and unclear that it needs clarification. And the issues that Defendants claimed needed clarification on March 18 and 19 are different than the issues that Defendants claim need clarification in their March 20 Motion for Clarification.

**LEGAL STANDARD**

Courts may issue further orders "to compel compliance with a [prior] court order." *United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005).  To enforce a court order, the plaintiff must show that (1) Defendants "had notice of the order," (2) "the order was clear and unambiguous," (3) Defendants "had the ability to comply with the order", and (4) Defendants "violated the order."  *New York v. Trump*, 777 F. Supp. 3d. 112, 116 (D.R.I. 2025) (citing *Hawkins v. Dep't of Health and Human Servs.*, 665 F.3d 25, 31 (1st Cir. 2012) and granting motion to enforce preliminary injunction against multiple governmental defendants, including Defendants here), *aff'd* – F.4th –, –, 2026 WL 734941, *19 (1st Cir. Mar. 16, 2026).[2]

**ARGUMENT**

Plaintiffs have satisfied all four *Hawkins* factors.  There is no dispute that Defendants have actual notice of the PI Order.  The PI Order's instruction to "reinstate the Master CBA" is short, direct, and precise, and Defendants have demonstrated that they understand what compliance means in this context.  Defendants abided by the Master Agreement before and have the ability to abide by it again.  And it is clear that Defendants are violating the PI Order.

**A.  First Factor: Defendants had notice of the PI Order**

There is no dispute that Defendants had actual notice of the PI Order.  The Order was electronically served upon them, and Defendants have referred to it in correspondence with Plaintiff NVAC.  Wheeler Decl., Ex. C (03/18/26 Memorandum from Office of Labor-Management Relations to Human Resource Officials).

---

[2] This is the same standard that governs motions for civil contempt.  *See Hawkins*, 665 F.3d  at 31.  That said, Plaintiffs do not seek civil contempt at this time.

**B. Second Factor: The PI Order is clear and unambiguous**

The PI Order directs that Defendants "shall reinstate the Master CBA—as well as any amendments, local supplemental agreements, and memoranda of understanding that were in place subsidiary to the Master CBA—for the remainder of the agreed-upon term provided in the Master CBA." Dkt. 30 at 29. There are no exceptions or qualifications. Compliance is due immediately. The action required by Defendants is precisely stated and easy to identify. It requires Defendants to return to the status quo ante by complying with the Master Agreement.

Indeed, throughout the case, Defendants have made clear that compliance with a preliminary injunction would require the VA to follow the Master Agreement. Defendants acknowledged that reinstating the Master Agreement would require the VA to "allow nearly 2,000 government employees to be able to use union time -- to engage in union activity during the workday" *i.e.*, to provide union officials with official time. Wheeler Decl., Ex. A, (02/19/2026 H'rg) at Tr. 35: 23-25. Defendants stated that an injunction would require them to give "the employee a 90-day performance improvement plan before even terminating them," *id.* at Tr. 35:21-22; to provide "advance notice to the Union before employees can even be reassigned or involuntarily moved," *id.* at Tr. 36: 2-5; to furnish "office space at the VA facilities," *id.* at Tr. 36: 5-6; and to "engage in [] arbitrations and grievance procedures," *id.* at Tr. 41: 21-23.[3] The Court can thus be confident in knowing that Defendants understand what compliance looks like, given that Defendants have described it to the Court.

_____

[3] *See also* Dkt. 17 at 10-11 (listing the VA's post-termination actions), 52-53 ("If forced to comply with Plaintiffs' requested preliminary injunction by reinstating the CBA, the VA would have to undo those actions by reestablishing withholding of union dues," recognizing official time, providing the union with use of VA premises, engaging in collective bargaining, and "otherwise reverting back" to prior practice.).

6

In contrast, none of Defendants' shifting claims about why the PI Order requires "clarification" actually suggests that the PI Order is unclear or ambiguous. Rather, Defendants' "clarification" arguments are either arguments that Defendants recycle from their opposition to Plaintiffs' Motion for Preliminary Injunction (and that the Court rejected) or are untimely new arguments in opposition to Plaintiffs' Motion that Defendants are only now raising for the first time.

