KATHRYN L. ALKIRE
(FL Bar No. 1050146)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 451-7743
Email: Kathryn.L.Alkire@usdoj.gov
*Counsel for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| STATE OF OREGON, *et al.*, | Case No.: 6:25-cv-2409-MTK |
| Plaintiffs, | |
| v. | DEFENDANTS' REPLY IN SUPPORT OF MOTION TO AMEND JUDGMENT |
| ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the Department of Health and Human Services, *et al.*, | |
| Defendants. | |

Defendants' Reply in Support of Motion to Amend Judgment

**ARGUMENT**

Plaintiffs' Opposition confirms that amendment of the Judgment is warranted. Plaintiffs overstate the breadth of the Court's Judgment, ECF No. 94, and Opinion & Order, ECF No. 93 ("Opinion"), and seek to transform a decision concerning the legality of what the Court determined was a discrete agency action reviewable under the APA into an adjudication on the entire scope of the HHS Secretary's statutory authority. But the controversy before the Court—and the issues the Court's Opinion resolved—arose from the Secretary's authority to issue the Kennedy Declaration and the Kennedy Declaration's alleged effect on OIG exclusion proceedings related to standard-of-care exclusions from federal health care programs under 42 U.S.C. § 1320a-7(b)(6)(B) and 42 C.F.R. § 1001.2. The Court should amend the Judgment to clarify this scope because, on its face, the declaratory judgment inadvertently lacks a nexus to the relevant exclusion framework at issue in this case and fails to provide for HHS's other grants of statutory authority.

Contrary to Plaintiffs' assertions, Defendants' arguments are properly raised by Defendants' Rule 59(e) Motion to Amend Judgment ("Motion"), ECF No. 96, because Defendants do not seek to relitigate the merits of this case and this is Defendants' first opportunity to address the language of the Court's Judgment. Plaintiffs' inclination to overread the Judgment proves why amendment is necessary, and Defendants need not identify every grant of statutory authority that could be implicated by the Judgment to prevail.

**I.      Defendants' arguments are properly raised by their Rule 59(e) Motion.**

Plaintiffs principally mischaracterize Defendants' Motion as abandonment of Defendants' prior arguments and an attempt to relitigate the merits, but Defendants have maintained their position throughout the duration of this litigation and do not seek reconsideration here of the Court's conclusions concerning the Kennedy Declaration. *See* Motion at 3; *Arthur v. Murphy Co.,*

Defendants' Reply in Support of Motion to Amend Judgment

Civ. No. 10-3142-CL, 2012 WL 13047758, at *2 (D. Or. Jan. 17, 2012) (collecting cases) ("A motion for reconsideration should not be used to ask a court to rethink what the court had already thought through—rightly or wrongly." (citation omitted)); *see also* Tr. 85:16-25, 86:1-3 ("[The Declaration] relates [to] the context of exclusion. . . . Section D cites 42 C.F.R. Section 1001.2. The Declaration also discusses [] the exclusion regulations in Section V, it states that, 'Under 42 U.S.C. Section 1320a-7(b)(6)(B), the Secretary "may" exclude individuals or entities from participation in any Federal health care programs . . . .'"); Tr. 84:14-18 ("[T]his Declaration is in the context of exclusion from federal healthcare programs, specifically Medicare, Medicaid. No one is contesting that this provision, [42 U.S.C. §] 1395[hh], would preclude the Secretary from excluding a provider."); Tr. 81:4–7 ("[T]he Court should not weigh in on the limits of what the Secretary's authority could be in this case, including in this [42 U.S.C. § 1395hh] section."); Tr. 81:15–17 ("[T]he Secretary is not exercising this type of authority, and opining on whether he can or the extent to where he could in this provision or any other provision in the code would be an advisory opinion."); Tr. 134:21–25, 135:1 ("[A]lthough plaintiffs claim that the federal government can't set standards, they can. Plaintiffs acknowledge that the FDA has some authority to set a standard that might override any plaintiff state standards if the FDA has determined that a medication is not safe or effective under a delegated statutory authority."). Tr. 135:2–5 ("This Court should not be opining on what the whole entire power is of the Department to set standards for the various programs that it regulates, let alone ones that supersede statewide standards here.").