On Wednesday, March 18, Defendants took the position that the PI Order is unclear because of a purported conflict between the PI Order, which enjoins the Termination, and the related Executive Order, which remains in effect.  Wheeler Decl., Ex. C (03/18/26 Memorandum from Office of Labor-Management Relations to Human Resource Officials).  There is no such conflict.  In their Opposition, Defendants had argued that the legality of the Executive Order and the Termination were one and the same, *see* Dkt. 17 at 17, 33-35, 36-37, 43-44, but the Court rejected those arguments.  In fact, the PI Order made very clear that the Court was "deeply mindful" of the distinction between the Executive Order and the Termination.  Dkt. 30 at 12. The Court noted that "[t]his case is not about the constitutionality of the EO.  The motion before the Court is about whether the Defendants' termination of the Master CBA is unconstitutional as a violation of the Plaintiffs' First Amendment rights and/or the APA as well as in violation of the APA as an arbitrary and capricious administrative action."  *Id.*  The Court then explained why Plaintiffs are likely to succeed in showing that the Termination ordered ***by the Secretary*** was unlawful independent of whatever force the Executive Order might have.  *Id.* at 12-24. Defendants also clearly understand this distinction; they devote nearly a full page of their Motion for Clarification to acknowledging it.  Dkt. 32 at 3-4.

Moreover, Defendants have long understood that the Master Agreement can remain in effect notwithstanding the Executive Order. Immediately after the President issued Executive Order 14251, the Office of Personnel Management affirmatively advised the VA *not* to terminate any collective bargaining agreement. *See* Dkt. 30 at 16 & n.7; *see also* Dkt. 19 at 4-5 (describing the government's statements that the Executive Order and any termination of collective bargaining agreements are distinct events). Indeed, the VA left the Master Agreement in place for more than four months after the President issued the Executive Order,[4] and many other collective bargaining agreements stayed in effect for much longer. Dkt. 17 at 44. In short, the objection the VA asserted in its March 18 memorandum is an issue that Defendants already put before the Court and which the Court already addressed in the PI Order.

Abandoning the explanation offered on March 18 for why they could not comply with the PI Order, on March 20, Defendants filed a Motion for Clarification that identifies totally different issues needing "clarification." As noted above, the Motion for Clarification first asks for the Court's permission to issue a second termination of the Master Agreement, then seeks to limit the PI Order with respect to subsidiary agreements. Plaintiffs will address the Motion for Clarification in a separate response, but, for present purposes, the key point is that neither of these arguments (even if colorable, which they are not) has anything to do with Defendants' ability to understand the PI Order or to comply with it today. There is nothing about the question of whether the PI Order would bar some speculative, future conduct by the Defendants that would hamper Defendants' ability to follow the PI Order today. And Defendants' non-

---

[4] Executive Order 14251 was enjoined, as to its application against Plaintiffs, between June 24, 2025, and July 7, 2025. But it was not enjoined between its March 27, 2025 issuance and June 24, 2025, or again between July 7, 2025 and August 6, 2025.

compliance is not limited to subsidiary, local agreements, but rather is across-the-board defiance of the PI Order, as Plaintiffs illustrate below. *See infra*, Argument, Section D. Furthermore, Defendants have not provided even Plaintiffs NVAC and Local 2305 with union office space. Wheeler Decl., ¶ 17.

None of Defendants' changing explanations shows that the PI Order is "unclear" or "ambiguous." Indeed, when they were opposing Plaintiffs' request for a preliminary injunction, Defendants were able to identify, in detail, the tasks that would be necessary to comply such an injunction. *See supra*, p. 6. Defendants' protestations about the PI Order's alleged lack of clarity are pretexts for heel-dragging and re-litigating the merits of the PI motion. Such conduct is improper at this stage of the litigation.

## C. Third Factor: Defendants are able to comply with the PI Order

Defendants can comply with the PI Order. The Master Agreement was in effect for all represented employees from when it came into force on August 8, 2023 until the August 6, 2025 Termination at issue in this case. This includes the period of time between the March 27, 2025 issuance of Executive Order 14251 and the Termination. In fact, even after the Termination, the Master Agreement remained in effect for the small subgroup of represented employees, mostly police officers, who Defendants carved out of the Termination. The Court's restoration of the status quo ante imposes on Defendants only those obligations that they accepted as a matter of contract when they signed the Master Agreement.

## D. Fourth Factor: Defendants are violating the PI Order

Defendants are violating the PI Order. Although Defendants assert that the Master Agreement has been "reinstated," they are failing to comply with easy-to-understand and easy-to-implement provisions of the Master Agreement. The reality is, for the hundreds of thousands

9

of VA employees represented by Plaintiffs, absolutely nothing has changed since the issuance of the PI Order.

For example, the Master Agreement grants represented employees 16 weeks of parental leave. The Court ruled that denial of such parental leave is an irreparable harm, and this was one of the bases for the PI Order. Dkt. 30 at 25-26 ("Parents cannot turn back the clock to have more time with an infant prior to returning to work once they have missed the early formative weeks of development and their own recovery time."). Yet, this week, the VA told an AFGE-represented employee that she must return to work imminently—on March 23—even though under the Master Agreement she is entitled to an additional 4 weeks of parental leave to spend with her newborn child. Wheeler Decl., Ex. E (03/18/26 Watts Email). In another example, the VA denied a represented employee expecting to deliver a child in May her contractual parental leave benefit, stating "your record still reflects that you are ineligible for inclusion in a bargaining unit. Currently we have no guidance on when this will change." Wheeler Decl., Ex. F (03/18/26 Funseth Email). Defendants' heel-dragging is particularly unconscionable in this context.