Defendants seek only to ensure the Judgment accurately reflects the scope of the controversy adjudicated by the Court's Opinion. And Rule 59(e) permits courts to remedy the type of inadvertent clear error in this case, which resulted in a declaratory judgment that is manifestly unjust, *see Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001), by conforming the

Defendants' Reply in Support of Motion to Amend Judgment

2

Judgment to the issues actually decided to prevent unintended consequences from imprecise language.

Nor could Defendants have previously raised these issues in prior briefing. *Contra* Pls.' Opp'n at 3, ECF No. 99. The language of the Judgment at issue was not proposed by either Party and fundamentally differs from the language of Plaintiffs' requests for a declaratory judgment. *Contrast* Judgment at 2, *with* ECF No. 77 at 39 *and* ECF No. 90-1 at 2. Defendants' post-judgment Motion is therefore their first opportunity to address the language and breadth of the Judgment ultimately entered by the Court. *See Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) ("A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.").

Plaintiffs also fault Defendants for failing to identify an alternative source of authority affected by the Judgment. *See* Pls.' Opp'n at 5; *see also id.* at 9–11; *infra* § III. But that argument misses the point. Defendants do not seek to establish or confirm the existence of any particular grant of statutory authority to establish standards of care for the provision of gender-affirming care through amendment of the Court's Judgment, nor do they seek an advisory opinion on the scope of any such authority elsewhere in the U.S. Code. Rather, Defendants seek to ensure that the declaratory judgment is confined to the issues the Court actually decided in this case, and that its plain reading does not inadvertently extinguish separate grants of statutory authority to which the Court did not speak (or intend to speak) in its Opinion or Judgment. But the Judgment, as presently worded, sweeps broadly and omits the statutory and regulatory context that permeates the Court's analysis. *See, e.g.*, Opinion at 36–38. Indeed, even Plaintiffs' proposed declaratory judgment contained a nexus to the challenged action and the exclusion framework at issue in this case. *See*

Defendants' Reply in Support of Motion to Amend Judgment

Pls. Proposed Order at ¶ 4, ECF No. 90-1 (requesting a declaratory judgment that includes the limiting language of "as the Kennedy Declaration purports to do").

Since Defendants do not seek to relitigate the merits through their Motion, and they raised the issues in their Motion at the first opportunity, Defendants' Rule 59(e) Motion is proper.

**II.      Plaintiffs' overreading of the Judgment proves amendment is necessary.**

For the first time, Plaintiffs' Opposition takes the extraordinary position that every single Congressional grant of the HHS Secretary's statutory authority was at issue in this case, was adjudicated by the Court, and was restrained by the Court's declaratory judgment. *See* Pls.' Opp'n at 6–9. This inclination to overread the Court's Judgment and Opinion alone proves why the Court's amendment of the Judgment is necessary.

Plaintiffs contend that they challenged the Secretary's authority broadly, *see, e.g.*, Pls.' Opp'n at 6–7, and that the Court therefore must have decided the HHS Secretary lacks the authority under any statute in the entire U.S. Code to establish standards of care that supersede those in the Plaintiffs States or exclude providers from federal healthcare programs, *see id.* at 9. Not so. Defendants do not understand the Court's Opinion to stretch this far. Rather, Plaintiffs' Opposition overstates the extent of the Court's Opinion and understates the significance of the Opinion's repeated references to the Kennedy Declaration, OIG standard-of-care exclusions under 42 U.S.C. § 1320a-7(b)(6)(B), "professionally recognized standards of health care" under 42 C.F.R. § 1001.2, and the practical consequences flowing from OIG exclusions. *See, e.g.*, Opinion at 5–9, 24, 33–34, 36, 47. The Court ultimately found that legal consequences arose from the Kennedy Declaration because "any healthcare provider offering gender-affirming care to minors fails to meet professionally recognized standards of care and is subject to exclusion." *Id.* at 24. The Court emphasized that the threat of exclusion from federal health care programs had caused providers to