By way of another example, Defendants continue to deny employees covered by the Master Agreement the assistance of union representation during the disciplinary processes, as well as procedural protections guaranteed by the Master Agreement. Again, the Court referenced these harms when it issued the PI Order. Dkt. 30 at 26 ("Disciplinary processes, once concluded, have an immediate and irreparable effect on the employee(s) in question"); *see also* Dkt. 13, Ex. A, at Art. 14 (relevant Master Agreement provision). Yet, this week, the VA has continued to obstruct local union leaders' efforts to arrange for AFGE-represented employees to have union representation as a part of the discipline process. Wheeler Decl., Exs. J (03/19/26 Stratton

Email), G (03/18/26 Brown Email).  On March 17, the VA terminated a represented employee, and the termination notice did not contain any notice the employee's option to appeal through the Master Agreement's procedure.  Wheeler Decl., Ex Q (03/17/26 Removal Decision).  Relatedly, the VA continues to deny union leadership's requests to recognize their right to official time, stating that the VA "will maintain status quo" and that "[o]fficial time request[s] from employees who are not police officers/firefighters/security guards are denied."  Wheeler Decl., Ex. P (03/16/26 E. Gallemyer Email to T. Stormoen).

Defendants are also refusing to participate in ongoing arbitration proceedings to resolve workplace disputes.  As outlined in the Declaration of William Wetmore in support of Plaintiffs' Motion for Preliminary Injunction, after Defendants unilaterally terminated the Master Agreement they also unilaterally refused to participate in any scheduled arbitrations.  *See* Dkt. 14-3, at ¶ 31.  One such example was a scheduled arbitration based on a grievance filed by AFGE Local 85.  On March 16, 2026, the arbitrator handling the AFGE Local 85 grievance requested that the parties move forward with rescheduling proceedings, ***citing the PI Order***. On March 19, Defendants sent a letter arguing that the PI Order lacks clarity and the arbitration "should continue to be held in abeyance and processing should only be resumed once the controlling litigation concludes."  Wheeler Decl., Ex L (03/19/26 Pasquarella Letter). Defendants have relied on similar language in refusing to engage in other arbitrations. *See* Wheeler Decl., Exs. H (03/19/26 Greene Email); K (03/19/26 Greenstein Email).

### REMEDY

Plaintiffs respectfully request that the Court issue a remedial order requiring Defendants to comply with the Master Agreement, with respect to all employees covered by the terms of the

Master Agreement (and not just the approximately 3,000 police officers who the VA calls "Exempted Employees"). This order should require compliance with immediate effect.

Defendants should be required to submit weekly status reports to the Court and Plaintiffs regarding implementation.

In light of Defendants' equivocal communications with represented employees, Defendants should be required to issue a communication stating that they have reinstated the Master Agreement as to all employees who fell within its coverage before the Termination. A court overseeing similar litigation over the rescission of a collective bargaining agreement has required such notices. *Am. Fed'n of Gov't Emps., AFL-CIO v. Noem*, 785 F. Supp. 3d 833, 863 (W.D. Wash. 2025) (requiring similar notification upon initial issuance of a preliminary injunction); *Am. Fed'n of Gov't Emps., AFL-CIO v. Noem*, No. 2:25-CV-00451-JNW, 2026 WL 113599, at *4 (W.D. Wash. Jan. 15, 2026) (second required communication in same case).

## CONCLUSION

The Court should not tolerate open defiance of its orders. The Court should grant the motion to enforce.

Respectfully submitted,

LAW OFFICE OF CARLY B. IAFRATE, PC

Dated: March 20, 2026

By: */s/ Carly Beauvais Iafrate*

Carly Beauvais Iafrate, #6343
Law Office of Carly B. Iafrate, PC
408 Broadway, 1st Fl.
Providence, RI 02909
(401) 421-0065
ciafrate@verizon.net

Dated: March 20, 2026          By:    */s/ Travis Silva*                    
Brook Dooley *(pro hac vice)*
Travis Silva *(pro hac vice)*
Taylor Reeves *(pro hac vice)*
JiLon Li *(pro hac vice)*
Alexandra Wheeler *(pro hac vice)*
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188
BDooley@keker.com
TSilva@keker.com
TReeves@keker.com
JLi@keker.com
AWheeler@keker.com

*Attorneys for American Federation of Government Employees National VA Council and American Federation of Government Employees Local 2305*

13