Defendants' Reply in Support of Motion to Amend Judgment

suspend care, *id.* at 10–18, and that "the Kennedy Declaration obliges OIG to find that healthcare providers offering gender-affirming care to minors fall below professionally recognized standards of care," *id.* at 34, as to subject them to exclusion under 42 U.S.C. § 1320a-7(b)(6)(B). When discussing Plaintiffs' excess of statutory authority claim, the Court likewise focused on the Kennedy Declaration's citation to 42 C.F.R. § 1001.2, and the Court rejected that provision as providing a "statutory grant of authority" for the Kennedy Declaration. *Id.* at 36.

Nothing in the Opinion purported to identify, analyze, or reject every grant of statutory authority Congress has conferred upon the HHS Secretary. To the contrary, the Court's discussion of Count 3 concerned whether "[t]he Kennedy Declaration exceeds Defendants' statutory authority," and the Court held that Defendants had "failed to invoke *any* statutory authority that authorizes the Kennedy Declaration." *Id.* at 37, 38. Plaintiffs' Opposition repeatedly conflates what they believe to be the breadth of the allegations in their Complaint with the scope of the Court's holding. *See* Pls.' Opp'n at 7–9. But regardless of what Plaintiffs alleged, the Court only adjudicated (and only had authority to adjudicate) the legality of the Kennedy Declaration under the APA and determined that the Secretary lacked statutory authority to issue the Kennedy Declaration. Opinion at 37 ("The Court agrees with Plaintiffs that Defendants have failed to invoke *any* statutory authority that authorizes the Kennedy Declaration, much less an 'unmistakably clear' one that would be required to supplant states' authority to regulate medical conduct."). The Court did not opine on the entire realm of the Secretary's statutory authority or any other agency action, and thus, the entire scope of the Secretary's statutory authority should not be encompassed by a plain reading of the declaratory judgment. *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 324 (1936) ("The judicial power does not extend to the determination of abstract questions."); *see also id.* at 325 ("By its terms, [the original 1934 Act establishing the federal declaratory judgment

Defendants' Reply in Support of Motion to Amend Judgment

remedy] applies to 'cases of actual controversy,' a phrase which must be taken to connote a controversy of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts.").

By contending that the scope of declaratory relief awarded should correspond specifically to the scope of the arguments raised by a challenger in litigation, Pls.' Opp'n at 7–9, Plaintiffs' position is fundamentally inconsistent with the nature of APA review. The APA permits challenges only to "'circumscribed' and 'discrete,'" agency actions, rather than "'broad programmatic attacks.'" *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1010 (9th Cir. 2021) (alteration omitted). And the APA authorizes relief with respect to those discrete agency actions. *See* 5 U.S.C. § 706 (explaining that a "reviewing court" can "hold unlawful and set aside agency action . . . found to be . . . not in accordance with law"). Consistent with that principle, Plaintiffs originally sought a declaratory judgment that "the Kennedy Declaration is unlawful." Pls.' Mot. Summ. J. at 10, ECF No. 32; *accord* Am. Compl. at 35, ECF No. 28. Plaintiffs now argue in effect that such declaratory relief need not be limited to the Kennedy Declaration or even the specific statutory and regulatory context in which that discrete action arose, as reflected by the specific statutory and regulatory provisions cited in the action itself. *See* Kennedy Decl. at 2, 3–4, 10, ECF No. 1-1. That is incorrect.

Indeed, even authority cited by Plaintiffs undermines the approach that they urge. In describing the legal standard for declaratory judgments, Plaintiffs quote *Washington v. U.S. Department of Transportation*, No. 2:25-cv-848-TL, 2026 WL 183584, at \*26 (W.D. Wash. Jan. 23, 2026), a district court decision that cites "recent APA cases where courts have granted declaratory judgment." Pls.' Opp'n at 6. However, the declaratory judgment in that case, and the declaratory judgments in the cases it cites for that proposition, were all limited to the challenged

Defendants' Reply in Support of Motion to Amend Judgment

agency conduct. *See Washington*, 2026 WL 183584, at *26 (limiting declaratory judgment to agency action); *AFGE v. OPM*, 799 F. Supp. 3d 967, 995 (N.D. Cal. 2025) (entering declaratory judgment tied to specific agency action); *Tennessee v. Kennedy*, 807 F. Supp. 3d 613, 629 (S.D. Miss. 2025) (declining to grant part of plaintiffs' requested declaratory judgment as overbroad and entering only a declaratory judgment tied to the challenged agency action); *Washington v. U.S. Dep't of Educ.*, 813 F. Supp. 3d 1222, 1249 (W.D. Wash. 2025) (entering declaratory judgment tied to underlying regulatory framework at issue); *California v. U.S. Dep't of Transp.*, 808 F. Supp. 3d 291, 314 (D.R.I. 2025) (issuing declaratory judgment only as to the challenged agency action). Plaintiffs' own authorities thus underscore that the Judgment should be amended to reflect the challenged agency conduct here and the issues the Court actually decided.

### III.      Defendants need not identify any grant of statutory authority.

Plaintiffs again fault Defendants for failing to identify a particular grant of statutory authority that might be inadvertently encompassed by a plain reading of the Judgment. Pls.' Opp'n at 9–11. But Plaintiffs' argument proceeds from a mistaken premise. Defendants need not establish the validity of some other exercise of statutory authority to demonstrate that the Judgment should be confined to the issues decided in this matter. Nor is it necessary for Defendants to catalogue every grant of statutory authority Congress has conferred upon HHS and manufacture a hypothetical scenario where such authority would be infringed by the Judgment. As discussed throughout this case, Plaintiffs themselves acknowledge that Congress has granted HHS components other specific grants of statutory authority. Pls.' Opp'n at 10; Pls.' Mot. Summ. J. at 24; Tr. 73:4–14 (Plaintiffs' counsel discussing "instances where Congress has specifically delegated" authority, for example, to "a sub-agency like the FDA to make a determination. For example, FDA may make a determination that particular medical devices are not safe or effective.

Defendants' Reply in Support of Motion to Amend Judgment

. . . That is a specifically authorized determination that Congress has given the FDA the right to do"); *see also* Motion at 5. That acknowledgement underscores Defendants' point that the Judgment, as phrased, could be construed to reach separate grants of authority that were never challenged, briefed, or decided in this case.

The question for the Court is therefore not whether Defendants can identify grants of statutory authority, or Defendants' potential future exercises of such authority, that might someday be implicated by the plain language of the Judgment. Instead, the question is whether the declaratory judgment inadvertently extends beyond the issues decided in this case. And it does for the reasons explained in Defendants' Motion and this Reply. The Judgment should thus be conformed to the issues actually decided here.

## CONCLUSION

The Court should grant Defendants' Motion and amend the declaratory judgment to accurately reflect the issues decided in this case.

Defendants' Reply in Support of Motion to Amend Judgment

Dated: June 29, 2026.                    Respectfully submitted,

                                         BRETT A. SHUMATE
                                         Assistant Attorney General
                                         Civil Division

                                         MICHELLE BENNETT
                                         Assistant Branch Director
                                         Federal Programs Branch

                                         /s/ *Kathryn Alkire*
                                         KATHRYN L. ALKIRE
                                         (FL Bar No. 1050146)
                                         Trial Attorney
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street NW
                                         Washington, DC 20005
                                         Phone: (202) 451-7743
                                         E-mail: Kathryn.L.Alkire@usdoj.gov

                                         *Counsel for Defendants*

Defendants' Reply in Support of Motion to Amend Judgment